UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:11-CR-00185-JAW |
| | ) |
| JAMES STILE, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION ON MOTION TO SUPPRESS**

Defendant James Still has filed a motion to suppress evidence obtained as a consequence of a traffic stop. (ECF No. 95.) The Court referred the motion and I conducted a hearing on December 13, 2012, in which the parties presented the Court with both witness testimony and documentary evidence. I also allowed the evidence to remain open until the close of business on December 20, 2012, in part because the Government offered to determine whether there were additional recordings available of dispatch or radio traffic related to the traffic stop. The Government supplied some additional evidence related to radio traffic on December 20, 2012,[1] and the record concerning the traffic stop is closed. I now recommend that the Court deny the motion based on the following proposed findings of fact and discussion of law.

**PROPOSED FINDINGS OF FACT**

On September 12, 2011, Somerset County dispatch received a 911 call from the E.W. Moore & Sons Pharmacy in Bingham, Maine. The caller reported that the pharmacy had just been robbed and that a solitary male had fled the scene traveling north on Route 16 in a bluish minivan. Dispatch relayed this information to deputies in both the Somerset County Sheriff's

---

[1] These exhibits are marked as Government Exhibits 19 and 20.

Office and the Piscataquis County Sheriff's Office. Investigators James Kane and Allen Emerson of the Piscataquis County Sheriff's Office received the dispatch and proceeded west on Route 16 from Abbot, Maine, in separate vehicles.

Sometime shortly after dispatch communicated with the caller at the pharmacy, a "Ms. Worcester" overheard related radio traffic, presumably on her scanner, and called her acquaintance, Mr. Ferber, who was in the vicinity of Kingsbury Pond on Route 16. Mr. Ferber went out to watch traffic and observed a car towing a trailer drive past, followed by a "green Ford Windstar." Mr. Ferber relayed what he saw to Ms. Worcester and she called this in to dispatch, stating that a dark green Ford Windstar had just been seen speeding past Kingsbury Pond.[2] Dispatch then relayed this information to deputies Emerson and Kane.

Kane was traveling in the lead car with Emerson following. As they traveled Route 16 they were on the lookout for the green van called in by Ms. Worcester. Both investigators also testified that they were on the lookout for a van that was blue in color. Before getting as far as Kingsbury Pond, roughly the half-way point between downtown Bingham and the intersection of Route 16 and Route 15 in Abbot, Emerson and Kane came upon the green Ford Windstar travelling in the opposite direction. They turned around and caught up with the van, which then turned onto the Coles Corner Road. Emerson, now in the lead, followed the van onto the Coles Corner Road and activated his blue lights. The minivan quickly came to a stop.

After calling in the minivan's license plate, Emerson approached the vehicle and had a brief conversation with the operator, Defendant James Stile. Emerson was familiar with Stile from past encounters. Emerson told Stile that he was stopped because of a robbery and a report

---

[2]   Defense investigator John Bauer testified that he interviewed Mr. Ferber shortly before the hearing. According to Mr. Bauer, Ferber told him that he saw a green Ford Windstar go by and that the driver was gesticulating out his window in an expression of frustration with the rate of speed of the car he was following.
   The call from Ms. Worcester is corroborated on Government Exhibit 20, Bingham Radio 9-12-2011 1735 to 1835 hours at min. 2:00—2:30 & Telephone Calls 1738-1936 at min. 5:44—6:50.

concerning a blue van. Stile stated that there were a lot of vans like his in the area. Asked what he was doing in the area, Stile indicated that he was training his dogs, two of which were in the vehicle with him. Asked if he had travelled past Kingsbury Pond, Stile responded in the negative. Emerson decided to let Stile proceed on his way based on his account and because he regarded Stile's van as green, not blue. Investigator Kane, who was observing, turned his vehicle around and returned to Route 16 to continue searching for a blue van.

Stile's van was, in fact, teal in color. I based this finding on a video recording captured by Emerson's onboard video equipment (see Gov't Ex. 15, min. 02:22) and photographs offered by Stile and admitted in evidence (Def.'s Exs. 1, 2).

Sometime after allowing Stile to proceed on his way, Emerson learned from dispatch that the license plate he called in was not registered to Stile. Emerson also got to thinking that he had never before had a pleasant chat with Stile and that something "wasn't right." Emerson decided to do a little more investigating and traveled to Stile's residence to see whether he had taken down the wrong license plate number. When he arrived, Stile was standing in the vicinity of the van and Emerson noted that the license plate number on the van was "nowhere near" the number he called in to dispatch. Emerson's point was not that he had taken down the number wrong earlier in the day, but that it appeared that Stile had changed the plate sometime after the stop.

