UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

**ORDER ON FIRST PRO SE MOTION TO SUPPRESS**

In his pro se motion, the Defendant claims that the search warrant did not authorize the search of a second apartment within the searched premises and that the warrant did not authorize the search of a motor vehicle at the premises that was owned by another individual. The Court denies the motion because the search warrant described the premises with sufficient particularity and because the motor vehicle appeared to be under the Defendant's control.

I.  **STATEMENT OF FACTS**

   A.  **Procedural Background**

James Stile stands charged with robbery of controlled substances from a pharmacy, use of a firearm in furtherance of a crime of violence, possession of a firearm by a felon, and manufacture of 100 or more marijuana plants. *Indictment* (ECF No. 8). The indictment has been pending since October 20, 2011. *Id.* Mr. Stile has been dissatisfied with the services of each of his four court-appointed defense counsel, including his current defense attorney William Maselli, Esq. *See Order on James Stile's Mot. for In Forma Pauperis Status, Mot. to Stay, and Mot. for Trs.* at 1-2 (ECF No. 165). In the spring of 2013, Mr. Stile began filing pro se

motions, and, during appearances in Court, repeatedly demanding that the Court address them. Typically, when a defendant is represented by counsel and files motions pro se, the Court sends each motion to defense counsel to determine whether he or she will adopt the pro se motion. After Mr. Stile filed a number of pro se motions, which his counsel had not adopted, the Court held a conference directly after its competency hearing on September 27, 2013 and Mr. Stile vociferously complained that his defense was inadequate and that he had been forced to raise meritorious legal issues by himself. *Minute Entry* (ECF No. 206).

Despite misgivings about the dangers of hybrid representation, the Court concluded that in the unusual circumstances of this case, it would address Mr. Stile's then pending pro se motions even though they had not been adopted by defense counsel. *Id.* At the same time, the Court warned Mr. Stile that he was not to inundate the Court with additional motions. *Id.* Ignoring the Court's admonition, Mr. Stile filed thirteen additional motions after September 27, 2013.

**B. The Facts**

Mr. Stile has presented the facts in a somewhat truncated manner.[1] *See Notice of Mot. to Suppress* (*Def.'s Mot.*); *Supporting Aff. for Mot. to Suppress* (*Stile Aff.*) (ECF No. 208). However, the Court gleans that on September 13, 2011, a

---

[1] Mr. Stile mistakenly attached to his motion the search warrant affidavit and search warrant for the second search warrant dated September 20, 2011. *Stile Aff.* at 12-21. After the Government pointed this out in its response, Mr. Stile failed to file the correct documents in his reply, saying that he would present the correct documents at the time of the hearing on the motion to suppress and that "the warrant has the same premises description throughout all three warrants." *Def.'s Reply to Gov't's Opp'n to the Def.'s Mot. to Suppress* at 2 (ECF No. 262). The Court has done its best to set forth the correct underlying facts despite Mr. Stile's decision not to file the correct documents.

2

search warrant was issued, authorizing law enforcement to search the following premises:

> The residence & property [of] James Stile . . . said residence being located at Box 20, on Rt. 23 (North Dexter Road), in Sangerville, Maine, said residence being more fully described as bluish green colored, two story house, said residence has white trim, said residence is located 4/10th of a mile in on Rt. 23, on the right hand side of the roadway as you travel from the intersection of Pleasant Avenue/Rt. 23 towards Dexter, along with any outbuildings, and any motor vehicles belonging to/or under the control of James Stile, to include a 1995, green Ford Windstar van, said van bearing Maine registration #4891NA.

*Stile Aff.* at 18, 21.[2] From the police reports, it appears that the police correctly found and searched the proper residence. *See id.* at 26 (*Piscataquis County Sheriff's Office Report*). Mr. Stile says that the building located at 20 Main Street in Sangerville was owned by P and Q Enterprises and that there were two apartments in the building, one on the ground floor that he occupied under lease and another with a separate outside entrance. *Id.* at 2-3. Mr. Stile says that although there was an interior entrance from his apartment to the second apartment, this entrance was "inactive and painted shut for more than six years" and was "forced open to gain entry to a hallway that gave entrance to another apartment in the building" during the execution of the search warrant. *Id.* at 3.

