UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

**ORDER ON THIRD PRO SE MOTION TO SUPPRESS**

Claiming that the contents of a videotape from a dashboard camera on a deputy sheriff's cruiser violate both his right of privacy and his deeply-held religious beliefs against the taking of photographic images, the Defendant moves to suppress the videotape. Absent the depiction of otherwise private or intimate activities, the Court declines to extend the right of privacy to images taken during a legal traffic stop and does not conclude that the Defendant's religious scruples require the exclusion of evidence that the Government contends demonstrates that he was the person who robbed a pharmacy at gunpoint in violation of federal criminal law.

## I. STATEMENT OF FACTS

### A. Procedural History

James Stile stands charged with robbery of controlled substances from a pharmacy, use of a firearm in furtherance of a crime of violence, possession of a firearm by a felon, and manufacture of 100 or more marijuana plants. *Indictment* (ECF No. 8). The indictment has been pending since October 20, 2011. *Id.* Mr. Stile has been dissatisfied with the services of each of his four court-appointed defense counsel, including his current defense attorney, William Maselli, Esq. *See*

*Order on James Stile's Mot. for In Forma Pauperis Status, Mot. to Stay, and Mot. for Trs.* at 1-2 (ECF No. 165). In the spring of 2013, Mr. Stile began filing pro se motions, and, during appearances in Court, repeatedly demanded that the Court address them. Typically, when a defendant is represented by counsel and files motions pro se, the Court sends each motion to defense counsel to determine whether he or she will adopt the pro se motion. After Mr. Stile filed a number of pro se motions, which his counsel had not adopted, the Court held a conference directly after its competency hearing on September 27, 2013 and Mr. Stile vociferously complained that his defense was inadequate and that he had been forced to raise meritorious legal issues by himself. *Minute Entry* (ECF No. 206). Despite misgivings about the dangers of hybrid representation, the Court concluded that in the unusual circumstances of this case, it would address Mr. Stile's then pending pro se motions even though they had not been adopted by defense counsel. *Id.*

B. Facts

Again, Mr. Stile has presented the facts in a somewhat truncated manner. *See Order on First Pro Se Mot. to Suppress* (ECF No. 294). To provide context, the Court has referred to other documents in this case. On September 12, 2011, Somerset County dispatch received a 911 call from the E.W. Moore & Sons Pharmacy in Bingham, Maine. *Recommended Decision on Mot. to Suppress* at 1 (ECF No. 133) (*Recommended Decision*). The caller reported that the pharmacy had just been robbed and that a solitary male had fled the scene traveling north on Route 16 in a bluish minivan. *Id.* Shortly thereafter, the Somerset County dispatch

2

received a call from a private citizen, reporting that a Mr. Ferber had seen a dark green minivan not speeding past Kingsbury Pond, but going faster than it should. *Order Affirming the Recommended Decision of the Magistrate Judge on Mot. to Suppress Evid. Obtained During Illegal Stop of Vehicle* at 2 n. 1 (ECF No. 143) (*Order*). Somerset County deputies stopped the minivan; James Stile was the driver. *Recommended Decision* at 2. After talking to Mr. Stile, the deputy decided to let him proceed on his way. *Id.* at 2-3. Apparently during this stop, the deputy kept his dashboard video-camera running. *Def.'s Mot. to Suppress* (*Def.'s Mot.*); *Def.'s Supporting Aff. for Mot. to Suppress* at 1 (*Stile Aff.*) (ECF No. 210).

In his motion, Mr. Stile states that "having been born of Christian parents, baptized as a Christian, having received his first Holy Communion as a Christian in 1963 and living his life by Christian values for the following fifty years as dictated by the Twelve Commandments . . . it is a violation of his religious beliefs where the taking of his image on film or video violates the Second Commandment." *Stile Aff.* at 8.

## II. THE PARTIES' POSITIONS

### A. James Stile's Motion

Mr. Stile's motion to suppress contains two parts. First, he contends that the police stop of his vehicle "lacked probable cause" and that the images from the deputy's dashboard camera must be suppressed. *Def.'s Mot.* at 1. Next, he says that the videotaping of the traffic stop violated his right of privacy. *Stile Aff.* at 4-7. Finally, citing *Quaring v. Peterson*, 728 F.2d 1121 (8th Cir. 1984), he claims that the

3

capture and dissemination of his image violates his deeply-held religious convictions. *Id.* at 8-9.

B. **The Government's Response**

In its response, the Government notes that on December 13, 2012, the Magistrate Judge concluded that the traffic stop of Mr. Stile on September 12, 2011 was based on a reasonable suspicion and declined to recommend the suppression of evidence from the stop. *Gov't's Resp. to Def.'s Mot. to Suppress (Dated May 5, 2013)* at 1 (ECF No. 234) (*Gov't's Opp'n*). On March 12, 2013, the Court affirmed the Magistrate Judge's recommendation. *Order* at 1-2. In view of the Court's conclusion that the September 12, 2011 traffic stop was legal, the Government contends that Mr. Stile may not now challenge the admissibility of the dashboard videotape on the ground that the stop was illegal. *Gov't's Opp'n* at 1-2.

