UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

**ORDER ON MOTION TO DISMISS INDICTMENT**

The Court denies the Defendant's pro se motion to dismiss the indictment because, contrary to the Defendant's contentions, hearsay evidence may be presented to a grand jury, and because the Defendant's list of alleged inaccuracies in a law enforcement officer's grand jury testimony would require a pretrial evidentiary hearing to resolve and, even if proven, do not support dismissal of the indictment.

**I. STATEMENT OF FACTS**

**A. Procedural Background**

James Stile stands charged with robbery of controlled substances from a pharmacy, use of a firearm in furtherance of a crime of violence, possession of a firearm by a felon, and manufacture of 100 or more marijuana plants. *Indictment* (ECF No. 8). The indictment has been pending since October 20, 2011. *Id.* Mr. Stile has been dissatisfied with the services of each of his four court-appointed defense counsel, including his current defense attorney William Maselli, Esq. *See Order on James Stile's Mot. for In Forma Pauperis Status, Mot. to Stay, and Mot. for Trs.* at 1-2 (ECF No. 165). In the spring of 2013, Mr. Stile began filing pro se

motions, repeatedly demanding that the Court address them. Typically, when a defendant is represented by counsel and files motions pro se, the Court sends each motion to defense counsel to determine whether he or she will adopt the pro se motion.

After a delay caused by Mr. Stile's earnest assertion that he was not competent, Mr. Stile underwent a competency evaluation and the Court held a competency hearing on September 26, 2013. *Minute Entry* (ECF No. 206). After finding Mr. Stile competent, the Court addressed Mr. Stile's vociferous complaint that it had failed to address the proliferation of pending pro se motions. *Id.* Despite misgivings about the dangers of hybrid representation, the Court concluded that in the unusual circumstances of this case, it would address Mr. Stile's then pending pro se motions even though they had not been adopted by defense counsel. *Id.*

On September 27, 2013, James Stile filed a lengthy motion to dismiss the indictment with thirty-seven exhibits. *Def.'s Mot. for Dismissal of Indictment* (*Def.'s Mot.*); *Ex. Index.* at 1-2 (ECF No. 223). The Government responded on October 10, 2013. *Gov't's Resp. to Def.'s Mot. for Dismissal of Indictment* (ECF No. 242). Mr. Stile replied on November 15, 2013. *Def.'s Reply to Gov't's Opp'n to Def.'s Mot. for Dismissal of Indictment* (ECF No. 283).

## II. THE PARTIES' POSITIONS

### A. James Stile's Motion

The nub of Mr. Stile's argument is that because the indictment was based in part on hearsay evidence presented to the grand jury and because the Government's

sole witness, Alcohol, Tobacco, Firearms & Explosives Special Agent Brent McSweyn allegedly committed perjury, the Court should dismiss the indictment. *Def.'s Mot.* at 1; *Def.'s Supporting Aff. for Mot. for Dismissal of Indictment* at 1-17 (*Def.'s Aff.*) (ECF No. 223).

B.  **The Government's Response**

In its response, the Government argues that a grand jury is allowed to consider hearsay evidence in determining whether to issue an indictment. *Gov't's Opp'n* at 1-2. It disputes Mr. Stile's contentions that Agent McSweyn committed perjury during his grand jury testimony and says that to the extent Agent McSweyn was inaccurate, it was on non-material or collateral matters. *Id.* at 2-6.

C.  **James Stile's Reply**

Mr. Stile replied on November 15, 2013. *Def.'s Reply to Gov't's Opp'n to Def.'s Mot. for Dismissal of Indictment* (ECF No. 283) (*Def.'s Reply*). Mr. Stile writes: "The Government argues that hearsay testimony before the Grand Jury is permissible and not a basis for dismissal of indictment. This is not true!" *Id.* at 2. Later, Mr. Stile explains that he "does not argue that hearsay testimony [is] impermissible at a Grand Jury proceeding," but he "does argue that such testimony is impermissible when direct testimony was available from the eyewitnesses of the events being testified." *Id.* He says that if the eyewitnesses had testified, the "result, more likely than not, would have been different." *Id.* Regarding Agent McSweyn's inaccuracies, Mr. Stile reiterates that Agent McSweyn was, in Mr. Stile's view,

3

mistaken in certain details and he rejects the Government's contention that these mistakes were innocuous. *Id.* at 1-6.

