UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

## ORDER ON DEFENDANT'S MOTION FOR DISCLOSURE OF ADDITIONAL JURY RECORDS

In his motion for disclosure of additional jury selection records, James Stile has sought access to Juror Qualification Questionnaires, records maintained concerning potential jurors who did not return such questionnaires, and records concerning potential jurors who were excused or exempted from jury service. Balancing Mr. Stile's right to this information against the privacy interests of the grand jurors and the need for grand jury secrecy, the Court concludes that Mr. Stile is entitled to much but not all of this information and orders the Clerk of Court to produce redacted records for Mr. Stile.

## I. PROCEDURAL BACKGROUND

On February 20, 2014, James Stile moved for an order "requiring the Clerk of the United States District Court for the District of Maine to produce to the defense[] all relevant and pertinent information regarding the process and procedures used to select Grand and Petite Jurors." *Def.'s Mot. for Disc. of Grand Jury and Petit Jury Data and Notice of Intent to Challenge the Jury Selection Process* at 1 (ECF No. 367). Mr. Stile stated that he intended to "challenge the composition of the Grand Jury that

indicted Defendant, based upon a potential violation of the 'fair cross-section' requirement of 18 U.S.C. [§] 1861, *et seq.*, and the United States Constitution." *Mot. for Disclosure of Additional Jury Rs.* at 1 (ECF No. 392) (*Def.'s Mot.*).

On March 14, 2014, the Court granted Mr. Stile's request for discovery in part, ordering the Clerk of Court to make available to defense counsel the following: (1) the applicable version of the District of Maine's Jury Plan, DISTRICT OF MAINE, PLAN FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS FOR SERVICE IN THE DISTRICT OF MAINE (Dec. 16, 2008) (JURY PLAN); (2) the AO Form 12, REPORT ON OPERATION OF THE JURY SELECTION PLAN – FORM AO 12 (DEC. 22, 2010) (FORM AO 12); (3) the names of the grand jurors in the Master Wheel and Qualifying Wheel at the time applicable to Mr. Stile; and (4) a redacted version of the documentation relating to a Grand Jury member who was excused for good cause. *Order on Def.'s Mot. for Discovery of Grand Jury and Petit Jury Data* at 7-10 (ECF No. 381) (*Order*). The Court further instructed Mr. Stile that if he wished to seek additional records, he could petition the Court "to demonstrate his particularized need for such additional information." *Id.* at 7.

## II. The Parties' Positions

### A. Mr. Stile's Motion

#### 1. Records Requested

On April 9, 2014, Mr. Stile filed a motion seeking three sets of additional records regarding this District's jury selection process. *Def.'s Mot.* at 1. First, he requests access to all Juror Qualification Questionnaires (Questionnaires) submitted by jurors who became part of the Qualified Wheel. *Id.* at 2. Mr. Stile explains that

this information is the data source for the AO 12 Report, a report which contains statistics on the racial and ethnic composition of the Qualified Wheel compared to the population of the District of Maine at large. *Id.* Mr. Stile argues that "[w]ithout reviewing the actual questionnaires, the defense must simply accept the data contained in the AO 12 . . . as true" and that "it is anticipated that some of the questionnaires will simply not answer the race and ethnicity questions, potentially giving rise to arguments about the accuracy of the statistics." *Id.* Mr. Stile submits that "[w]ithout reviewing the actual questionnaires, for the presence of omitted information, the defense would have no way of knowing whether the statistics are skewed." *Id.*

Next, Mr. Stile requests "[a]ny records maintained by the Clerk . . . concerning jurors who did not return questionnaires, including the zip codes of the jurors who did not return questionnaires and any records concerning follow-up by the Clerk of the mailing of the questionnaires." *Id.* He suggests that some areas of Maine feature higher concentrations of African Americans and Native Americans than other areas, and if the Clerk's mailings resulted in "more no-responses" in places where a relatively high minority population exists, this may be evidence of exclusion of minorities from the Qualified Wheel—if the Clerk did not follow-up on the non-responses. *Id.* at 2-3.

