UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

**ORDER ON MOTION TO SUPPRESS EVIDENCE GATHERED DURING SEARCH OF CELLULAR TELEPHONE**

The Court denies the Defendant's motion to suppress evidence gathered during a September 13, 2011 search of the Defendant's cellular telephone, because the officers conducting the search obtained two search warrants on September 13, the second of which authorized the search of information stored in the Defendant's cellphone. Even if the search was conducted after the first warrant but before the second, the officers inevitably would have searched the cellphone pursuant to the second and would have discovered the text messages.

**I.      STATEMENT OF FACTS**

**A.      Case Background**

James Stile stands charged with robbery of controlled substances from a pharmacy, use of a firearm in furtherance of a crime of violence, possession of a firearm by a felon, and manufacture of 100 or more marijuana plants. *Indictment* (ECF No. 8). The indictment has been pending since October 20, 2011. *Id*. The deadline for filing pretrial motions was set for November 16, 2011. *Order in Respect to Discovery* (ECF No. 23). The Court extended that deadline five times without

objection. *Speedy Trial Order* (ECF Nos. 44, 59, 70, 77, 92). The last pretrial motion deadline extension requested by the Defendant and authorized by the Court was August 30, 2012. *Third Unopposed Motion to Extend Pretrial Motion Deadline* (ECF No. 92).

On July 1, 2014, Mr. Stile moved to suppress the September 13, 2011 search of his cellphone. *Def.'s Mot. to Suppress Evidence Gathered During Search of Cellular Telephone* (ECF No. 421) (*Def.'s Mot.*). The Government responded on July 11, 2014. *Gov't's Resp. to Def.'s Mot. to Suppress Evidence Gathered During Search of Cellular Telephone* (ECF No. 428) (*Gov't's Opp'n*). Mr. Stile replied on July 16, 2014. *Reply to Gov't's Opp'n to Mot. to Suppress Evidence Gathered During Search of Cellular Telephone* (ECF No. 433) (*Def.'s Reply*). On September 25, 2014, pursuant to request of the parties, the Court held an evidentiary hearing. *Minute Entry* (ECF No. 465). The sole witness was Michael Knight, Staff Sergeant with the Somerset County Sheriff's Office.

### B. The Search of Mr. Stile's Residence

Shortly after the September 12, 2011 pharmacy robbery, James Stile came under suspicion as the perpetrator. Two search warrants were issued on September 13, 2011; both authorized the search of Mr. Stile's residence. *Gov't Ex. A & B*. The first warrant (the robbery warrant) was issued at 4:04 a.m., and authorized the search and seizure by the Somerset County Sheriff's Office of various items related to the pharmacy robbery, but not cellphones. *Gov't Ex. A* at 2. According to Sergeant

Knight, the search began at about 7:30 a.m. and, after entering Mr. Stile's residence, law enforcement officers discovered evidence of a marijuana growing operation.

Pursuant to this discovery, Sergeant Knight testified that the officers obtained a second search warrant (the marijuana warrant). The marijuana warrant was issued at 9:37 a.m. and authorized the search and seizure of various items related to the marijuana growing operation including, but not limited to, "information stored in computers/telephones[.]" *Gov't's Ex. B* at 1-2. Sergeant Knight confirmed that the Piscataquis County Sheriff's Department started the search for evidence related to the marijuana grow at 11:05 a.m., and finished at 12:05 p.m. *See Gov't's Ex. C* at 4 (*Report of Deputy Emerson*).

At some point during the September 13, 2011 search, officers found Mr. Stile's cellphone on top of a nightstand in his bedroom, *see Gov't's Ex.* 7, and they searched it. The officers found and photographed text messages that suggest that Mr. Stile had been in Bingham near the pharmacy on September 12, 2011. *See Gov't's Ex. G.*

## II. THE PARTIES' POSITIONS

### A. James Stile's Motion

Mr. Stile argues that the search of his cellphone was unlawful because "[t]he warrant did not authorize the officers to search the cellular telephone, nor did the officers obtain a separate warrant to search the cellular telephone." *Def.'s Mot.* at 1. Citing *Riley v. California*, 134 S. Ct. 2473 (2014), where the Supreme Court held that in general, the police must obtain a warrant to search a cellphone, Mr. Stile contends that the officers needed to obtain a warrant to search his cellphone. *Def.'s Mot.* at 1-

3

2. He maintains that the search of the cellphone took place before the Government obtained the marijuana warrant that authorized the search of the cellphone and therefore, under *Riley*, the Court must suppress photographs of its contents. *Id*. Finally, Mr. Stile contends that the search of his cellphone was unreasonable because it exceeded the scope of the robbery warrant. *Def.'s Mot*. at 2.

