# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES STILE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | 1:17-cv-00159-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner James Stile moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 637.) Following a guilty plea, Petitioner was convicted in May 2015 of robbery of controlled substances from a pharmacy by use of a dangerous weapon, 18 U.S.C. § 2118(a), (c)(1); the Court sentenced Petitioner to 120 months in prison. (Judgment, ECF No. 579 at 1-2.) The First Circuit affirmed the sentence on appeal. *United States v. Stile*, 845 F.3d 425 (1st Cir. 2017).

In support of his section 2255 motion, Petitioner contends counsel was ineffective at sentencing because counsel failed to move for a downward departure, failed to advise Petitioner properly regarding a weapons enhancement, and failed to offer certain evidence relevant to an enhancement for obstruction of justice. (Motion (Ground One) at 4.) Petitioner also contends the Court erred when it applied the obstruction of justice sentencing enhancement, when it denied a reduction for acceptance of responsibility, and when it failed to consider Petitioner's contention that a doctor was responsible for

Petitioner's addiction. (Motion (Ground Two) at 5.) Finally, Petitioner alleges prosecutorial misconduct based on the placement of an informant in Petitioner's cell. (Motion (Ground Three) at 7.) The Government requests dismissal of the motion. (Response, ECF No. 648 at 1.)

Following a review of the record, Petitioner's motion, and the Government's request for dismissal, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2011, Petitioner was charged with the robbery of a pharmacy by use of a dangerous weapon. He initially pled not guilty to the charge; after several preliminary proceedings and a suppression hearing, Petitioner pled guilty. *Stile*, 845 F.3d at 427. At sentencing, the Court calculated the guidelines range to be 108 to 135 months of imprisonment, based on a total offense level of 31 and a criminal history category of I. *Id.*

Petitioner argued on appeal that there were procedural errors at sentencing related to the enhancement for obstruction of justice for perjury, the denial of a reduction for acceptance of responsibility, and the failure to give adequate weight to Petitioner's drug addiction. *Id.* at 427-28. In addition, Petitioner included a "catchall argument" that the sentence was substantively unreasonable. *Id.* at 428.

Petitioner asserts that he signed his section 2255 motion on April 24, 2017. (Motion at 13.)[1]  The motion was filed within one year of the date on which the judgment became final, and it is undisputed that the motion was filed timely.[2]  (*Id.* at 1.)

## II.  DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned

---

[1] The Government argues that some of Petitioner's allegations are set forth in attachments that were not signed under penalty of perjury as required under Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings. *See* 28 U.S.C. § 1746.  (Response, ECF No. 648 at 20 n.3.)  The form section 2255 motion Petitioner used provides that a petitioner may attach additional pages if more than four grounds are asserted, but it does not appear to require that each of the attachments be separately signed under penalty of perjury. (Motion, ECF No. 637 at 4.) This recommended decision assumes, without recommending a decision on the issue, that if the Court did not dismiss the section 2255 motion, the Court would permit Petitioner to file a version that contained the required declaration if necessary.

[2] *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final.")

during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

"[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (quotation marks omitted); *Elwell v. United States*, 95 F.3d 1146 (1st Cir. 1996) (per curiam) (unpublished) (citing *Davis v. United States*, 417 U.S. 333, 342 (1974)) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law").

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). An allegation of ineffective assistance of counsel can excuse a procedural default. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

In *Strickland*, the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697.

The Court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690). That an argument advanced by counsel failed to persuade the Court does not in itself render counsel's performance substandard. *See Strickland*, 466 U.S. at 699 (concluding that "there can be little question, even without application of the presumption of adequate performance, that trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment").

If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002).