## DISCUSSION

Stile's motion to suppress is not specific as to what evidence he seeks to have suppressed. However, based on his presentation at the hearing, what Stile seeks to do with his motion, if granted, is to seek the suppression of all evidence gathered in connection with a warrant to search his premises. Such evidence, he would maintain, is "fruit of the poisonous tree" because Emerson would not have alighted upon him as a suspect but for the allegedly unreasonable

3

traffic stop on Route 16.  See, generally, Wong Sun v. United States, 371 U.S. 471, 484-86 (1963) (discussing the exclusionary rule as it pertains to evidence obtained as the result of an unlawful invasion).  Stile's counsel envisioned that the reach of this doctrine was something that could be briefed at a later date, if the instant motion were granted.  Stile has also filed two motions to suppress statements given during custodial interviews.  Although all three of Stile's motions were addressed at the evidentiary hearing, I have separated the instant motion from the motions to suppress statements.  A recommendation will issue on those motions at a later date.  For reasons that follow, the traffic stop was reasonable under the Fourth Amendment and there is no occasion to apply the fruit of the poisonous tree doctrine.

"The Fourth Amendment prohibits '*unreasonable* searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968) (emphasis added)).  It is reasonable for law enforcement officers to conduct brief investigatory stops, including traffic stops, when they are able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Terry, 392 U.S. at 21.  When officers are cognizant of facts that, viewed objectively, would lead a reasonable person to believe that "criminal activity may be afoot," id. at 30, they may stop and briefly detain the person upon whom their suspicion falls in order to investigate.  Arvizu, 534 U.S. at 273.  The fact that someone is traveling in a motor vehicle does not raise the standard for conducting an investigatory stop.  Arizona v. Johnson, 555 U.S. 323, 327 (2009).  The standard applied to investigatory stops is generally referred to as the "reasonable suspicion" standard.  See United States v. Jones, 700 F.3d 615, 621 (1st Cir. 2012).

In criminal investigations parlance, reasonable suspicion lies between "inarticulate hunches," Terry, 392 U.S. at 22, which cannot justify investigatory stops, and probable cause, which can justify searches and arrests. Delaware v. Prouse, 440 U.S. 648, 661-63 (1979); Arvizu, 534 U.S. at 273-74. "Reasonable suspicion, then, is an intermediate standard—and one that defies precise definition." Jones, 700 F.3d at 621 (quoting United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001)). Much like the color teal, reasonable suspicion is best understood in reference to the more easily recognized standards it rests between.

When Investigator Emerson decided to stop Stile's minivan, he knew he was on the lookout for a blue or bluish minivan connected with a recent pharmacy robbery. He understood that the driver had left the scene traveling in a "northerly"[3] direction on Route 16. As Emerson traveled west on Route 16, he also heard report of a green minivan that had recently past Kingsbury Pond, allegedly at a high rate of speed. When Emerson spotted the vehicle it was not long after receiving the "be on the lookout" notice. Although neither Emerson nor Kane emphasized this point, it was implicit in the Government's evidentiary presentation that the green van's distance from downtown Bingham was consistent with the timing of the robbery. Moreover, Route 16 is a rural state highway with light traffic. All of these facts and circumstances supplied reasonable grounds to suspect that the driver of the "green" minivan could be responsible for the robbery. Although Emerson ultimately decided to let Stile proceed on his way, in part because he regarded Stile's van as green rather than blue, this fact did not make the initial decision to stop the van, or the exceedingly brief detention of Stile, unreasonable

---

[3]     Even numbered state routes run generally east-west, whereas odd numbered routes run generally north-south. Main Street in downtown Bingham runs in a north-south direction and is designated as both Route 201 and Route 16 for approximately one-half mile. During their testimony, the Government's witnesses did not rule out the possibility that "north on Route 16" could also be north on Route 201 from the perspective of someone at the pharmacy. No questions or testimony touched on this possibility or clarified the location of the pharmacy in relation to the more northerly intersection of Route 16 and Route 201. In any event, I do not believe that this possibility undermines the finding that there was reasonable suspicion to stop Stile's van, given its color, direction of travel, and distance from the robbery.

under the Fourth Amendment. The mere fact that the van was teal in color did not render the stop unreasonable.[4] Emerson and Kane would have been remiss had they not stopped Stile's van under the circumstances.

## CONCLUSION

For the reasons set forth above, I recommend that the Court adopt the proposed findings of fact, find as a matter of law that the traffic stop was based on reasonable suspicion, and deny Stile's motion to suppress evidence (ECF No. 95).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 2, 2013

---

[4] At least two courts have made similar assessments of the blue-green distinction in connection with reasonable suspicion findings. See United States v. Valazquez-Rivera, 366 F.3d 661, 664 (8th Cir. 2004); Illinois v. Hoekstra, 863 N.E.2d 847, 852 (Ill. App. Ct. 2007).