The police reports indicate that when they searched the downstairs apartment, they proceeded to a hallway, which led to the second floor. *Id.* at 28. This hallway had "dried marijuana leaves covering the floor." *Id.* The police

---

[2] As noted in footnote 1, *supra*, this description comes from the search warrant dated September 20, 2013; however, as Mr. Stile has said that the description of the premises for each search warrant was the same, the Court has used the September 20, 2011 description for the September 13, 2011 warrant.

described the hallway as "also serving as an entrance [although not the main entrance]" to the second floor. *Id.* After the police gained entrance to the second floor, they came upon a marijuana grow operation, *id.*, and then sought and obtained a search warrant on September 13, 2013 to expressly allow them to search the second floor of 20 Main Street for marijuana. *Id.* at 6-7, 31.

## II.  THE PARTIES' POSITIONS

### A.  James Stile's Motion

On May 2, 2013, James Stile filed a pro se motion to suppress physical evidence, including marijuana, that he claims the Government obtained as a consequence of an erroneously issued search warrant from 20 Main Street, Sangerville, Maine, and from an Acura motor vehicle on the property. *Def.'s Mot.*; *Stile Aff.*[3] Preliminarily, Mr. Stile asserts that the search warrant failed to describe the property with sufficient particularity. *Stile Aff.* at 3. In addition, in essence, Mr. Stile says that the police who carried out the search of 20 Main Street and the Acura automobile exceeded the permissible scope of the search warrant and that the physical evidence they obtained from the illegal searches should be suppressed. *Id.* at 1-8. Mr. Stile maintains that the building at 20 Main Street was owned by P and Q Enterprises Incorporated, that the building was divided into two apartments, that he leased the ground floor apartment only, that a second apartment in the building had a separate outside entrance, and that the police gained forced entry to the second apartment through an old interior door that was painted shut. *Id.* at 2-

---

[3] The motion was formally docketed on September 27, 2013 after the Court agreed to rule on the pending pro se motions.

4

5. Mr. Stile says that the Acura motor vehicle present in the yard of 20 Main Street was titled to a man named Brock Campbell and was not specified for search in the warrant. *Id.* at 5. Mr. Stile admits that the police obtained a second search warrant for the other apartment, but he argues that they did so only after exceeding the permissible scope of the first warrant. *Id.* at 6-7.

### B. The Government's Response

The Government responded on October 7, 2013. *Gov't's Resp. to Def.'s Mot. to Suppress (Dated May 2, 2013)* (ECF No. 236) (*Gov't's Opp'n*). The Government says that the affidavit that was filed to obtain the September 13, 2011 search warrant "described the premises with sufficient particularity." *Id.* at 2. It contends that the affidavit and warrant were sufficiently particular under *United States v. Bonner*, 808 F.2d 864 (1st Cir. 1986), and other caselaw. *Id.* at 2-3. The Government disputes Mr. Stile's contention that the existence of the second warrant is evidence of the illegality of the first. *Id.* at 3-4. Regarding the Acura, it maintains that the search of the Acura was proper because it was "within the curtilage." *Id.* at 4. Finally, the Government argues that Mr. Stile is confusing suppression with arguments about the weight of the evidence that may be made at trial. *Id.*

### C. James Stile's Reply

Mr. Stile replied on October 21, 2013. *Def.'s Reply to Gov't's Opp'n to the Def.'s Mot. to Suppress* (ECF No. 262) (*Def.'s Reply*). In his reply, Mr. Stile distinguishes his motion from the cases cited by the Government. *Id.* at 1-6.

### III. DISCUSSION

### A. The Particularity Requirement

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. am. IV. There is no indication that the description in the search warrant that led the police to 20 Main Street in Sangerville was flawed. In other words, the description in the search warrant was sufficiently specific to allow the police to search the right building. *See Steele v. United States*, 267 U.S. 498, 502 (1925) (it "is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended"); *Bonner*, 808 F.2d at 866 ("The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched") (internal quotations and punctuation omitted).