Regarding Mr. Stile's claim that he has a religious compunction against the taking of his image, the Government has presented two exhibits, one a state of Maine driver's license and the other his own website, in which his image clearly appears. *Id.* Attach. 1, 2. Moreover, even assuming that Mr. Stile does in fact have deeply-held religious scruples against the taking of his photograph, the Government says that there is no authority for excluding photographic evidence of a defendant's commission of a crime based on assertions that the photographs would violate a defendant's religious beliefs. *Id.* at 2-3.

C. **James Stile's Reply**

In his reply, Mr. Stile differentiates between the legality of the traffic stop and the illegal seizure of his and his canine's images during the stop. *Def.'s Reply to Gov't's Opp'n to Def.'s Mot. to Suppress* at 1 (ECF No. 276). In effect, Mr. Stile is claiming that the taking of a videotape of his image constitutes a seizure within the meaning of the Fourth Amendment. *Id.* Next, regarding his free exercise claim, he reiterates that the Eighth Circuit decision in *Quaring* supports his position and distinguishes his compelled image on a driver's license with the taking of his image without permission during a traffic stop. *Id.* at 3-6.

## III. DISCUSSION

### A. The Dashboard Video

Once Mr. Stile concedes—as he must—that the deputy's traffic stop of his minivan passed constitutional muster, it is difficult to understand how videotaping the legal stop violates his rights. The one case Mr. Stile cites, *Dupont v. City of Biddeford*, No. 2:11-cv-00209, 2011 U.S. Dist. LEXIS 123531 (D. Me. Oct. 24, 2011), concluded that there was no constitutional violation from the dissemination of a dashboard video and dismissed a civil action premised in part on such a violation. If the right of privacy could attach to a dashboard videotape, it would have to reveal "highly private or intimate facts about a person's private life" and even this right "may give way if disclosure is material to the official task at hand." *Id.* at *9-10. Here, Mr. Stile has not alleged that the videotape captured anything that could be construed as highly private or intimate. Instead, as the Court understands it, the dashboard videotape captures Mr. Stile's face and clothing that was filmed during a

5

traffic stop and the Government seeks to admit the videotape so that the jury may compare the images of the pharmacy robber with what is revealed on the dashboard videotape. The Court rejects Mr. Stile's argument that the prospect of such evidence raises an issue of constitutional magnitude.

B.   **Religious Freedom**

Regarding Mr. Stile's contention that the taking of a photographic image violates his deeply-held religious beliefs, based on the photographs of Mr. Stile in Government attachments A and B, the Court is frankly skeptical that Mr. Stile has such long-held and deeply-rooted beliefs; the photographs demonstrate that his religious aversion to images is at best selective. *Quaring*. 728 F.2d at 1127 ("Indeed, few persons will be able to demonstrate the sincerity of their religious beliefs by showing that they possess no photographs or pictures"). Nevertheless, assuming that Mr. Stile has a religious objection to photographs of his face, the Court declines to exclude photographic images of Mr. Stile that the Government contends demonstrate that he committed a serious federal felony.

Mr. Stile himself concedes the obvious exception for his religious scruples. In his reply, Mr. Stile explains that he agreed to allow his photograph to be taken for a driver's license because, in effect, the law required him to do so. *Def.'s Reply* at 5. If Mr. Stile's religious principles acknowledge the primacy of the law to obtain a driver's license, he must similarly acknowledge the law's primacy for purposes of investigating and prosecuting serious federal felonies.

Finally, the Court notes that the *Quaring* case involves something quite different than a photograph from a traffic stop that the Government seeks to admit into evidence in a criminal trial.[1] In *Quaring*, the Eighth Circuit concluded that the state of Nebraska failed to demonstrate a compelling state interest for requiring a person to have a photograph on her driver's license, and that a limited exemption for the few individuals whose religious beliefs warranted a license without a photo would not burden the state of Nebraska administratively. *Quaring*, 728 F.2d at 1126-27. Here, the Government's case for a compelling state interest is much stronger since its interest is grounded on its ability to enforce the criminal laws, the videotape of Mr. Stile was created during a legal stop, the photograph of the robber was taken during the commission of a crime, and the burden on the Government would be to exempt a class of individuals from the same evidence in a criminal trial that would be admissible against all other defendants.[2]

## IV. CONCLUSION

The Court DENIES James Stile's Motion to Suppress (ECF No. 210).

---

[1] *Quaring* is one case. Whether the state may compel individuals who wish to have a driver's license to submit to a facial photograph has split the courts. *Valov v. Dep't of Motor Vehicles*, 132 Cal. App. 4th 1113 (2005) (upholding the photograph requirement against religious challenge); *Johnson v. Motor Vehicle Div., Dep't of Revenue*, 593 P.2d 1363 (Colo. 1979) (same); *In re Miller*, 684 N.Y.S.2d 368 (1998) (rejecting religious challenge to photograph requirement on a state hunting license); *South Dakota v. Arnold*, 379 N.W.2d 322 (S.D. 1986) (upholding drivers' license requirement against religious challenge), *but see Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.*, 380 N.E.2d 1225 (Ind. 1978) (concluding that alternatives were available to the license photograph requirement). The closest First Circuit case is *Alexander v. Trustees of Boston Univ.*, 766 F.2d 630 (1st Cir. 1985), where the Court reversed an injunction against Boston University that had prevented the University from denying aid to applicants who had refused on religious grounds to complete Department of Education forms that required them to certify their compliance with the Military Selective Service Act, which mandated registration.

[2] Mr. Stile denies committing the robbery and he would be in an awkward position to claim a privacy interest in the image of the robber.

7

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2013