## III. DISCUSSION

### A. Hearsay Evidence and the Grand Jury

Simply put, Mr. Stile is wrong in his claim that a grand jury may not consider hearsay evidence if the actual witnesses were available to testify. In *Costello v. United States*, 350 U.S. 359 (1956), the United States Supreme Court addressed a defendant's claim that the indictment was flawed because the only evidence before the grand jury was hearsay:

> In *Holt v. United States*, 218 U.S. 245 (1910), this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence, there was very little evidence against the accused. The Court refused to hold that such an indictment should be quashed, pointing out that [t]he abuses of criminal practice would be enhanced if indictments could be upset on such a ground. The same thing is true where as here all the evidence before the grand jury was in the nature of hearsay. If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Id.* at 363 (internal quotation marks and citations omitted). Following the Supreme Court's lead, the First Circuit has stated flatly that "[h]earsay evidence is a sufficient basis for an indictment." *United States v. Font-Ramirez*, 944 F.2d 42, 46 (1st Cir. 1991); *United States v. De Jesus*, 230 F.3d 1, 4 (1st Cir. 2000) ("[T]here is,

of course, no prohibition on either the presentation of hearsay evidence to a grand jury or the grand jury's use of that hearsay evidence in determining whether to indict").

Mr. Stile asserts that the rule is different if the eyewitnesses were available. He maintains that if eyewitnesses are available, the Government must call them to testify before the grand jury and not rely on hearsay accounts of what these witnesses would say if called to testify. Mr. Stile claims that this rule against hearsay applies when "the result [rendered by the grand jury], more than likely, would have been different had [the eyewitnesses] testified before the Grand Jury." Mr. Stile cites no authority in his initial motion, but provides his interpretation of *United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir. 1972), on the last page of his reply. *Def.'s Reply* at 7.

In *Estepa*, the Second Circuit pointed out that, in the past, it had frequently allowed "ample" latitude in the Government's "needless reliance on hearsay before the grand jury," but wrote that this latitude was subject to two "provisos." 471 F.2d at 1137. The second proviso, which roughly resembles the language Mr. Stile uses in support of his hearsay argument, was "that the case does not involve a high probability that with eyewitnesses rather than hearsay testimony the grand jury would not have indicted." *Id.* (internal quotation marks and citations omitted).

Courts have tended not to follow *Estepa. See United States v. Murphy*, 768 F.2d 1518, 1533-34 (7th Cir. 1985) (describing the foundation for *Estepa* and similar cases as "shaky at best," in light of Supreme Court precedent); *United States v. Al*

5

*Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) ("It is well settled that an indictment may be based solely on hearsay. In this circuit that rule applies even if the government could have produced percipient witnesses"). In *United States v. Jett*, the First Circuit observed that "it is normally preferable for a grand jury to have something other than hearsay" and expressed a "dislike" for "a practice of hearsay only."[1] 491 F.2d 1078, 1081 (1st Cir. 1974). It then, however, immediately clarified that "we do not suggest that a defendant is entitled as of right to demand grand jury minutes to see if he can discover whether hearsay, or only hearsay, was used." *Id.* at 1081-82. The *Jett* Court regarded with "little enthusiasm those cases which suggest that a defendant's now enlarged right of inspection places some kind of a burden on the government to present particular witnesses to the grand jury." *Id.* at 1082.