Finally, Mr. Stile seeks records "relating to [the] determination of qualifications, excuses and exemptions" of jurors who were "summonsed to be part of the Qualified Wheel." *Id.* at 3. Mr. Stile notes that the 2008 Jury Plan authorized

the Clerk of Court to exclude and exempt jurors who have been summonsed, and that the Clerk "shall note the reason" for exempting or excluding any such person. *Id.* Mr. Stile argues he needs "to know how and why jurors were excused or exempted in order to determine" whether minorities were excluded from or underrepresented in the Qualified Wheel. *Id.*

### 2.    Legal Argument

Mr. Stile states that under 28 U.S.C. § 1867(f), a litigant has "an unqualified right to inspection of certain materials used in jury selection, during the preparation and pendency of a motion challenging the selection procedures under the Act." *Id.* (citing *Test v. United States*, 420 U.S. 28 (1975)). He puts forth that "[t]o avail himself of the right of access to otherwise unpublic jury selection records, a litigant needs only allege that he is preparing a motion challenging the jury selection procedures." *Id.* (quoting *United States v. Layton*, 519 F. Supp. 946, 958 (N.D. Cal. 1981)). He points out that such a motion "may not be denied because it is unsupported by a 'sworn statement of facts which, if true, would constitute a substantial failure to comply 'with the provisions of the Jury Selection Act.'" *Id.* at 4 (quoting *United States v. Marcano-Garcia*, 622 F.2d 12, 18 (1st Cir. 1980)).

Mr. Stile acknowledges that *Test v. United States* did not directly address whether defendants are entitled to access juror qualification forms but notes that on remand the Tenth Circuit allowed the *Test* defendant to inspect the qualifying questionnaires returned by prospective jurors and that "[s]everal federal decisions have followed suit." *Id.* (citing *United States v. Test*, 550 F.2d 577, 581 (10th Cir.

1976); *United States v. Williams*, CR No. 06-00079 DAE, 2007 U.S. Dist. LEXIS 29876 (D. Haw. Apr. 23, 2007); *United States v. Friel*, Criminal No. 06-25-P-H, 2006 U.S. Dist. LEXIS 50594 (D. Me. July 21, 2006); *United States v. Causey*, H-04-025, 2004 U.S. Dist. LEXIS 30015 (S.D. Tex. May 25, 2004)).  Mr. Stile concedes that "several courts have denied defendants access to the juror questionnaires" on the basis that "the security of the jurors and the secrecy and integrity of the grand jury process[] overrides the defendant's need to have access to personal information about the jurors." *Id.* (citing *United States v. McLernon*, 746 F.2d 1098, 1122-23 (6th Cir. 1984); *United States v. Rice*, 489 F. Supp. 2d 1312 (S.D. Ala. 2007)[1]; *United States v. Diaz*, 236 F.R.D. 470, 483 (N.D. Cal. 2006); *United States v. Swan*, No. CRIM 03-36-01-B, 2003 U.S. Dist. LEXIS 13573 (D.N.H. Jul. 22, 2003)).

Mr. Stile notes that he "is not seeking the names of the jurors who indicted him, as was the defendant in each of the cases referred to above," where access to juror questionnaires was denied.  *Id.* at 5.  He notes that he "is amenable to any measure that the Court feels is appropriate to protect the identities of the jurors," and states that "[i]n essence, Defendant seeks only to review the demographical information contained in the questionnaires." *Id.*

## B.    The Government's Response

On April 17, 2014, the Government responded, objecting to the disclosure of the additional records requested by Mr. Stile.  *Gov't Resp. to Def.'s Mot. for*

---

[1]    For *United States v. Rice*, Mr. Stile cites "22 F. Supp. 2d 668 (M.D. La. 1999)," but the Court found a different and unrelated case at that citation.  The Court assumes that the citation included above, found in the Government's response, is what Mr. Stile was referencing.

*Disclosure of Additional Jury Rs.* (ECF No. 394) (*Gov't's Opp'n.*). The Government argues that the information provided to Mr. Stile under the Court's previous order is sufficient to allow Mr. Stile to determine whether the "fair cross section requirement" has been violated, and that "[t]he additional information being requested is not reasonably necessary for preparation of [the] motion." *Id.* at 2. The Government maintains that despite *Test*, "federal courts have uniformly declined to allow unfettered access to all jury-related documents and records . . . . [Section 1867] is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk." *Id.* at 1-2 (quoting *Rice*, 489 F. Supp. 2d at 1316). It notes that the Seventh Circuit has held that § 1867(f) "'provides that the contents of the records or papers used by the clerk shall not be disclosed unless those records' contents are shown to be "necessary" for the preparation of a motion' alleging substantial failure to comply with [§ 1867]." *Id.* at 2 (quoting *Rice*, 489 F. Supp. 2d at 1316) (quoting *United States v. Davenport*, 824 F. 2d 1511, 1515 (7th Cir. 1987))).