B. **The Government's Response**

The Government argues that Mr. Stile is "well beyond" August 30, 2012, the most recent motion filing deadline set by the Court, and it urges the Court to deny Mr. Stile's motion because the motion is untimely under Federal Rule of Criminal Procedure 12(e). *Gov't's Opp'n* at 4. ("When a district court sets a deadline for pretrial motions pursuant to Federal Rule of Criminal Procedure 12(c), a party's failure to make certain motions, including suppression motions, by that deadline constitutes a waiver, although the court may grant relief from the waiver for good cause. Fed. R. Crim. P. 12(e)." (quoting *United States v. Jose R. Lugo Guerrero*, 524 F.3d 5, 11 (1st Cir. 2008))). The Government points out that no new information relevant to the September 2011 search warrants has been provided to Mr. Stile in the two years since the motions filing period expired. *Id*. at 4. The Government acknowledges that the Court retains discretion in setting deadlines for criminal filings, but asserts that concerns for efficient case management, judicial economy, and orderly pretrial procedure require the Court to deny Mr. Stile's motion. *Id*. at 3-4.

The Government's first response to the merits of Mr. Stile's motion is that because the search of Mr. Stile's cellphone was not incident to arrest, *Riley* is

4

inapposite. *Gov't's Opp'n* at 4. The Government next contends that the photographs of the contents of Mr. Stile's cellphone are admissible under the inevitable discovery doctrine because even if the search was conducted before the marijuana warrant was issued, the text messages on Mr. Stile's phone would inevitably have been discovered. *Id.* at 5.

The Government acknowledges that "[i]t is not entirely clear based on the evidence whether the search of the cellular telephone was undertaken before or after the second search warrant was obtained[,]", but it notes that the a photograph of marijuana plants removed from Mr. Stile's residence, taken during the execution of the search warrants, was earlier in the order of photographs than the photograph showing the cellphone text messages. *Id.* at 3. The Government contends that the order in which the search warrant photographs were taken "strongly suggests" that the photographs of the texts on Mr. Stile's cellphone were taken after the execution of the marijuana warrant. *Id.* Thus, the Government concludes the photographs were "clearly within the scope of the second search warrant, which authorized the seizure of 'information stored in computers/telephones.'" *Id.*

Regardless, the Government argues, even if the photographs of the texts were taken prior to the marijuana warrant was issued, the photographs would inevitably have been discovered, and are therefore admissible. *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 446-47 (1984)). The Government notes that the marijuana warrant clearly and explicitly authorized the search of Mr. Stile's cellphone, and contends that the

information in Mr. Stile's cellphone would have been seized pursuant to the lawfully-obtained marijuana warrant. *Id*.

C. **James Stile's Reply**

Mr. Stile counters the Government's arguments of untimeliness by asserting that the Supreme Court's intervening decision in *Riley* created an opportunity for Mr. Stile to challenge the validity of the search of his cellphone. *Def.'s Reply* at 1. Mr. Stile interprets *Riley* to mean that the police must obtain a search warrant before searching a cellphone. *Id*. Therefore, he contends, any search of his cellphone prior to the marijuana warrant is unlawful under *Riley*. *Id*. Mr. Stile emphasizes that the Government does not know when the phone was searched, by whom, or how it was searched. *Id*. at 2. Finally, Mr. Stile argues that the marijuana warrant authorized the search of the cellphone for evidence of drug activity, and that text messages having nothing to do with drug activity and are thus outside the scope of the warrant. *Id*.

III. **DISCUSSION**

A. **Timeliness**

The Court does not agree with the Government that the earlier imposed motion deadline of August 30, 2012 should bar the Defendant's motion to suppress. Even though it is technically true that the last pretrial motion deadline extension requested by the Defendant and formally ordered by the Court was August 30, 2012, in the fall of 2013, after Mr. Stile complained repeatedly and bitterly that his lawyers had failed or refused to raise meritorious legal defenses, the Court allowed Mr. Stile

6

to file his own pro se motions, which he did with vigor. The Court's oral extension of the motion period lasted until January 13, 2014, when the Court appointed Peter Rodway to represent Mr. Stile. Since then, the Court has allowed the Defendant to file further motions. *See Mot. for Disclosure of Additional Jury Records* (ECF No. 392); *Mot. for Recons. of Mot. for Relief from Prejudicial Joinder* (ECF No. 405); *Second Mot. for Disclosure of Additional Jury Rs.* (ECF No. 418); *Third Mot. for Disclosure of Additional Jury Rs.* (ECF No. 452); *Mot. to Recons. Decision on Mot. to Suppress Statements* (ECF No. 453). Especially in a criminal case, where a person's freedom and reputation are at stake, absent evidence of unfair surprise or abuse, this Court prefers to reach the merits of a motion rather than foreclose potentially exonerating arguments on a procedural miscue.