**B. Claims and Analysis**

**1. Claim regarding counsel's failure to move for a downward departure**

Petitioner alleges ineffective assistance citing counsel's failure to move for a downward departure under USSG § 5K2.0 based on Petitioner's argument that he was subjected to torture and substandard conditions while he was in pretrial detention at various

county jails.[3]  (Motion at 4; Attachment, ECF No. 637-1 at 15-16.)  Specifically, Petitioner

alleges that in the Somerset County Jail, he was subjected to electric shocks four to twelve

---

[3] Petitioner cites the following provision of USSG § 5K2.0 in support of his claim:

> (a)  Upward Departures in General and Downward Departures in Criminal Cases Other Than Child Crimes and Sexual Offenses.—
>
> . . .
>
> (2) Departures Based on Circumstances of a Kind not Adequately Taken into Consideration.—
>
> . . .
>
> > (B) Unidentified Circumstances.—A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

The accompanying commentary provides in part:

> 3. Kinds and Expected Frequency of Departures under Subsection (a).--As set forth in subsection (a), there generally are two kinds of departures from the guidelines based on offense characteristics and/or offender characteristics:  (A) departures based on circumstances of a kind not adequately taken into consideration in the guidelines; and (B) departures based on circumstances that are present to a degree not adequately taken into consideration in the guidelines.
>
> (A) Departures Based on Circumstances of a Kind Not Adequately Taken into Account in Guidelines.--Subsection (a)(2) authorizes the court to depart if there exists an aggravating or a mitigating circumstance in a case under 18 U.S.C. § 3553(b)(1), or an aggravating circumstance in a case under 18 U.S.C. § 3553(b)(2)(A)(i), of a kind not adequately taken into consideration in the guidelines.
>
> . . .
>
> (ii) Unidentified Circumstances.--A case may involve circumstances, in addition to those identified by the guidelines, that have not adequately been taken into consideration by the Commission, and the presence of any such circumstance may warrant departure from the guidelines in that case.  However, inasmuch as the Commission has continued to monitor and refine the guidelines since their inception to take into consideration relevant circumstances in sentencing, it is expected that departures based on such unidentified circumstances will occur rarely and only in exceptional cases.

(Attachment, ECF No. 637-1 at 15.)

times daily, he was kicked and beaten, and he was held in solitary confinement.[4] (Attachment at 15.) Petitioner alleges he was injured while at the Cumberland County Jail. (Attachments, ECF Nos. 637-1 at 16, 637-4 (photo labeled "Exhibit B—Cumberland County Jail Photo of Petitioner's Injuries").) Petitioner asserts that at the Strafford County Jail in New Hampshire, he received inadequate medical treatment after a spinal injury caused by an assault by another prisoner, and that he received inadequate treatment for a dental condition.[5] (Attachment, ECF No. 637-1 at 17.)

Petitioner contends the substance of the allegations about his pretrial conditions of confinement was before the Court at sentencing, in the form of a "Microsoft Powerpoint" presentation.[6] (Attachment, ECF No. 637-1 at 20-21; Reply, ECF No. 662 at 23-25, 30.) Petitioner alleges counsel was aware of video recordings from which the Powerpoint presentation was made, and he alleges counsel should have filed a motion on the basis of the information contained in the presentation. (Attachment at 20-21.) Petitioner also asserts the photograph attached to the section 2255 motion was before the Court at sentencing. (Reply at 25; Attachment, ECF No. 637-4.) Petitioner alleges he was subjected

---

[4] In addition, Petitioner alleges that while in solitary confinement, he was not permitted to communicate with counsel. (Attachment, ECF No. 637-1 at 15.)

[5] The Court ordered that Petitioner receive treatment for certain dental issues addressed at a hearing. (Hearing Tr., ECF No. 493 at 25.)

[6] At sentencing, in the course of its consideration of the sentencing factors under 18 U.S.C. § 3553(a), the Court noted it had reviewed a Powerpoint presentation that Petitioner had prepared and that had been admitted in evidence. (Sentencing Tr., ECF No. 610 at 34-35, 192.) The Court also noted that the presentation included a description of aspects of Petitioner's life. (*Id.* at 192.)

to oppressive and harsh conditions for approximately four years before he was sentenced.[7]

He also asserts appellate counsel was ineffective for failing to include an argument regarding the issue of Petitioner's conditions of confinement. (Reply at 23.) The Government argues the claim is procedurally defaulted, and Petitioner cannot demonstrate either substandard performance or prejudice. (Response at 17-20.)

Whether a court grants a downward departure is generally a matter of discretion:

[A] federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the [United States Sentencing Commission] has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no—as it will be most of the time—the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline.