Mr. Stile's contention is different. He says that the police should have limited their search only to his leased space and should not have extended the search to the second apartment. Mr. Stile is correct that if the police seek to search an apartment building or hotel, a search warrant that "fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of

6

one or more subunits indiscriminately" is generally held invalid. 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 4.5(b) at 731 (5th ed. 2012).

There is, however, an important exception to this rule:

[I]f the building in question from its outward appearance would be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way, then the warrant is not defective for failure to specify a subunit within the named building.

*Id.* at 735. Here, the information that Mr. Stile has attached to his motion proves, rather than disproves, the applicability of this exception. The warranty deed that he attached gives no indication that the building was divided up into separate apartments and the two attached photographs reveal a typical Maine farmhouse with a main section and an attached ell. *Stile Aff.* at 10-11, 22, 35. There is no outward indication that the building was internally divided or that the police knew before entering the building that it was subdivided. *Cf. United States v. Woodbury*, No. 06-13-P-H, 2006 U.S. Dist. LEXIS 34320, *8-16 (D. Me. May 24, 2006).[4] Moreover, Mr. Stile does not claim that the upstairs apartment was actually occupied by another tenant and, if the Government can establish that Mr. Stile was growing marijuana on the second floor, the distinction between the ground and second floor apartments is merely technical since he in fact was occupying both. Finally, Mr. Stile gains nothing from his citation of *United States v. Rivera*

---

[4] The First Circuit later affirmed the legality of the search in *Woodbury* based on the *Leon* good faith exception. *United States v. Woodbury*, 511 F.3d 93, 98-100 (1st Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897 (1984)). *Leon* could offer another basis to reject the merits of Mr. Stile's motion to suppress, but the Court has not reached that issue because it was not addressed by the parties and the Court is able to resolve the motion on different grounds.

*Rodriguez*, 768 F. Supp. 16 (D.P.R. 1991). In *Rivera Rodriguez*, the search warrant described an apartment within what was known to be an apartment building; the flaw in the search warrant was that it named the wrong apartment within the multiple apartment complex. *Id.* at 19.

### B. The Search of the Acura

The details of the search of the Acura motor vehicle on the premises of 20 Main Street are sketchy. Apparently, an Acura motor vehicle was present in the yard at 20 Main Street and was searched by the police; Mr. Stile asserts that the motor vehicle was owned by a man named Brock Campbell. *Stile Aff.* at 5. Mr. Stile does not inform the Court what items of evidence were taken from the Acura. In addition, Mr. Stile has failed to present the Court with the actual affidavit and search warrant leading to the original search on September 13, 2011. The Court assumes that the original search warrant authorized the police to search "any motor vehicles belonging to or under the control of James Stile." *See id.*

"Where a warrant authorizes the search of an entire property or premises, the scope of the warrant includes automobiles on the property or premises that are owned by or are under the dominion and control of the premises owner or which reasonably appear to be so controlled." *United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002); *see United States v. Pennington*, 287 F.3d 739, 744-45 (8th Cir. 2002); *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990); *United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985). Indeed, the Seventh Circuit observed that "it does not matter" who owned the vehicle "unless it obviously

8

belonged to someone wholly uninvolved in the criminal activities going on in the house." *United States v. Evans*, 92 F.3d 540, 543-44 (7th Cir. 1996).

Here, Mr. Stile's motion falls far short of the mark.[5] All the Court knows is that the police searched a motor vehicle that was present at 20 Main Street in Sangerville on September 13, 2011, and that it later turned out that the vehicle was not registered to Mr. Stile. There is no evidence that at the time of the search the police had any reason to know that Mr. Stile did not own or control the Acura.

## IV. CONCLUSION

The Court DENIES James Stile's Notice of Motion to Suppress (ECF No. 208).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 25th day of November, 2013

---

[5] Of course, if the motor vehicle was in fact owned by Mr. Campbell, Mr. Stile would not have standing to complain about the illegality of a search of someone else's property.

9