Instead, the First Circuit reiterated that an "indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974)). Similarly, in *United States v. Oliver*, the First Circuit found *Estepa* "inapposite" to the defendant's claim that he was entitled to demand grand jury minutes in order to "ascertain the 'quality of the hearsay evidence' submitted to the grand jury."[2] 570 F.2d 397, 402 (1st Cir. 1978). The defendant, the First

---

[1] *Jett* did not answer the narrow question of whether the First Circuit would agree with *Estepa* on its facts. 491 F.2d at 1081-82 (discussing an indictment based upon hearsay "[w]ithout deciding whether we would agree with Estepa on its facts"); *see also United States v. Oliver*, 570 F.2d 397, 402 (1st Cir. 1978) (referring to *Estepa* as "inapposite to the instant situation").

[2] To prove that an indictment has been generated by excessive hearsay, a defendant must have access to grand jury material, but the right of a defendant to that material is highly circumscribed. As one court observed, "[t]he salient point is that to obtain grand jury materials, a

6

Circuit explained, had "suggested no basis for believing that the grand jury was misinformed about the quality of the evidence it was presented," while in *Estepa* "the court found that the grand jury was led to believe that it was presented eye-witness testimony, whereas the testimony was actually hearsay." *Id.* The Court has closely reviewed Mr. Stile's motion and reply, and does not find any evidence that the grand jury was led to believe it was being presented eye-witness testimony that was actually hearsay testimony. *See, e.g.*, *Def.'s Aff.* at 15-17 ("Discussion of Law" section of Mr. Stile's motion).

Subsequent to *Jett* and *Oliver*, the Supreme Court stated that its "words in *Costello* bear repeating." *United States v. Williams*, 504 U.S. 36, 54-55 (1992). In *Williams*, the Court noted it had recently held that "'the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment,' and that 'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard." *Id.* at 54 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988)). The Supreme Court reiterated its words in *Costello*: "Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].'" *Id* at 54-55 (quoting *Costello*, 350 U.S. at 364) (alteration in original).

Here, Mr. Stile seeks to discredit the reliability or competence of the evidence presented to the grand jury and to have the indictment dismissed based on his

---

defendant must demonstrate something more than that inspection is necessary to see if there were any errors, even when the inspection is perhaps the only way to discover the errors." *United States v. McElroy*, 392 F. Supp. 2d 115, 118 (D. Mass. 2005).

7

characterization of the evidence. The Court rejects his attempts on this record to challenge the indictment "on the ground that there was inadequate or incompetent evidence before the grand jury." *Williams*, 504 U.S. at 54; *Costello*, 350 U.S. at 363. Of course, if—as Mr. Stile claims—the Government's evidence is insufficient to support its charge that he committed the crimes with which he has been indicted, he has the undoubted constitutional right to put the Government to its proof and demand that it demonstrate—at trial—that he is guilty of the crimes charged beyond a reasonable doubt.

### B. Prosecutorial Misconduct and Perjured Testimony

Mr. Stile's second but related contention is that the prosecutor engaged in misconduct before the grand jury to obtain the indictment and that the Government witness, ATF Agent Brent McSweyn, gave perjured testimony to the grand jury. *Def.'s Mot.* at 1; *Def.'s Aff.* at 1-17. Specifically, Mr. Stile charges the following areas of misrepresentation:

(1) that the clothes the robber wore during the robbery matched the Defendant's clothing;

(2) that Mr. Stile was very well known to Piscataquis County Deputies;

(3) that many complaints had been filed against Mr. Stile;

(4) that based on the initial description, the Piscataquis County Deputies felt that the general description fit Mr. Stile;

(5) that references to the Deputies were phrased as "they" when in fact there only one Deputy was involved in the investigation;

(6) that references were made to an alert for a van, when in fact the alert was for a blue van and Mr. Stile was operating a green van;

(7) that the County Sheriff's Office received a complaint about a speeding green minivan, when in fact the eyewitness never described the van as speeding;

(8) that reference was made to a vertical stripe across the back of the robber's blue windbreaker when in fact the stripe was horizontal;