With respect to the Questionnaires, the Government explains that the AO 12 report compiles the demographic information provided in the Questionnaires and notes that "[t]he defendant has provided no facts and the government is unaware of any facts suggesting that the compilation of this data in the AO 12 is flawed." *Id.* The Government suggests that Mr. Stile's request to "independently verify the data" included in the AO 12 Report, *Def.'s Mot.* at 2, "would amount to nothing more than a non-productive and time-consuming exercise to compile data that has already been compiled." *Gov't's Opp'n* at 2-3. The Government rejects Mr. Stile's suggestion that

some Questionnaires "will simply not answer the race and ethnicity questions," *Def.'s Mot.* at 2, pointing out that the AO 12 "includes an 'Unknown' category – presumably for the Questionnaires that did not include an answer to the Race question." *Gov't's Opp'n* at 3. The Government quotes *United States v. Diaz*: "Because JS-12 forms supply the relevant demographic data (such as racial, ethnic and gender statistics) required to challenge this district's jury selection procedures, defendants do not need the questionnaires in preparation of their motion." *Id.* (quoting *Diaz*, 236 F.R.D. at 482). For these reasons, the Government submits that providing access to the Questionnaires "is not reasonably necessary for the preparation of a motion pursuant to [§ 1867]." *Id.*

With respect to Mr. Stile's request for records relating to the Clerk of Court's actions concerning jurors who did not return questionnaires and concerning the determination of excuses and exemptions, the Government points out that the Jury Plan describes the processes to be followed in these situations. *Id.* (citing JURY PLAN §§ VII, X). It notes that "Defendant has provided no information suggesting that the Court, the Clerk of the Court, or their designees have failed to follow the protocols described in the District Plan." *Id.* On this basis, the Government argues that "absent a showing of disparate impact on a cognizable group, requesting specific information about exempted or excused jurors is again not reasonably necessary for the preparation of a motion pursuant to [§ 1867]." *Id.*

Finally, the Government requests that any potential identifying information be redacted from all records if the Court decides to grant Mr. Stile's motion. *Id.* at 4.

## III. DISCUSSION

### A. 18 U.S.C. § 1867

In its March 12, 2014 Order, the Court described the legal authority at issue in this motion. *See Order* at 3-5. Section 1867 of United States Code title 28 describes the procedures by which a defendant "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." § 1867(a). Section § 1867(f) provides:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

The question under the plain text of the statute is whether the records Mr. Stile has requested "may be necessary in the preparation or presentation of" his prospective fair cross section challenge. § 1867(f); *see Swan*, 2003 U.S. Dist. LEXIS 13573, at *2 ("This provision expressly prohibits the disclosure of records and papers used in the jury selection process, unless they are shown to be 'necessary' in preparing a motion to challenge the process itself").

The United States Supreme Court has stated that § 1867(f) provides "essentially an unqualified right to inspect jury lists." *Test*, 420 U.S. at 30. The First Circuit has instructed that, under *Test*, "while the district court may establish

procedures whereby the inspection may take place, the district court does not have discretion to formulate additional requirements beyond those established by the statute." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996). The *Royal* Court also made it clear that any considerations weighing against the release of jury selection records at this stage must not relate to the merits of a defendant's contemplated challenge to the jury selection process. *Id.* ("Because the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable cause of success on the merits of a challenge to the jury selection provisions"). "To avail himself of the right to jury selection records, a litigant need only allege that he is preparing a motion to challenge the jury selection process." *Id.*

The First Circuit has not adopted a position on whether juror questionnaires are part of the "unqualified right" described in *Test*, and has explicitly noted that § 1867(f) is not "crystal clear about access to questionnaires." *United States v. Schneider*, 111 F.3d 197, 204 (1st Cir. 1997); *cf. Davenport*, 824 F.2d at 1514-15 ("*Test* does not hold that completed juror questionnaires must be made available to defendants in addition to jury lists"). "Courts faced with such requests generally limit the litigant's 'unqualified right' to grand jury lists and deny access to records that either reveal personal information of grand jurors or pierce the secrecy of the proceedings." *Order* at 4 (quoting *Swan*, 2003 U.S. Dist. LEXIS 13573, at *3-4); *accord Rice* 489 F. Supp. 2d at 1319 ("courts have displayed profound reluctance to provide litigants with access to such materials, given the personal information

contained on such questionnaires and the apparent unhelpfulness of such questionnaires in assessing the viability of any fair cross-section challenge").

## B. Analysis

Under § 1867(f) as interpreted by *Test* and *Royal*, Mr. Stile has set out reasons demonstrating that his demand for certain jury selection records—the Questionnaires, a list of zip codes of the jurors who did not return the Questionnaires, and the records relating to the determination of qualifications, excuses, and exemptions—falls within the "preparation or presentation of a motion" language of § 1867(f). The "fair cross section requirement" states:

> It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.