Furthermore, the Court does not consider Mr. Stile's motion late. The Supreme Court decided *Riley* on April 29, 2014 and the Court does not fault Mr. Stile for failing to file a *Riley* motion before the *Riley* decision. Nor does the delay between April 29, 2014 and July 1, 2014 when Mr. Stile filed the motion trouble the Court. The two-month delay is not unreasonable and the Government has shown no prejudice. Here, Mr. Stile has presented an argument that, based on recent Supreme Court authority, the police search of Mr. Stile's cellphone was an unconstitutional violation of the Fourth Amendment. The Court would not countenance the admission of otherwise unconstitutionally procured evidence because a defendant either failed to anticipate groundbreaking caselaw or because a defendant failed posthaste to file a motion to suppress once new ground was broken.

B.  **Merits**

1.  *Riley v. California*

In *Riley*, the Supreme Court addressed whether the police may, without a warrant, search digital information on a cellphone seized from an individual who has been arrested. *Riley*, 134 S. Ct. at 2480. The *Riley* Court emphasized that the issue before the Court concerned "the reasonableness of a warrantless search incident to a lawful arrest." *Id.* at 2482. Hence, the Supreme Court reviewed three cases that addressed searches incident to arrest, *Chimel v. California*, 395 U.S. 752 (1969), *United States v. Robinson*, 414 U.S. 218 (1973), and *Arizona v. Gant*, 556 U.S. 332 (2009), and explained this "search incident to arrest trilogy." *Id.* at 2484. In this case, however, law enforcement did not search Mr. Stile's cellphone incident to his arrest and the extent to which *Riley* would be extended to a residential search not incident to arrest is not precisely known.

Nonetheless, the Court assumes that *Riley* would apply to a search not incident to arrest. First, the *Riley* Court was addressing whether the search incident to arrest exception applies to the search of a cellphone; if there is no arrest, there is no search incident to arrest exception to the warrant requirement. *Riley*, 134 S. Ct. at 2482 ("[I]t has been well accepted that [a search incident to arrest] constitutes an exception to the warrant requirement"). Furthermore, there is no evidence that any other exception to the warrant requirement would apply in this case. *See id.* ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement"). In fact, law enforcement sought and obtained two

8

search warrants in this case. Second, the voice of the Supreme Court in *Riley* was united, unanimously declaring unwarranted cellphone searches incident to arrest to be an unconstitutional infringement of Fourth Amendment rights.[1] *Id.* at 2480-95. Third, as the Supreme Court wrote in *Riley*, "[p]rivacy comes at a cost." *Id.* at 2493. In *Riley*, the Supreme Court balanced the right of privacy underlying the warrant requirement against countervailing governmental interests, such as officer safety and prevention of evidence destruction, and concluded that the "answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 2495. As the cellphone search in this case did not present any exigent circumstances, this Court concludes that *Riley*'s holding applies to the search of the Stile residence, including his cellphone, on September 13, 2011, and that law enforcement was required to do what it did do—get a warrant.

### 2. A Question of Timing

The Court turns to the facts in this case. To state the obvious, the officers searched the Stile cellphone either before or after obtaining the marijuana search warrant. If the officers searched the cellphone pursuant to the marijuana warrant that expressly authorized the cellphone search, Mr. Stile's argument that *Riley* forbids such a search is a non-starter. If the officers searched the cellphone pursuant

---

[1] The Supreme Court was unanimous in *Riley*; Justice Alito filed a concurrence, concurring in part and concurring in the judgment. *Riley*, 134 S. Ct. at 2495-98. The Court assumes for the purposes of this Order that the standard announced in *Riley* applies. It is possible it may not. *See Davis vs. United States*, 131 S. Ct. 2419, 2429 (2011) ("An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer should act under the circumstances").

9

to the robbery warrant that did not authorize such a search, *Riley* applies. The Court explores both possibilities. The difficulty is that there is no direct evidence as to when law enforcement searched the cellphone. The deputy in charge does not remember, and there are no documents that establish the time of the cellphone search.