*Koon v. United States*, 518 U.S. 81, 109 (1996). In *Koon*, the Supreme Court noted that such departures would be "'highly infrequent'". *Id.* at 96 (quoting 1995 USSG Ch. 1, Pt. A, p.6).[8] *See also United States v. De Jesús*, 223 F. App'x 7, 8 (1st Cir. 2007) (unpublished) ("A sentencing court's denial of a downward departure is discretionary and unreviewable unless the court refuses the request based on a view that it lacks legal authority to consider a departure or . . . base[d] . . . on an error of law.") (quotation marks omitted).

---

[7] The Court noted at sentencing the "substantial delay" in the case, and attributed it in large part to Petitioner's "tumultuous relations with his own defense lawyers." (Sentencing Tr. at 194.) The Government represents that Petitioner has received "full credit toward his federal sentence for the time that he was in pretrial detention." (Response at 24.) *See United States v. Mills*, 501 F.3d 9, 12 (1st Cir. 2007) (concluding, pursuant to 18 U.S.C. § 3585, that the district court should have left the determination of eligibility for credit for time served to the Attorney General and the Bureau of Prisons).

[8] The term "highly infrequent" was in the version of the sentencing guidelines in effect at Petitioner's sentencing, and it remains in the current version. *See* 2014 USSG, Ch. 1, Pt. A, p. 7; 2016 USSG, Ch. 1, Pt. A, p. 8.

The sentencing guidelines do not proscribe a downward departure for pretrial conditions of confinement. In 2001, however, the First Circuit noted:

> [T]his court has never before held that conditions of confinement constitute a permissible basis for downward departure. Although some district courts have granted a downward departure on that basis, "no clear consensus exists as to the propriety of granting a downward departure for conditions of pretrial confinement."

*United States v. Ortiz*, 6 F. App'x 46, 48 (1st Cir. 2001) (per curiam) (unpublished) (quoting *United States v. Francis*, 129 F. Supp. 2d 612, 615 (S.D.N.Y. 2001) (collecting cases)) (affirming conviction and sentence on direct appeal, and denying without prejudice an ineffective assistance claim included in a pro se supplemental brief);[9] *United States v. Thurmond*, 341 F. App'x 214, 216 (7th Cir. 2009) (unpublished) ("[W]e have yet to decide whether even extremely harsh conditions of confinement can justify a reduced sentence. And this appeal would not provide an opportunity to decide that question because the district court did not think that the conditions Thurmond complained about were harsh at all.") (citations omitted); *but see United States v. Pressley*, 345 F.3d 1205, 1218 (11th Cir. 2003) ("The district court was correct in holding that conditions of confinement could provide a basis for departure, since this factor was apparently not taken into account by the Sentencing Commission and could be unusual enough to take a case

---

[9] It appears the First Circuit has not addressed the issue of a downward departure for pretrial conditions of confinement since *United States v. Ortiz*, 6 F. App'x 46, 48 (1st Cir. 2001) (per curiam) (unpublished). In *United States v. Merlino*, 592 F.3d 22, 28 (1st Cir. 2010), in which the appellant raised an unsuccessful sentencing challenge under *United States v. Booker*, 543 U.S. 220 (2005), the First Circuit noted that the district court rejected the appellant's "requests for a downward departure based on duress or coercion and based on the harsh conditions under which he was incarcerated prior to trial," although the district court granted a downward departure for other reasons. 592 F.3d at 28. The Court rejected the *Booker* claim based in part on the district court's "refusal to depart further despite its authority to do so . . . ." *Id.* at 29.

out of the heartland of the applicable guideline."); *United States v. Rodriguez*, 213 F. Supp. 2d 1298, 1303 (M.D. Ala. 2002) (holding that the rape of the defendant by a prison guard prior to the defendant's sentencing constituted "a highly unusual" presentence confinement condition that warranted a two-level downward departure under USSG § 5K2.0), and supplemental opinion, 214 F. Supp. 2d 1239 (M.D. Ala. 2002) (increasing the downward departure to three levels).

Given that in *Ortiz*, the First Circuit acknowledged that it had never held that conditions of confinement can be a basis for a downward departure, given that if recognized, any such departure would be "highly infrequent," and given the deference afforded a trial court upon review of a decision as to whether to permit a downward departure, *De Jesús*, 223 F. App'x at 8, Petitioner cannot establish the necessary substandard performance by sentencing counsel based on the failure to move for a downward departure, or by appellate counsel based on the failure to raise the issue on appeal. In addition, Petitioner could not demonstrate prejudice given that Court was aware of the alleged conditions of Petitioner's pretrial detention,[10] and the question of whether to grant a downward departure was within the Court's discretion.  *See Strickland*, 466 U.S. at 697; *De Jesús*, 223 F. App'x at 8; *McGill*, 11 F.3d at 225.