(9) that the description of the robber's firearm is contradicted by the pharmacy videotape of the robbery;

(9) that the value of the drugs is based on hearsay;

(10) that the mention of narcotics being taken, instead of controlled substances, prejudiced the grand jury;

(11) that the testimony about torn fingers on the latex gloves is inaccurate;

(12) that the testimony about the DNA on the gloves is inaccurate;

(13) that the rendition of his jailhouse telephone calls is inaccurate;

(14) that the testimony about his admissions about the marijuana is inaccurate;

(15) that the testimony about marijuana plant clones is inaccurate and constitutes prosecutorial misconduct;

(16) that Agent McSweyn had a vendetta against Mr. Stile because of charges against Mr. Stile in 2003 that were dismissed;

(17) that a contributing factor to Agent McSweyn's vendetta against the Defendant is that Mr. Stile told Agent McSweyn during the execution of a search warrant at the defendant's residence, and then again in a jailhouse interview, that Agent McSweyn looked unhealthy, as if he had AIDS;

(18) that Agent McSweyn falsely said that they found a gun right where Mr. Stile said it was; and

(19) that Agent McSweyn falsely said that Mr. Stile had requested a Happy Meal in exchange for information about the location of the gun.

*Id.* at 1-15.

The First Circuit has ruled that there is a "presumption of regularity" surrounding a grand jury proceeding, which a "conclusory allegation" will not rebut. *In re Inzirillo*, 542 F.2d 90, 91 (1st Cir. 1976) (citation omitted); *United States v. Thomas*, No. CR-06-4-B-W, 2006 U.S. Dist. LEXIS 17414, *9-10 (D. Me. Apr. 5, 2006). The Supreme Court explained the reason for this rule in *Costello*, where it described the need to avoid "a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." 350 U.S. at 361-64.

Turning to Mr. Stile's specific arguments, some of his contentions are simply wrong as a matter of law. For example, his argument that to satisfy the jurisdictional amount of $500, the prosecution was required to present documentary evidence, not the hearsay statement of the pharmacy owner, is contradicted by well-established law, as previously discussed, that a grand jury may consider hearsay evidence. Similarly, his contention that Agent McSweyn was prohibited from

describing the stolen pills as narcotics is also erroneous. Some of Mr. Stile's contentions are matters of perspective. For example, whether the Piscataquis Deputies knew Mr. Stile "very well," well, or in passing is necessarily a matter of opinion. Regarding his objections about the color of the minivan and whether it was speeding, the Court has previously discussed and resolved against him these differences in semantics. *See Order Affirming the Recommended Decision of the Magistrate Judge on Mot. to Suppress Evid. Obtained During Illegal Search of Vehicle* at 2 n.1 (ECF No. 143). Finally, based on this record, the Court is unable to determine whether Agent McSweyn's testimony was accurate concerning the tears in the latex gloves that law enforcement found at Mr. Stile's residence. To resolve this and other disputes, the Court would have to hold exactly the type of preliminary trial that the Supreme Court has advised against. Finally, Mr. Stile's accusation that Assistant United States Attorney McCarthy engaged in prosecutorial misconduct because he asked Agent McSweyn about marijuana clone plants is frivolous.

Even if Mr. Stile could demonstrate at such a hearing that Agent McSweyn's testimony was inaccurate, he would still have to prove that the inaccuracy was prejudicial. *Bank of Nova Scotia*, 487 U.S. at 254 ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants"). In the words of the First Circuit:

> Where a court is asked to dismiss an indictment before the conclusion of trial, the standard of prejudice is a high one: that "dismissal of the

indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring in the judgment)).

*In re United States*, 441 F.3d 44, 60 (1st Cir. 2006).

Again, based on this record, Mr. Stile has failed to demonstrate that the grand jury proceedings against him were flawed and should be dismissed.

## IV. CONCLUSION

The Court DENIES James Stile's Motion for Dismissal of Indictment (ECF No. 223).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 18th day of December, 2013