28 U.S.C. § 1861. Mr. Stile has argued that he requires access to these records to determine whether racial or ethnic minorities were excluded from the Qualified Wheel in violation of the fair cross section requirement. *See Def.'s Mot.* at 2-3. This satisfies the *Royal* Court's instruction that "to avail himself of the right to jury selection records, a litigant need only allege that he is preparing a motion to challenge the jury selection process," 100 F.3d at 1025; the Court does not consider the merits of Mr. Stile's contemplated challenge.

That being said, "[c]ourts have been chary about handing over the names, addresses, and personal identifying information about grand jurors." *Order* at 4; *see Swan*, 2003 U.S. Dist. LEXIS 13573, at *3-4; *Rice* 489 F. Supp. 2d at 1319. Although such a caveat may appear to be difficult to reconcile with the broad right articulated

in *Test* and *Royal*, the First Circuit has noted subsequent to *Royal* that § 1867(f) is not "crystal clear about access to questionnaires." *Schneider*, 111 F.3d at 204.

By not seeking the "names of the jurors who indicted him" and by expressly stating that he is "amenable to any measure that the Court feels is appropriate to protect the identities of the jurors, including redaction of the names and street addresses of the jurors," *Def.'s Mot.* at 5, Mr. Stile has attempted to tailor his request to assure the Court that providing such records will "[n]either reveal personal information of grand jurors [n]or pierce the secrecy of the proceedings." *Swan*, 2003 U.S. Dist. LEXIS 13573, at *3-4. The nature of the records sought, and Mr. Stile's relatively restrained demands for juror information, differentiate his request from other cases in which requests for grand jury records were denied.[2] In *United States v. Swan*, the issue was "whether personal information (*i.e.*, name, address, phone number) and the voting record of individuals who sat on the grand jury that indicted the defendant is included in his 'unqualified right' to jury lists." 2003 U.S. Dist. LEXIS 13573, at *3. Similarly, in *United States v. Rice*, the Court denied the request for records because, inter alia, "any marginal benefits of disclosure would be greatly outweighed by the risks associated with dissemination of personal information contained on those questionnaires." 489 F. Supp. 2d at 1320. Providing Mr. Stile

---

[2]    Grand jury records have been sought in a District of Maine case. *See Friel*, 2006 U.S. Dist. LEXIS 50594, at *5-8, *aff'd*, 448 F. Supp. 2d 222 (D. Me. 2006). Mr. Stile cites *United States v. Friel* only in passing, *Def.'s Mot.* at 4, and the Government does not mention the case. In *Friel*, based on a concession by the Government, Magistrate Judge Cohen concluded that the Defendant was entitled to certain "completed juror questionnaires." 2006 U.S. Dist. LEXIS 50594, at *5-6. However, the Magistrate Judge denied the remainder of the requested records on the basis that "the defendant . . . failed to make the requisite showing of particularized need to access grand-jury-related information . . . ." *Id.* at *5-8. Although the specifics in *Friel* are not especially clear, in general, *Friel* seems consistent with what the Court has done in this case.

with redacted Questionnaires, a list of zip codes, and redacted documentation setting out why particular jurors were excused/exempted from serving on the Grand Jury that indicted him does not present the same privacy issue. *Cf. Williams*, 2007 U.S. Dist. LEXIS 29876, at *18-19 (granting request for access to jury records but finding "good cause to redact the potential jurors' personal information . . . because of their privacy interests in this information and because such information is not relevant to Defendant's potential fair cross section challenge"). In the Court's view, the redaction of personal identifiers, such as name, address, juror identification number, month and day of birth, and occupation, balances the grand juror's legitimate right of privacy against the Defendant's right to mount a challenge to the composition of the grand jury.

The Government expresses its concern that the AO 12 report compiles the demographic information in the Questionnaires and that Mr. Stile "has provided no facts and the government is unaware of any facts suggesting that the compilation of this data . . . is flawed in some way." *Def.'s Mot.* at 2. However, the Government's concern requires the type of inquiry into the merits of a fair cross section challenge that the *Royal* Court frowned upon. *See Royal*, 100 F. 3d at 1025.