### 3. Evidence that the Search Followed the Marijuana Warrant

There are reasons to find that the search of Mr. Stile's cellphone took place after the marijuana warrant was issued. First, after the police searched Mr. Stile's residence pursuant to the robbery warrant, they applied for a second warrant to search specific items based on the marijuana they found at the home. That second warrant expressly allowed the police to search Mr. Stile's cellphone. *Gov't Ex. B*, *Marijuana Search Warrant* at 1 ("**PROPERTY OR ARTICLE(S) TO BE SEARCHED FOR:** Controlled drugs and other contraband, including marijuana & marijuana plants, business records in the nature of journals, ledgers, computer disks/CDs, information stored in computers/telephones . . . ."). If the police had already searched Mr. Stile's cellphone pursuant to the robbery warrant, it is less likely, though not inconceivable, that they would seek permission to search something they had already searched. At the same time, if the officers had peeked at the contents of the cellphone while doing the robbery search, they may have sought authority to do what they had already done. There is no direct evidence on this point.

Second, although a cellphone might contain evidence about a pharmacy robbery as it apparently may have done in this case, it is much more likely that, if it contains incriminating evidence, it would be related to drug-trafficking, not robbery.

10

In drug trafficking cases, the contents of cellphones often contain text or other messages between dealers and customers. By contrast, although it is not beyond the realm of imagination that a robber might text a cohort about his robbery scheme, there was no evidence here that more than one person was involved in the pharmacy robbery and if there is evidence of Mr. Stile's involvement in the robbery from his cellphone, it seems fortuitous. Thus, in this case, the police did not ask for permission to search Mr. Stile's cellphone when they sought the robbery warrant, but they did when they sought the marijuana warrant.

Against this finding is the extreme vagueness of the evidence about the search in this case. Sergeant Knight testified that he was the person who took photographs of the items inside the residence and that Deputy Putnam took photographs of the evidence outside the residence. Based on this testimony, it seems likely that Sergeant Knight took photographs of the contents of Mr. Stile's cellphone, but, after three years since the day of the search, he has no memory of doing so and cannot fix a time when he would have done so.

In addition, the Government failed to introduce into evidence the affidavit that led to the issuance of the marijuana warrant. If that affidavit explained that marijuana had been found at the Stile residence, that a cellphone had been discovered at the residence, and that the officers were seeking permission to search the contents of the cellphone to determine whether it contained evidence of Mr. Stile's involvement in the marijuana operation, it would be easy to conclude that the officers had not yet searched the cellphone for its contents. However, for whatever reason, although the

Government introduced the affidavit that led to the issuance of the robbery warrant, it did not introduce the affidavit that led to the issuance of the marijuana warrant.[2]

Also, unlike other items of evidence, although the officers took photographs of the contents of the cellphone, they did not remove the cellphone from the residence and retain the cellphone as evidence. *Gov't's Ex. F*; *Def.'s Ex. 1*. This is somewhat significant because Sergeant Knight testified that two sheriff's departments were involved: the Piscataquis County Sheriff's Office, which investigated and retained items related to the marijuana grow, and the Somerset County Sheriff's Office, which investigated and retained items related to the robbery. The evidence log clarified which sheriff's department retained which seized item and would be some evidence of whether the cellphone search was considered part of the robbery or marijuana search. However, as Mr. Stile's cellphone was never removed from the home, this issue was never delineated and it is possible in any event, that an item seized during the marijuana part of the search could relate to the robbery.

Finally, there is no mention of the cellphone in the detailed police report of Deputy Sheriff Allen Emerson. *Gov't's Ex. C*.

All of this leaves the Court in a quandary as to when the police took the photographs of the contents of Mr. Stile's cellphone.

---

[2]   By the same token, if the marijuana affidavit revealed that the officers had searched the cellphone during the execution of the robbery warrant and were looking for post-facto approval, the Court is confident that defense counsel would have brought that fact to the Court's attention.

12

### 4. The Cellphone Search and the Robbery Warrant

Despite evidence that the photographs may have been taken after the marijuana warrant was issued, it remains possible that the cellphone was searched before the marijuana warrant was obtained. Neither the Government's filings nor the September 25, 2014 evidentiary hearing resolves whether law enforcement searched Mr. Stile's cellphone before or after the second search warrant was issued. The Government concedes that the exact time of the cellphone search is unclear. The Somerset County Evidence Log from the September 13, 2011 search does not list the cellphone. *Gov't's Ex. F*. The photographs of the text messages appear to have no time-date stamp. *Gov't's Ex. G*. Sergeant Knight has no memory of when he took the photographs of the contents of the cellphone, and even if he was the one who took the photographs. Without more conclusive evidence regarding the timing of the cellphone search, the Court cannot infer that it was searched either before or after the marijuana warrant was issued.