---

[10] At sentencing, in addition to including the Powerpoint presentation, Petitioner told the Court in his allocution that he had been beaten during his pretrial detention. (Sentencing Tr. at 133, 136, 144.)

## 2.  Claim regarding the firearms enhancement

Petitioner alleges ineffective assistance based on counsel's alleged advice that Petitioner concede a five-level increase in the offense level under USSG § 2B3.1(b)(2)(C), for a firearms-related specific offense characteristic.  (Attachment, ECF No. 637-1 at 22.) Petitioner asserts "[w]hat was appropriate was a (3) three point enhancement pursuant to §2B3.1(b)(2)(E)."[11]  (*Id.* at 23.)  Petitioner also contends that the application of both the firearms enhancement and the enhanced statutory penalty under 18 U.S.C. § 2118(c)(1), constitutes an impermissible double-counting.  (*Id.* at 28-29.)

The claim fails, in part because sentencing counsel did argue for a three-level enhancement, rather than a five-level enhancement, under USSG § 2B3.1.  The revised presentence investigation report contains the following as Petitioner's objection to paragraph 22 of the report:

> Paragraphs 6 and 22: Offense Conduct and Specific Offense Characteristic:
> The defendant objects to ¶¶6 and 22 because the alleged firearms were never recovered by the police. For that reason, he believes there is insufficient evidence to warrant a conclusion that the objects he possessed during the

---

[11]  Petitioner also alleges he was indicted based on false testimony regarding a firearm. (Attachment, ECF No. 637-1 at 22.)  However, in response to the Court's questions, Petitioner admitted in the plea hearing that he "pointed what appeared to be a sawed-off shotgun at the owner and the three female employees who were behind the pharmacy counter . . . ." (Plea Tr., ECF No. 609 at 20.)  At sentencing, Petitioner told the Court he agreed with the facts contained in paragraph 6 of the revised presentence investigation report, which states in pertinent part, "the robber pulled a sawed-off-shotgun from his pants," and "[t]he robber also had a handgun inside his front (right) pants pocket during the robbery."  (Sentencing Tr. at 9.)

Nonetheless, in Petitioner's 28 U.S.C. § 2255 motion, he apparently contends that because the amended plea agreement (ECF No. 543) cites to 18 U.S.C. § 2118(c)(1), which refers to a "dangerous weapon or device," rather than a "firearm," it follows that the applicable guidelines provision was USSG § 2B3.1(b)(2)(E), which refers to a "dangerous weapon" and provides for a three-level increase, rather than USSG § 2B3.1(b)(2)(C), which refers to a "firearm" and provides for a five-level increase. (Attachment, ECF No. 637-1 at 31-32.)

robbery were firearms. He notes that a firearm, by definition, means a weapon that is designed to expel a projectile. He argues it is more appropriate to consider the items dangerous weapons, which is defined as an object that is not capable of inflicting death or serious bodily injury, but closely resembles such an instrument or is used by a defendant in such a manner to create the impression that the object was such an instrument {see USSG §1B1.1, comment. (n.1[D])}. Accordingly, the defendant contends that he should only be subject to a three-level enhancement in ¶22, instead of a five-level increase.

The objection was preserved at sentencing, and the Court noted that it had reviewed the contents of the presentence investigation report.[12] (Sentencing Tr., ECF No. 610 at 186.) *See United States v. Quiñones-Otero*, No. 16-2454, --- F.3d ---, ---, 2017 WL 3700794, at *2, 2017 U.S. App. Lexis 16446, at *3-4 (1st Cir. Aug. 28, 2017) (noting that the appellant failed to preserve an objection because he failed to object either at sentencing or in the presentence investigation report). That the objection did not persuade the Court does not render counsel's performance deficient. *See Strickland*, 466 U.S. at 699. Petitioner has demonstrated neither deficient performance of counsel, nor prejudice.