Finally, the Court finds that Mr. Stile is not entitled to "records maintained by the Clerk . . . concerning follow-up by the Clerk of the mailing of the questionnaires," *Def.'s Mot.* at 2. His theory that there may be "systematic exclusion of minorities from the Qualified Wheel due to the failure of the Clerk to follow up on 'no-responses,'" *Def.'s Mot.* at 3, presupposes that minorities were systematically

excluded from the qualified wheel.  If, based on the information Mr. Stile receives as part of this Order and the previous Order, Mr. Stile elects to seek further relief from the Court, the Court will consider his request at that time.[3]

## IV.   ORDER

The Court GRANTS IN PART James Stile's Motion for Disclosure of Additional Jury Records (ECF No. 392).  It DISMISSES WITHOUT PREJUDICE Mr. Stile's request for records of follow-up by the Clerk regarding potential jurors who did not complete their Questionnaires.

The Court ORDERS the Clerk of Court to provide Mr. Stile's attorney, Peter Rodway, Esq., with the following records:

1)   <u>Juror Qualification Questionnaires</u>

These are the properly redacted versions of completed Juror Qualification Questionnaires relating to the Master Wheel for jury service in Bangor,[4] Maine maintained during the time period relevant

---

[3]     The Court dismisses without prejudice Mr. Stile's requests for the records concerning follow-up by the Clerk, in case his further review results in new and particular purposes to inspect these additional records.

[4]     The United States District Court for the District of Maine sits in both Bangor and Portland. Mr. Stile was indicted by a jury sitting in Bangor, in accordance with the Jury Plan:

> The names of prospective jurors to serve on grand and petit juries in Bangor shall be selected at random from the Central Voter Registration System from the Counties of Aroostook, Franklin, Hancock, Kennebec, Penobscot, Piscataquis, Somerset, Waldo, and Washington; and shall be maintained in the Master Wheel for jury service in Bangor.

JURY PLAN § VI.  The records produced as part of this Order do not include records relating to prospective jurors in Portland, as they are not relevant to Mr. Stile.  *See id.* ("The names of prospective jurors to serve on grand . . . juries in Portland shall be selected at random from the Central Voter Registration System from the Counties of Androscoggin, Cumberland, Knox, Lincoln, Oxford, Sagadahoc, and York").

to Mr. Stile. *See* JURY PLAN § VII. The Questionnaires come in two formats: completed questionnaires that were mailed or otherwise provided to the Clerk's Office in paper form; and questionnaires that were submitted online using the national eJuror Program.

2) List of Zip Codes

This is the list of zip codes of persons in the Master Wheel for federal jury service in Bangor "who did not return the [Q]uestionnaires." *Def.'s Mot.* at 2.

3) Records Relating to Excused or Exempted Jurors

These are the records relating to persons in the Qualified Wheel who were summonsed for the Grand Jury that served during the time in which Mr. Stile was indicted, but did not serve on the Grand Jury panel. The documentation includes a list that sets out the reason for why each juror was excused or exempted.

The records described here do not include records relating to persons who were excused, exempted, or otherwise found unqualified to be placed in the Qualified Wheel, as that determination was made on the basis of the Questionnaires that are also being provided to Mr. Stile.

In sum, the Court orders the Clerk of Court to produce: (1) properly redacted versions of the Juror Qualification Questionnaires; (2) a list of zip codes of the potential jurors who did not return Questionnaires; and (3) the documentation setting

forth the reason or reasons for which potential grand jurors were "excused or exempted" from jury service. This information will be filed under seal.[5]

This case has been pending since September 20, 2011 and involves a crime that allegedly took place on September 12, 2011, nearly three years ago. The case has been an extremely difficult one to bring to trial; nevertheless, the Court is determined to move this matter to trial expeditiously. *See Order on Def.'s Mot. to Re-Open Detention Hr'g* at 3-4 (ECF No. 393). Specifically, the Court would like to try this case during the month of August. In order to allow for the expeditious scheduling of this case, the Court is scheduling a status conference of counsel two weeks from the date of this Order. This two-week interval should be sufficient to allow Attorney Rodway to review the documents that have been released under this Order and to determine what, if anything, needs to be done. By the time of the conference of counsel, the Court expects Attorney Rodway to review the juror material, meet with his client, and present a plan for further action, if any, at the next conference.

The same conditions apply to these new records as the Court imposed in its previous order; the information provided to Mr. Rodway must be maintained in the possession of Mr. Rodway and used only for the purpose of developing Mr. Stile's motion challenging the jury selection process. Mr. Stile may view the records in the presence of Mr. Rodway. Upon the resolution of the motion challenging the grand jury process, he must also submit a signed affidavit to the Clerk affirming that the information was used only according to the conditions set forth in this Order.

---

[5]     The Clerk will provide a copy of these records in DVD format to Mr. Rodway and an identical copy for the Government.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2014