### 5. If the Search Took Place Before the Marijuana Warrant: The Inevitable Discovery Doctrine

To resolve this motion, however, the Court is not required to pinpoint the time when the contents of the cellphone were photographed, because in the Court's view, the contents would have been discovered inevitably. The inevitable discovery doctrine provides that evidence obtained in violation of the Fourth Amendment is admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Describing the "independent

source doctrine," the close cousin of the inevitable discovery doctrine, the Supreme Court observed that the doctrine "teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred." *Id*. at 443 (emphasis in original). *See also United States v. Silvestri*, 787 F.2d 736, 740 (1st Cir. 1986) ("Since suppression of evidence will often have the effect of allowing criminals to go unpunished, it is justified only as a means of deterring the police from violating constitutional and statutory rights").

The First Circuit has cautioned, however, that "the inevitable discovery doctrine is a doctrine of last resort" and "should be invoked only when evidence is otherwise unlawfully obtained." *United States v. Paneto*, 661 F.3d 709, 713 (1st Cir. 2011). Nevertheless, the First Circuit has applied the doctrine when it is appropriate to do so. In *United States v. Crespo-Rios*, 645 F.3d 37 (1st Cir. 2011), for example, the First Circuit concluded that the inevitable discovery doctrine applied to the search of a computer. The *Crespo-Rios* Court set forth three criteria for application of the doctrine: "Such evidence is admissible so long as (i) the lawful means of its discovery are independent and would necessarily have been employed, (ii) discovery by that means is in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment." *Id*. at 42 (internal punctuation and citation omitted).[3]

---

[3] Although not argued by the parties, law enforcement may have been allowed to seize Mr. Stile's cellphone and hold it temporarily while obtaining a search warrant for the cellphone. A temporary

14

Here, law enforcement sought and obtained the marijuana warrant and included Mr. Stile's cellphone in the scope of the authorized search. The First Circuit has viewed the decision to seek a warrant as significant on the theory that discovery is more likely inevitable when a subsequent warrant authorizes the search. *See United States v. Silvestri*, 787 F.2d 736 at 744-46; *United States v. Ford*, 22 F.3d 374, 378 (1st Cir. 1994). Indeed, in *Ford*, the First Circuit rejected the argument that "the *decision* to seek a warrant [must] be made prior to the time that the illegal search took place and that the decision in no way be influenced or accelerated by information gained from the illegal search." *Ford*, 22 F.3d at 378 (emphasis in original). Instead the First Circuit has required that "probable cause be present prior to the illegal search [to ensure] both independence and inevitability for the prewarrant search situation." *Id.* (quoting *Silvestri*, 787 F.2d at 746). That the police not only pursued, but also obtained based on probable cause, a warrant to search Mr. Stile's cellphone, strengthens the argument that the text messages would have been discovered inevitably.

The Court concludes that it is more likely than not that the officers would have discovered the phone on top of the nightstand in Mr. Stile's bedroom during their search of his residence, that they would have had probable cause to search the cellphone based on the discovery of a significant marijuana grow operation in the house where Mr. Stile lived, that they would have applied for a search warrant on the basis of evidence of the marijuana grow operation that they found while executing

---

warrantless seizure supported by probable cause is reasonable as long as "the police diligently obtained a warrant in a reasonable period of time." *Illinois v. McArthur*, 531 U.S. 326, 334 (2001).

the robbery warrant, that the search warrant for examination of the cellphone would have been granted, and that they would have discovered the text messages that they did discover.[4] Here, it is difficult to conclude anything but that the officers would have inevitably discovered the contents of the cellphone, because they did in fact find the cellphone on the nightstand, *Def.'s Ex. 7*, and they did in fact obtain a warrant to search the cellphone. *See United States v. Silvestri*, 787 F.2d 736 at 745 ("The situation where a warrant is obtained after a warrantless search is somewhat different. The inevitability concerns, i.e., whether a warrant would have issued and whether the search would have uncovered the evidence, are pretty much resolved"). Thus, even if law enforcement took pictures of the contents of the cellphone before obtaining the search warrant, the search warrant gave them permission to search the cellphone on independent grounds.