Petitioner's procedurally defaulted double-counting argument also fails, because "even if double-counting occurred, it would not necessarily require vacating" the sentence. *United States v. Matos-de-Jesús*, 856 F.3d 174, 178 n.1 (1st Cir. 2017) (quoting *United States v. Zapata*, 1 F.3d 46, 47 (1st Cir. 1993)) ("noting that, '[i]n the sentencing context,

---

[12] Petitioner alleges sentencing counsel advised him: "If we concede the firearm used in the commission of a crime of violence, we will more than likely be granted acceptance of responsibility." (Attachment, ECF No. 637-1 at 23.) Petitioner alleges appellate counsel informed him that sentencing counsel objected to the five-level increase in the sentencing memorandum, but counsel withdrew the objection at sentencing. (Reply, ECF No. 662 at 32; Attachment, ECF No. 662-4.) The sentencing record reflects that counsel preserved the objection. (Sentencing Tr. at 186.) However, even assuming counsel advised Petitioner to withdraw the objection, Petitioner has not overcome the "strong presumption" that the advice was reasonable, given Petitioner's admissions, and Petitioner cannot demonstrate prejudice. *See Strickland v. Washington*, 466 U.S. 668, 689, 694 (1984).

double counting is a phenomenon that is less sinister than the name implies' and is often 'perfectly proper'"). In *United States v. Lilly*, 13 F.3d 15 (1st Cir. 1994), the Court noted:

> Since double counting is often perfectly proper, *see* [*Zapata*, 1 F.3d at 47], the guidelines themselves are the most helpful aid in the task of separating permissible double counting from its impermissible counterpart. The Sentencing Commission has not been bashful about explicitly banning double counting in a number of instances. We believe the Commission's ready resort to explicitly stated prohibitions against double counting signals that courts should go quite slowly in implying further such prohibitions where none are written.

13 F.3d at 19 (citations and footnote omitted). The applicable guideline, USSG § 2B3.1(b)(2), does not proscribe double-counting.

> We think that when, as now, neither an explicit prohibition against double counting nor a compelling basis for implying such a prohibition exists, clearly indicated adjustments for seriousness of the offense and for offender conduct can both be imposed, notwithstanding that the adjustments derive in some measure from a common nucleus of operative facts."

Id. at 20. Because the underlying double-counting argument fails, the related claim of ineffective assistance also fails. *See Tse*, 290 F.3d at 465.

### 3. Claims regarding the obstruction of justice enhancement

At sentencing, the Court found that Petitioner had obstructed justice on two independent grounds: (1) Petitioner assaulted an inmate for cooperating with the Government; and (2) Petitioner committed perjury in response to questions about the number of times he had been in Bingham. (Sentencing Tr. at 47, 69-70.) Petitioner asserts section 2255 claims as to each of the grounds. If the Court concludes that either of the claims fails, it need not reach the other claim, because Petitioner cannot demonstrate prejudice. *See Strickland*, 466 U.S. at 697; *Stile*, 845 F.3d at 428 (noting that either the

perjury finding or the assault finding independently would support the enhancement for obstruction of justice).

### a. Enhancement for perjury

Petitioner alleges counsel failed "to present facts comprehensively" at sentencing regarding Petitioner's testimony during the suppression hearing. (Motion at 5.) The issue at sentencing was whether Petitioner committed perjury when he was asked in the suppression hearing how many times he had been to Bingham, and Petitioner responded that he had been "there once." (Suppression Tr., ECF No. 141 at 130.) Petitioner argues the response was "literally true," because on the day of the robbery he was in Bingham, whereas on another day he had only passed through Bingham. (Attachment, ECF No. 637-1 at 50-51.)

At sentencing and on appeal, counsel made the same underlying argument Petitioner asserts in the section 2255 motion, namely that Petitioner carefully parsed the questions about when he had been to Bingham, and he thus did not commit perjury. (Sentencing Tr. at 56-57; *United States v. Stile*, No. 15-1720, Appellant's Brief at 36-38.) At sentencing, counsel argued that Petitioner was "very careful to not deny that he was in Bingham on the day of the robbery." (Sentencing Tr. at 57.)

The sentencing court rejected the argument and found perjury:

The court concludes the defendant lied under oath when he testified that he had been to Bingham only once before and that was the time he had gone fishing at Little Dimick Pond and had pizza in Bingham as he passed through. The truth was that on September 12, 2011, he stopped in Bingham and he robbed [the pharmacy].