Finally, the Court determines that "application of the doctrine will not 'provide an incentive for police misconduct or significantly weaken fourth amendment protection.'" *Crespo-Rios*, 645 F.3d at 44 (quoting *United States v. Silvestri*, 787 F.2d at 744). Here, even assuming the police searched the cellphone before obtaining the marijuana warrant, law enforcement actually went forward within a short time of that search and obtained a warrant that gave them permission to do so. Thus, the Court concludes that the application of the inevitable discovery doctrine would not

---

[4] There is no suggestion that Mr. Stile would have reentered his home and retrieved his cellphone in the time between the two warrants. *See United States v. Young*, 573 F.3d 711, 722 (9th Cir. 2009).

16

encourage police to act without obtaining a search warrant because in this case, they did obtain a warrant.

The Court concludes that determining the exact timing of the cellphone search is unnecessary because the photographs are admissible under the inevitable discovery doctrine.

### 6. If the Search Took Place After the Marijuana Warrant: The Scope of the Warrant Included Text Messages on Mr. Stile's Cellphone

Finally, the Court rejects Mr. Stile's argument that the search of his cellphone exceeded the scope of the warrant. "As a general proposition, any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *United States v. Gray*, 814 F.2d 49, 51 (1st Cir. 1987) (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)). The marijuana warrant specifically authorized the search of "information stored in computers/telephones," and the officers were in the process of executing that part of the warrant when they came upon the text messages. There is no evidence that these text messages were in a separate folder or a password-protected file within Mr. Stile's cellphone, and therefore, the cases that address overbroad computer searches are not applicable. *See United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011); *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012); *United States v. Mann*, 592 F.3d 779, 782-86 (7th Cir. 2010); *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989 (9th Cir. 2009). In other words, based on this record, the law enforcement officers were where they had

17

a right to be under the marijuana warrant and the search of Mr. Stile's cellphone did not exceed the scope of that warrant.

Mr. Stile's interrelated argument is that the marijuana warrant authorized a search of the cellphone for evidence of his involvement in the marijuana operation alone, not the robbery. Therefore, he contends, when law enforcement viewed evidence relating to the robbery on his cellphone, they exceeded the scope of the marijuana warrant by taking photographs of those messages. *Def.'s Mot.* at 2-3. Mr. Stile concedes that "[i]tems found in plain view during an authorized search do not exceed the scope of the warrant." *Id.* at 3. However, he argues that the plain view doctrine is limited to items whose "criminal character must be immediately apparent." *Id.* (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).

Mr. Stile is correct as far as he goes, but he misframes the issue at hand. The *Coolidge* Court's discussion of plain view, in the context in which Mr. Stile cites it, focused on a warrantless seizure following a prior justification for intrusion.

> What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—[such as] a warrant for another object . . . or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure.

*Coolidge*, 403 U.S. at 466. Applying the reasoning of *Coolidge* to Mr. Stile's argument regarding the scope of the warrant, and assuming that the police searched the cellphone after securing the marijuana warrant, there was no warrantless search following a prior justification for intrusion. There was, simply, a warranted search.

18

The warrant authorized the police legally to search "information on . . . telephones," which included text messages on Mr. Stile's cellphone.

Even granting that the plain view doctrine applied here, the search of Mr. Stile's cellphone would still be valid. That is, even if the marijuana warrant limited the search of the cellphone to matters related to marijuana, the police did not have to disregard evidence of another crime that came into plain view while they were performing the search within the scope of the warrant.

The plain view doctrine provides "that probable cause exists when the incriminating character of an object is immediately apparent to the police." *United States v. Sanchez*, 612 F.3d 1, 5 (1st Cir. 2010). The standard is not whether a casual bystander would deem the evidence incriminating, but whether it is "immediately apparent to the police that they have evidence before them." *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971); *United States v. Castorena-Jaime*, 285 F.3d 916, 924-25 (10th Cir. 2002) (applying the plain view doctrine to a bundle that the officer knew was incriminating from extensive criminal interdiction training and participation in over 150 large drug seizures). By this standard, the Court finds it would have been immediately apparent to the police when they viewed the text messages on Mr. Stile's cellphone that they had incriminating evidence before them because at least one text message places Mr. Stile in the same town the same day that the pharmacy had been robbed.

## IV. CONCLUSION

The Court DENIES James Stile's Motion to Suppress Evidence Gathered During Search of Cellular Telephone (ECF No. 421).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 10th day of October, 2014