(Sentencing Tr. at 69-70.)  The Court found the perjury was willful and committed with the specific intent to mislead the Court, and that the perjured testimony was material to the credibility determination on the motion to suppress.  (*Id.* at 68-69.)

The First Circuit noted that Petitioner's obstruction of justice enhancement could have been based on either the perjury or the assault, and the Court chose to decide only the issue regarding the assault finding:

> In calculating Stile's guidelines sentencing range, the district court applied this enhancement for two independent reasons.  First, the court found that Stile had assaulted another inmate in an attempt to intimidate that inmate from testifying against Stile.  Second, the court found that Stile had committed perjury during a suppression hearing in December 2012.  Stile challenges both findings, either of which is independently sufficient to sustain the enhancement.  We begin−and end−by explaining why we see no cause to reverse the witness intimidation finding.

*Stile*, 845 F.3d at 428.

Petitioner may not relitigate the perjury finding.  *See Singleton*, 26 F.3d at 240; *Elwell*, 95 F.3d 1146.  That counsel's argument did not persuade the Court does not render counsel's performance deficient.  *See Strickland*, 466 U.S. at 699.  The ineffective assistance claim therefore fails.

### b.  Enhancement for assault

Petitioner alleges counsel failed to obtain evidentiary support for Petitioner's allegation that the reason he assaulted his cellmate was not because the cellmate had cooperated with the Government, but rather because the cellmate had made a sexual advance toward Petitioner.  (Attachment, ECF No. 637-1 at 33-34.)  In other words, Petitioner contends he committed the assault for a reason unrelated to the obstruction of

justice. Petitioner also alleges counsel inaccurately told him that a witness to the assault refused to speak with counsel.[13]  (*Id.* at 33.)

In support of the claim, Petitioner attached to his motion a document he alleges is signed by the inmate who witnessed the assault.[14]  (Attachment, ECF No. 637-6.) The alleged witness states that neither Petitioner nor the person he assaulted said anything during the assault.  (*Id.*) The witness asserts that before the assault, the person Petitioner assaulted did something under the dining table to Petitioner, and "Stile told me it was a sexual advance which Mr. Stile believed was instigated by a musclebound inmate that was sitting next to" the person Petitioner assaulted.  (*Id.*)  The witness stated:  "It is my [sincere] belief that this fight [occurred] because of what happened under the dining table and for no other reason."  (*Id.*)

Petitioner's evidentiary support for his section 2255 claim is not controlling or persuasive. The witness's belief as to the reason for the assault was evidently based on the fact that neither Petitioner nor the person assaulted said anything during the assault, and based on Petitioner's statement about a sexual advance.  (*Id.*)  Given the information presented during sentencing regarding the assault, even if counsel could have offered the witness's statement, the testimony would have been in essence an account of what Petitioner told the witness and thus would not have carried significant weight, particularly

---

[13] Petitioner's allegation that counsel told him the witness refused to speak with counsel is unsupported on the record.  In fact, the attorney billing statement attached to Petitioner's motion suggests counsel spoke with the witness.  (Attachment, ECF No. 637-7 at 1.)

[14] The document is entitled "Affidavit".  (Attachment, ECF No. 637-6.)  The document is signed but not notarized, but for the reasons discussed below, Petitioner's claim fails on the merits, and thus whether or not the document is an affidavit is not determinative.

given the Court's credibility assessment. Counsel's decision not to offer the testimony thus was not substandard, nor was Petitioner prejudiced. *See Strickland*, 466 U.S. at 688; *McGill*, 11 F.3d at 225.

Petitioner also claims prosecutorial misconduct and related ineffective assistance regarding the investigatory process. Petitioner specifically cites the placement in Petitioner's cell of the inmate Petitioner later assaulted. Petitioner alleges the inmate was placed in the cell purposely to review and inform the Government about documents counsel had provided Petitioner. (Motion at 7; Attachment, ECF No. 637-1 at 35-36.) *See Celia v. O'Malley*, 918 F.2d 1017, 1019 (1st Cir. 1990) (referring to investigatory misconduct as a form of prosecutorial misconduct). Petitioner alleges the cellmate obtained "the greater portion of the information" he provided the Government from an illicit review of Petitioner's documents while Petitioner was outside the cell. (Attachment at 36.) Petitioner alleges counsel's billing notation reflects that counsel was aware of the issue, and that counsel attempted to obtain documents that would confirm that the cellmate had access to Petitioner's documents when the cellmate gave a statement to law enforcement. (Attachments, ECF Nos. 637-1 at 36; 637-7 at 2.)

Petitioner did not make the allegations at sentencing. The Court found the Government obtained the information because Petitioner had confessed to an inmate who, in turn, informed investigating officers: "A fellow inmate informed authorities that Stile had confessed to having committed the robbery, relating many specific details that the inmate could not have made up." *Stile*, 845 F.3d at 428. (Sentencing Tr. at 47.) The Court found Petitioner knew that the inmate he assaulted had told the police, because an

investigation report of the interview with the inmate was found in Petitioner's cell on the day Petitioner assaulted the inmate. (*Id.* at 46-47.) The Court found Petitioner committed the assault to retaliate for the informant's cooperation with law enforcement, and to intimidate the informant. (*Id.* at 47.)

After the Court found obstruction of justice based on the assault, counsel informed the Court: "[A]lthough it was my position that [Petitioner] should present no evidence on the obstruction of justice issue with regard to the fight," Petitioner chose to request that the Court reopen the evidence. (Sentencing Tr. at 50.) Petitioner told the Court, among other things: "I want this court to know the truth that all this information that he got, he got from the discovery in my cell, and [counsel] knew this . . . and he never offered me this opportunity." (*Id.* at 52.)

The Court told Petitioner: "If you take the stand and you testify and I find you're not telling me the truth in open court here today, you will receive a harsher sentence." (*Id.* at 51.) The Court also informed Petitioner "[t]hat there are two other aspects of obstruction of justice that get you back in the same place."[15] (*Id.* at 52.) The Court informed Petitioner that he could either testify under oath, or accept the Court's ruling; Petitioner told the Court he would accept the ruling.[16] (*Id.* at 53-54.)

---

[15] Petitioner's testimony at the suppression hearing regarding his knowledge that there was marijuana growing at his residence potentially constituted an additional ground for the obstruction of justice enhancement. (Sentencing Tr. at 54.) The Court concluded that although Petitioner's testimony about his knowledge of the marijuana was false, it was not material to the suppression hearing; the Court therefore did not find obstruction of justice on the basis of Petitioner's testimony about the marijuana. (*Id.* at 79.)

[16] The First Circuit concluded that this Court did not violate Petitioner's due process rights or Fed. R. Crim. P. 32 when the Court warned Petitioner he risked a harsher sentence if he testified untruthfully following Petitioner's request to reopen the sentencing record to testify. *United States v. Stile*, 845 F.3d 425, 429-31 (1st Cir. 2017). The First Circuit noted that this Court issued the warning after it had invited

The Government argues the prosecutorial misconduct claim is procedurally defaulted, because Petitioner failed to raise it at sentencing or on appeal. (Response at 35-36.) The Government also argues the allegations are speculative and unsupported. (*Id.* at 37-38.)

The Court need not reach the merits of the claim of prosecutorial misconduct. Because Petitioner's section 2255 claim regarding the perjury grounds for the obstruction of justice enhancement fails, Petitioner could not demonstrate prejudice with regard to the enhancement for assault even if there were merit to the prosecutorial misconduct claim.

Were the Court to reach the issue, however, the prosecutorial misconduct claim would fail on the merits. If Petitioner could convince the Court that the Government violated his Fourth, Fifth, or Sixth Amendment rights based on the conduct Petitioner alleges, the exclusionary rule would not bar the Court's consideration at sentencing of the evidence so obtained. *See United States v. Larios*, 593 F.3d 82, 87 (1st Cir. 2010) (noting that "the exclusionary rule ordinarily does not bar the use of evidence obtained in violation of a defendant's Fourth Amendment rights in sentencing"); *United States v. Krueger*, 415 F.3d 766, 768 (7th Cir. 2005) ("We conclude that we need not decide whether Krueger's statement was taken in violation of Krueger's Sixth Amendment rights, because even if it was, the district court was nonetheless free to consider it for sentencing purposes."); *United States v. Salazar*, 38 F. App'x 490, 496 (10th Cir. 2002) (unpublished)

---

Petitioner to present evidence, closed the sentencing record, found Petitioner had obstructed justice, and received Petitioner's request to reopen the record. *Id.* at 431. "In this context, we read the court's admonition as a disclosure that educated Stile concerning the risks of his gambit, rather than as a threat designed to scare off a proposed witness in his defense. We therefore easily find no plain error." *Id.*

("[E]ven if we assume that Mr. Salazar's statements to [agents] were obtained in violation of his Fifth Amendment rights, the district court did not err in considering them at sentencing.").

Counsel's decision, therefore, not to introduce evidence regarding the assault was not substandard, and Petitioner was not prejudiced. *See Strickland*, 466 U.S. at 688; *McGill*, 11 F.3d at 225. In addition, the underlying prosecutorial misconduct claim fails, and the ineffective assistance claim fails as well. *See Tse*, 290 F.3d at 465.

## 4. Claim regarding the denial of a reduction for acceptance of responsibility

Petitioner asserts that because the Court erred when it applied an enhancement for obstruction of justice, and because there was no other reason to deny a reduction for acceptance of responsibility, Petitioner has demonstrated he is entitled to a reduction for acceptance of responsibility. (Motion at 5; Attachment, ECF No. 637-1 at 52.) Petitioner further contends that even if the obstruction of justice enhancement was properly applied, the denial of a reduction for acceptance of responsibility was error. (*Id.*)

The First Circuit decided the issue on appeal:

Stile argues that: (1) because the court erred in applying the obstruction of justice enhancement, it also erred in not applying the reduction for acceptance of responsibility; and, (2) even if the court did not err in applying the obstruction of justice enhancement, this was an "extraordinary case" in which he should still receive the reduction. Because we have already rejected Stile's challenge to the obstruction of justice enhancement, we consider only the latter argument.

The district court did not clearly err in concluding that Stile had "failed to show that his case [was] an extraordinary one." The district court rested its determination on the fact that Stile both obstructed justice by assaulting the informant and then refused to accept relevant responsibility for the

misconduct when caught.  However one might label such behavior, we have
no trouble concluding that it provided ample support for finding that Stile
failed to establish that this is one of those rare cases in which an acceptance
of responsibility reduction should be granted to a defendant who has
obstructed the government's efforts to prosecute him.

*Id.* at 432 (citing USSG § 3E1.1 cmt. n.3; *United States v. Meada*, 408 F.3d 14, 25

(1st Cir. 2005)).  Because the issue was resolved on appeal, Petitioner may not relitigate it

on collateral review.  *See Singleton*, 26 F.3d at 240.

### 5.  Claim regarding responsibility for Petitioner's drug addiction

Petitioner alleges the Court failed to take into account at sentencing the

responsibility of Petitioner's doctor for Petitioner's addiction.  (Motion at 5.)

As to the Court's consideration of Petitioner's drug addiction as a sentencing factor

under 18 U.S.C. § 3553(a), the First Circuit concluded that "the sentencing court did not

abuse its discretion in considering Stile's drug addiction."  *Stile*, 845 F.3d at 433.

In addition to its rejection of Petitioner's procedural argument, the First Circuit rejected

"the substance of the court's weighing of the various § 3553(a) factors . . . ."  *Id.*

The court chose to focus on the features of the crime that made it particularly
terrifying to the victims and that demonstrated Stile's degree of forethought
and preparation.  On this record, the court did not abuse its discretion in
giving less weight to Stile's drug addiction and more weight to the possibility
of general deterrence.

*Id.*  Because the effect of Petitioner's drug addiction on sentencing was addressed on

appeal, Petitioner may not relitigate it on collateral review.  *See Singleton*, 26 F.3d at 240.

### 6.  Claim regarding substantive reasonableness of the sentence

Petitioner argues his sentence was unreasonable.  (ECF No. 637-1 at 61.)  The First Circuit decided the issue on appeal, *Stile*, 845 F.3d at 433-34, and therefore Petitioner may not relitigate it on collateral review.  *See Singleton*, 26 F.3d at 240.

## III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.[17]  In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 6th day of October, 2017.

---

[17] Plaintiff filed a separate motion for an evidentiary hearing. (ECF No. 638.) If the Court adopts the recommendation, the Court will effectively deny the motion for the evidentiary hearing.