UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

**ORDER ON MOTION FOR SENTENCING COURT
TO SET RESTITUTION PAYMENT**

The Court rejects a defendant's objections to the restitution order set forth in
its criminal judgment. In view of the fact that the victim has been partially
reimbursed for the loss caused by the defendant's criminal act, the Court will order
restitution payments to the victim first and the insurer next.

**I.  BACKGROUND**

Early in the evening of September 12, 2011, James Stile entered the E.W.
Moore & Son Pharmacy in Bingham, Maine. *United States v. Stile*, 845 F.3d 425, 427
(1st Cir. 2017). He wore a baseball cap, sunglasses, a dust mask, and purple rubber
gloves. *Id.* As he entered the store, he pulled a sawed-off shotgun from his pants.
*Id.* He walked to the pharmacy counter at the back of the store and ordered three
employees to lie on their stomachs. *Id.* When a customer walked in, Mr. Stile forced
him behind the pharmacy counter with the employees. *Id.* Mr. Stile handed the
owner of the pharmacy a black duffel bag and ordered him to fill it with drugs. *Id.*
Mr. Stile tied the hands and feet of the owner, the customer, and the employees with

zip ties.  *Id.*  He then departed the store, taking $12,889.93 worth of drugs[1] and $417

in cash.  *Id.*

On October 20, 2011, a federal grand jury indicted Mr. Stile for committing

this pharmacy robbery.  *Indictment* (ECF No. 8).  On October 30, 2014, Mr. Stile

pleaded guilty to this charge.  *Min. Entry* (ECF No. 541).  The Court sentenced Mr.

Stile on May 29, 2015.  *J.* (ECF No. 579).  The Court ordered Mr. Stile incarcerated

for 120 months; it placed him on supervised release for five years following his prison

sentence; and, critical to this motion, it found that Mr. Stile owed $13,306.93 to E.W.

Moore & Son, the pharmacy, and it ordered Mr. Stile to pay restitution in full "due

immediately . . . ."  *Id.*  It also ordered him to pay a $100 special assessment.  *Id.*

During the sentencing hearing, the Court made its guideline calculations and

found that restitution was mandatory in the amount of $13,306.93.  *Sentencing Tr.*

185:24.  Mr. Stile did not object to this finding.  *Id.* 186:5-7.  In pronouncing the

sentencing judgment, the Court stated:

> The Court imposes a criminal monetary penalty on Count 1 in the
> amount of $100.  The Court finds the defendant does not have the ability
> to pay a fine, and the court will waive the fine in this case.  Restitution
> is mandatory in the amount of $13,306.93.  The defendant shall make
> restitution to the E.W. Moore & Son Pharmacy at 337 Main Street,
> Bingham, Maine 04920, in the amount of $13,306.93.  The Court finds
> the defendant does not have the ability to pay interest on the restitution,
> and it is ordered that the interest requirement is waived.
>
> Payment shall be applied in the following order: One, to the
> assessment; and two, to the restitution.  Payment of the total fine and
> other criminal monetary  penalties  shall  be  due  in  full  immediately.

---

[1]      *Compl.* at 12 (ECF No. 3); *Sentencing Proceedings*, *Tr. of Proceedings* 191:1-2 (*Sentencing Tr.*) (ECF No. 610).  The First Circuit appears to have rounded this figure up to the nearest dollar. The Court specifies the precise amount given that the restitution amount is at the heart of the Defendant's motion.

Any amount the defendant is unable to pay now is due and payable during the term of incarceration. Upon release from incarceration, any remaining balance shall be paid in monthly installments to be initially determined in amount by the supervising officer. Said payments are to be made during the period of supervised release, subject always to review by the sentencing judge on request by either the defendant or the government.

*Id.* 211:10-212:4. These orders are reflected in the judgment the Court issued following the imposition of sentence. *J.* at 5-6.

## II. THE MOTION AND RESPONSE

### A. James Stile's Motion

On July 28, 2017, Mr. Stile filed a motion for this Court to set his restitution amount. *Mot. for Sentencing Ct. to Set Restitution Payment Amount* (ECF No. 651) (*Def.'s Mot.*). Mr. Stile contends that he is being "punished by the Federal Bureau of Prisons for his failure to meet a payment schedule amount that is unreasonable and impossible for the Defendant to meet." *Id.* at 1. He states that on July 13, 2015, he was "compelled to sign a 'Inmate Financial Plan", which was "a coercive instrument that[']s designed to threaten the inmate into a payment plan regardless if he or she can comply or not." *Id.* at 2. Mr. Stile writes that on June 21, 2017, the Bureau of Prisons (BOP) "presented to the Defendant a notice that due to an inability to pay the minimum payment established by the [BOP] and not the Court ($25.00 $\frac{1}{4}$ 'ly) the Defendant was being placed on FRP Refuse status." *Id.* He complains that BOP has sanctioned him in various ways for his refusal to participate in the payment program. *Id.* at 3.

Mr. Stile claims that the Court "should have investigated the Defendant[']s financial circumstances at time of or prior to sentencing and should have set a payment schedule that the Court determined the Defendant could comply with and not delegated to [BOP] to do such as was done." *Id.* at 4.

Citing *Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012) and *United States v. Leftwich*, 628 F.3d 665 (4th Cir. 2010), Mr. Stile argues that the BOP "lacked authority to collect restitution payments from inmate", the restitution order was not valid "because order was issued without regard to inmate's financial circumstances", and the Court failed "to specify it was imposing restitution under [the Victim and Witness Protection Act] Title 18 U.S.C. § 3663 or the [Mandatory Victims Restitution Act] 18 U.S.C. § 3663A." *Id.* at 5.

Citing *United States v. Gunning*, 339 F.3d 948, 949 (9th Cir. 2003), *United States v. Gunning II*, 401 F.3d 1145, 1149 (9th Cir. 2005), *United States v. Merric*, 166 F.3d 406 (1st Cir. 1999), and *United States v. Corley*, 500 F.3d 210 (3rd Cir. 2007), Mr. Stile asserts that "where a defendant has insufficient financial resources to make immediate payment, a District Court - - not BOP, not U.S. Probation Office - - must set a repayment schedule in the judgment of the conviction in order to discharge its responsibilities under MVRA of 1996." *Id.* Mr. Stile says that the Court "failed in all respects in its Judgment that, 'any amount Defendant is unable to pay now is due and payable during the term of incarceration.'" *Id.* at 5-6.

Citing *United States v. Mitchell*, 893 F.2d 935 (8th Cir. 1989) and *United States v. Bailey*, 975 F.2d 1028 (4th Cir. 1992), Mr. Stile asserts that these courts hold that

a district court abuses "its discretion in ordering restitution without an informed determination of Defendant's ability to pay." *Id.* at 6. Mr. Stile insists that he has no financial ability to pay while he is incarcerated. *Id.* He relates that while incarcerated, everything he owned was stolen and that the town of Sangerville foreclosed on his real estate for only $989 in back taxes. *Id.* at 6-7. In short, he was "robbed of all that he owned." *Id.* at 7. He complains that because of the Court's "failure to set a payment schedule after a fair assessment of the Defendant[']s assets, which none exists, [he] now is going to be subject to the sanction of leaving prison without a dollar in his pocket . . . ." *Id.*

Mr. Stile next objects to the Court's failure to give any consideration "to the possibility that the fruits of the crime were insured and a third party insurance company reimbursed the victim minus a deduct[i]ble like in the range of $200.00 to $500.00 . . . ." *Id.* at 7. Mr. Stile implies that he would not be required to pay restitution to the insurance company because it is not a direct loss to the victim. *Id.*

Finally, Mr. Stile informs the Court about "its Article III responsibilities, which also entail setting a payment schedule of restitution realistically based upon what the Defendant can afford." *Id.*

Mr. Stile asks the Court to order the Government to determine whether there were any third-party insurance payments to the victim and, if so, to adjust the restitution accordingly. *Id.* He requests the Court to set his payment amount and to suspend his current obligation to pay while incarcerated. *Id.*

### B.    The Government's Response

The Government objects to Mr. Stile's motion. First, it points out that in the initial and amended plea agreements in this case, Mr. Stile expressly agreed that "[i]n addition to the other penalties provided by law, the Court must also order Defendant to pay restitution to the victim or victims of the offense pursuant to 18 U.S.C. § 3663 or § 3663A." *Opp'n by U.S. of Am. in Resp. to Def.'s Mot. Concerning Payment of Restitution* at 1-2 (ECF No. 663) (citing ECF No. 540 at 2, and ECF No. 543 at 2) (*Gov't's Opp'n*). Furthermore, the Government observes that Mr. Stile withdrew his objection to the restitution amount of $13,306.93 before his sentencing hearing. *Id.* at 2. In addition, the Government states that even though Mr. Stile's sentencing hearing was lengthy, neither he nor his counsel objected to the restitution amount at the time of his sentencing hearing. *Id.* at 2-3. The Government also says that contrary to Mr. Stile's assertions, the Court did consider his financial circumstances at the time of his sentencing. *Id.* at 9.

The Government recites Mr. Stile's payment history while in prison, noting that he initially voluntarily participated in the Inmate Financial Responsibility Program (IFRP) of the BOP, agreeing to make $25 payments each quarter toward his $100 special assessment and his $13,306.93 restitution obligation. *Id.* at 5. The Government reports that Mr. Stile actually made four $25 payments, after missing one payment, and thereby paid off his $100 special assessment. *Id.* Mr. Stile made only one more $25 payment, which went toward restitution, leaving $13,281.93 outstanding on his restitution obligation. *Id.* He then was placed in "Refuse Status." *Id.* at 6.

The Government also states that even though Mr. Stile had only $2.46 in his prisoner account when he filed his motion, on July 31, 2017, $200 was deposited into his account, and by August 14, 2017, he had withdrawn $120 from his account for telephone and other costs, leaving a balance of $82.71, which should have been available for restitution. *Id.*

The Government disputes Mr. Stile's reading of the applicable law. Observing that the Court ordered Mr. Stile to pay the full amount of the restitution immediately, the Government cites *Bramson v. Winn*, 136 F. App'x 380, 381 (1st Cir. 2005) among other cases for the proposition that when the trial court orders the payment due immediately, there is no improper delegation when the BOP uses the IFRP to collect court-ordered payments. *Id.* at 7. Also, the Government contends that if Mr. Stile wishes to challenge the conditions of his incarceration brought about by the restrictions imposed due to his failure to comply with the IFRP, he must bring a habeas corpus petition in the district where he is housed, not in Maine. *Id.* at 8. The Government also argues that if the Court could reassess Mr. Stile's financial circumstances under 18 U.S.C. § 3664(k), he would have the burden of demonstrating a material change in his financial circumstances, and it contends that he has failed to do so. *Id.* at 9-11.

Finally, the Government informed the Court that E.W. Moore has in fact been reimbursed for $12,306.91 under its insurance policy with Hanover Insurance Company. *Id.* at 11-13. Accordingly, the Government requests that the restitution order be amended to reflect the fact that E.W. Moore sustained a direct loss of

$1,000.02 and that Hanover Insurance Company as E.W. Moore's insurer paid $12,306.91, placing E.W. Moore first in terms of priority and Hanover second. *Id.*

### C. James Stile's Reply

On September 25, 2017, Mr. Stile filed his reply. *Def.'s Reply to Opp'n by U.S. of Am. in Resp. to Def.'s Mot. Concerning Payment of Restitution* (ECF No. 667) (*Def.'s Reply*). Mr. Stile first contends that the statutory definition of "victim" precludes a restitution order benefiting E.W. Moore's insurance company because it was not directly and proximately harmed by his crime. *Id.* at 2. He notes that the Presentence Report failed to identify Hanover Insurance Company as a victim, even though he contends the Government knew before the sentencing hearing that E.W. Moore had been reimbursed by Hanover. *Id.* Mr. Stile quotes the affidavit of Chet Hibbard, the pharmacist, who stated that E.W. Moore's total loss was $1,000. *Id.* at 3. Mr. Stile asserts that he was never provided with copies of the victim impact statements setting forth the loss. *Id.* Mr. Stile says that if he had known that Hanover Insurance Company had paid for the loss, he would have objected to an order requiring him to pay full restitution. *Id.* at 4. Mr. Stile acknowledges only his debt of $1,000 to E.W. Moore. *Id.* at 7.

Mr. Stile disputes the Government's assertion that he was financially successful, observing that if it were true, his financial success would have been revealed in the Presentence Report (PSR), which it was not. *Id.* at 5-6. Mr. Stile further disputes the Government's view of his current financial status. *Id.* at 8-10. Mr. Stile explains that his friend Carlos Rojas provided him $200 per month but

stopped doing so due to Mr. Rojas' divorce. *Id.* at 8. He says that the last payment he received was on March 25, 2017 for $200. *Id.* He accuses Sharonne Malloy, a BOP employee, of lying in her sworn declaration about the state of his personal account. *Id.* at 8-10. Later, he mentions a payment of $200 he received on August 25, 2017 from his aunt, most of which he says was "allocated to telephone and TRULINGS to maintain a support system to Defendant[']s mother in hospital . . . with the balance of $82.71 paying PLRA payments." *Id.* at 15. At the same time, Mr. Stile agrees that if he were challenging the IFRP, he would have been required to file a motion pursuant to 28 U.S.C. § 2241. *Id.*

Turning to the legal arguments, Mr. Stile acknowledges the language of his plea agreements, but he contends that the plea agreements do not affect the rule that a district court may not delegate to the BOP the amount of restitution to be paid. *Id.* at 11. Mr. Stile admits that this Court addressed similar cases in the past. *Id.* at 12 (citing *United States v. Ellis*, 1:09-cr-00103-JAW, 2016 U.S. Dist. LEXIS 21982 (D. Me. Feb. 23, 2016) and *United States v. Reeves*, 1:05-cr-47-JAW, 2015 U.S. Dist. LEXIS 13657 (D. Me. Feb. 4, 2015)). But Mr. Stile claims that "[t]he Defendant's argument is not so much with BOP but with the Court and its judgment." *Id.* He reasserts that the Court's judgment is not "in accordance with *United States v. Merric*, 166 F.3d 406 (1st Cir. 1999)." He also acknowledges that the Government's argument that he must proceed "through a 2241 motion," but he reiterates that his argument "is with the Court's Judgment, not BOP's enforcement of the judgment." *Id.*

Mr. Stile further contends that the Government has failed to present evidence that would allow the Court to conclude that Hanover Insurance Company actually made $12,306.91 payments to E.W. Moore. *Id.* at 18-20.

Mr. Stile acknowledges that he is capable of making some payments to the victim but suggests that the Court should order $10 per quarter, not the $25 per quarter being imposed by the BOP. *Id.* at 20.

## III. DISCUSSION

### A. The Allegedly Coercive Nature of the BOP's IFRP

In his initial motion, Mr. Stile complained about the BOP's IFRP, which he described as "nothing more than a coercive instrument that[']s designed to threaten the inmate into a payment plan regardless if he or she can comply or not." *Def.'s Mot.* at 2. He also listed the sanctions that the BOP imposed when he no longer agreed to participate in the program. *Id.* at 2-4. In response, the Government pointed out that if Mr. Stile wished to complain about the BOP's IFRP, he was required to initiate the complaint in the district in which he was incarcerated. *Gov't's Opp'n* at 8. In his reply, Mr. Stile clarified that his argument is with this Court, not the BOP, and he conceded that a direct challenge to BOP's IFRP must be filed pursuant to 28 U.S.C. § 2241. *Def.'s Reply* at 12. Mr. Stile's concession waives his earlier articulated complaints about the BOP's administration of the IFRP program. The Court will not address the waived arguments.[2]

---

[2]      In his reply, Mr. Stile seems to hedge his bet and he continues to ask the Court to "forestall any payments until after his incarceration is complete." *Reply* at 6-7. To the extent Mr. Stile is asking this Court to postpone payment until his release from incarceration, the Court declines to do so. *United States v. Ellis*, 1:09-cr-00103, 2016 U.S. Dist. LEXIS 21982, at *2 (D. Me. Feb. 23, 2016) ("The BOP is

## B. Factual Errors

Before turning to Mr. Stile's main contention, namely that the Court should have set his repayment schedule at the sentencing hearing and not have delegated the payment schedule to the BOP during incarceration or the Probation Office upon release, the Court must correct a number of misstatements in Mr. Stile's submissions.

### 1. Investigation of James Stile's Financial Status

Mr. Stile complains that the Court "should have investigated the Defendant[']s financial circumstances at time of or prior to sentencing," implying that the Court failed to do so. *Def.'s Mot.* at 4. This implication is erroneous. In fact, the Court reviewed Mr. Stile's financial circumstances both before and at his sentencing hearing. The PSR in Mr. Stile's case contained a section entitled, **<u>Financial Condition: Ability to Pay</u>**, which the Court studied before the sentencing hearing. *Mot. to Seal Presentence Investigation Report* Attach. 1 *Presentence Investigation Report*, at ¶¶ 70-71 (ECF No. 649) (*PSR*). Mr. Stile made six objections to the contents of the PSR, but none to the contents of the financial condition paragraph. *Id.*, *Addendum to the Presentence Report* at 1-3.

The PSR revealed that Mr. Stile had "no monthly income or monthly expenses" due to his detention status. *PSR* ¶ 70. It stated that after his detention in 2011, "many of his assets were taken without permission by a male acquaintance who lived in Madison, Maine." *Id.* It also noted that Mr. Stile's real estate in Sangerville, Maine was foreclosed on by the town of Sangerville. *Id.* The PSR concluded:

---

authorized to administer the collection of restitution payments when a sentencing court, as the Court did in Mr. Ellis' case, orders immediate payment").

> Stile has no known assets, he must pay a substantial amount in restitution, and he faces a significant term of imprisonment. Under these circumstances, the Probation Office does not believe that he can afford to pay a fine immediately or on an installment basis during his period of supervised release.

*Id.* ¶ 71. As noted, Mr. Stile did not object to this portion of the PSR, and the Court accepted it for sentencing purposes. Thus, contrary to Mr. Stile's allegations, there was evidence of his financial circumstances before the Court at the time of his sentencing hearing, which the Court reviewed.

### 2.     The Bases of the Court's Financial Obligations Judgment

Mr. Stile also complains that the Court gave short shrift to his financial circumstances when it fixed his restitution obligation. *Def.'s Mot.* at 7 ("[R]estitution [was] assessed without concern of the Defendant[']s financial inability"). Again this is simply incorrect.

At the sentencing hearing, the Court concluded in its guideline calculations that Mr. Stile "does not have the ability to pay a fine." *Sentencing Tr.* 22:22-23. The Court explained:

> I'm not going to impose a fine. You will have spent a fair amount of time in jail; you will have another fairly recent felony conviction; and you do have  physical issues that may make it difficult for you to earn money, and I do want the money that you're able to earn to go to pay the victims. So I am not going to fine you.

*Id.* 207:8-13. The Court ordered Mr. Stile to pay restitution in the amount of $13,306.93 to E.W. Moore & Son Pharmacy, but it concluded that he did not have the ability to pay interest on the restitution and waived the interest requirement on the restitution principal. *Id.* 211:14-18. Thus, contrary to Mr. Stile's contentions, the

Court thoroughly considered Mr. Stile's financial condition, refused to impose a fine due to his financial condition, and declined to impose the interest requirement on the restitution principal in light of his financial condition.

More specifically, Mr. Stile's contention that the Court ignored his financial condition in ordering restitution is erroneous. Despite the obstacles Mr. Stile will face in securing gainful employment upon release from incarceration, the Court noted during his sentencing hearing that Mr. Stile is "a highly intelligent man" with an "unusual degree of . . . self-confidence." *Id.* 208:2-7. While reciting Mr. Stile's history and characteristics, the Court observed that Mr. Stile was the owner of Acoustic Brite, Inc., a construction business in New York, that he was a carpenter with the New York Carpenters and Joiners Union, that he sustained some physical injuries, and that he had received Social Security Disability since 1988. *Id.* 188:1-10.

Despite these injuries, the Court noted at the sentencing hearing that Mr. Stile had operated a number of businesses since then and had worked as a professional dog trainer with great success. *Id.* 188:9-12. During his allocution, Mr. Stile commented on his ability to earn money as a dog trainer and to use such proceeds to pay restitution:

> I want to make amends to those people there. The financial amends, a thousand dollars. I train a dog, that's a thousand dollars, I'd give it to Mr. Hibbard.

*Id.* 138:5-8. The Court accepts Mr. Stile's representation during his sentencing hearing that he could earn one thousand dollars by training a dog over his current position that he cannot earn money from dog training. *See Def.'s Reply* at 6

("Accolades in the field of dogs come without financial compensation and almost always at an expense of traveling, lodging and many other expenses associated with dog training").

Furthermore, both before and since the time of the sentencing, Mr. Stile has been extremely actively engaged in a number of civil lawsuits and in multitudinous pre-judgment and post-judgment challenges to various legal aspects of his indictment and sentence in this case. *See Stile v. United States*, 1:17-cv-00159-JAW; *Stile v. Somerset Cnty.*, 1:13-cv-00248-JAW; *Stile v. Cumberland Cnty. Sheriff's Office*, 2:12-cv-00163-DBH; *Stile v. Cumberland Cnty. Jail*, 2:12-cv-00260-JAW; *Stile v. Cumberland Cnty. Sheriff*, 2:14-cv-00406-JAW. These are only the matters pending in this District. Mr. Stile has periodically alluded to other litigation he has filed in other jurisdictions. *See, e.g., Mot. for Extension of Time Within Which to File Obj. to Magistrate's Recommendation and Report Decision ECF No. 669* at 2 (ECF No. 672). Mr. Stile's evident ability to litigate in the complex arenas of federal criminal and prisoner litigation convinces the Court that, if he elected to do so, he has the capacity to find employment upon release from incarceration.

In addition, the supervised release conditions on his financial status contemplate that even if Mr. Stile is unable to find employment, he may still be the beneficiary of money from such sources as lottery winnings, inheritances, and judgments, and that he must apply such financial gains to his court-ordered financial obligations. *J.* at 4 (ECF No. 579).

Finally, the Court imposed a five-year term of supervised release in order to "mak[e] certain, to the extent I can, that you repay the restitution that's been ordered . . . ." *Sentencing Tr.* 206:9-15.

In short, the Court did in fact consider Mr. Stile's current financial situation, his past employment, and his ability to earn income in the future in fashioning a financial obligation that carved a middle path between imposing no obligation at all and imposing too great an obligation. *See United States v. Rowe*, 268 F.3d 34, 38 (1st Cir. 2001) ("A present lack of assets or even a negative net worth will not preclude imposition of a fine unless a defendant also demonstrates that he lacks the ability to earn and to pay a fine in the future"). Mr. Stile's arguments to the contrary are ill-founded.

### 3. Failure to Specify Statutory Authority

In his motion, Mr. Stile alleges that the Court failed to specify which section, 18 U.S.C. § 3663 or § 3663A, it was applying in ordering restitution. It does not matter. The Court ordered that Mr. Stile pay full restitution under either provision. *See United States v. Ritchie*, 858 F.3d 201, 206-07 (4th Cir. 2017) (explaining the difference between § 3663 and § 3663A).

Mr. Stile was convicted of violating 18 U.S.C. § 2118(a), which criminalizes robberies and burglaries involving controlled substances, and it is apparent that he committed a "crime of violence" under 18 U.S.C. § 16 and therefore is subject to the mandatory restitution provisions of 18 U.S.C. § 3663A. Section 3663A(c)(1)(A)(i) provides that § 3663A applies to "a crime of violence as defined in § 16." Section 16

defines a "crime of violence" to refer to a crime that "has as an element the use, attempted use, or threatened use of physical force against the property of another." The prosecution version that Mr. Stile admitted was true, *Am. Prosecution Version* (ECF No. 539), confirms that Mr. Stile threatened physical force against the pharmacy employees when he committed this robbery. Therefore, as the Court repeatedly said during his sentencing hearing, restitution is mandatory, which means that the Court applied the mandatory restitution provisions of § 3663A.

Moreover, even if 18 U.S.C. § 3663 did apply, (the Court concludes it did not), the Court determined that Mr. Stile was still obligated to pay the full amount of restitution based on the Court's consideration of his financial resources and earning capacity.

### 4. Allegations of a Change in Financial Circumstances

Mr. Stile maintains that there has been a dramatic change in his financial circumstances since his May 29, 2015 sentencing hearing. *Def.'s Mot.* at 6-7. He points to the fact that the town of Sangerville foreclosed on his property and that he was "robbed of all [he owned]." *Id.* at 7. However, as noted earlier, these same facts appear in the PSR that was revised on March 16, 2015. *PSR* at 19. The PSR states that he "has no monthly income or monthly expenses" due to his detention, that the town of Sangerville had foreclosed on his property due to unpaid taxes and sold the property, and that a "male acquaintance who lived in Madison, Maine" took many of his assets without his permission. *Id.* Based on Mr. Stile's allegations, there is no

reason to conclude that his financial condition has in fact changed since May 29, 2015.

## C.    Legal Issues

### 1.    Context of the Court's Restitution Order

Before addressing the merits of Mr. Stile's contentions, the Court places its restitution order in context. At the time of his guilty plea, Mr. Stile entered into a plea agreement with the Government and the plea agreement addressed restitution:

> In addition to the other penalties provided by law, the Court must also order Defendant to pay restitution to the victim or victims of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

*Am. Agreement to Plead Guilty (With Stips. And Appeal Waiver)* at 2 (ECF No. 543). Thus, in imposing a restitution obligation, the Court acted in accordance with Mr. Stile's agreement with the Government. *See* 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in the plea agreement").

Also, although he now questions whether he owes money to Hanover Insurance Company, Mr. Stile has never challenged the total amount of the restitution. The PSR fixed $13,306.93 as the amount of restitution owed and Mr. Stile did not object to that figure before his sentencing, at his sentencing hearing, or in his current motion.

Finally, Mr. Stile did not object to the restitution order either before or during the sentencing hearing or on appeal. His very first challenge to the restitution order comes more than six months after the First Circuit denied his appeal and issued its mandate, more than two years after the issuance of the sentencing judgment, and

more than six years after he stole the prescriptive drugs that are the subject of the restitution order from the pharmacy.

### 2. The Sentencing Court's Obligation to Set a Repayment Schedule for Restitution and Unlawful Delegation

Mr. Stile's primary argument is that the Court unlawfully delegated its obligation to set a payment schedule under which he is to pay restitution to the victim. Mr. Stile relies heavily on *United States v. Merric*, a 1999 First Circuit case. It is true that in *Merric*, the First Circuit wrote that "the district judge could not empower the probation officer to make a final decision as to the installment schedule for payments." 166 F.3d at 409. However, there are several important differences between *Merric* and this case. First, *Merric* involved the imposition of a fine, not a restitution order. This distinction is important because the First Circuit in *Merric* quoted the language in 18 U.S.C. § 3572(d)(2), the statute governing a sentence of a fine, which reads that the "length of time over which scheduled payments will be made shall be set by the [sentencing] court." Neither § 3663 nor 3663A, the restitution statutes potentially relevant here, contains the same language.

Second, the *Merric* case was a direct appeal from the sentencing judgment. 166 F.3d at 407 ("Merric now appeals from the final judgment, challenging the fine and the requirement that he repay counsel fees as a condition of supervised release"). Mr. Stile did not raise the restitution obligation in his direct appeal and is now raising it in a collateral challenge. *See United States v. Perry*, CR 95-75-04 S, 2012 U.S. Dist. LEXIS 94187, at *9 (D.R.I. May 16, 2012) ("The First Circuit held that a district judge cannot empower the probation officer to make a final decision as to the installment

18

schedule for payments of a fine. Defendant, however, is barred from raising this argument in the instant Motion since this claim could have been raised on his direct appeal, but it was not") (citations omitted).

Third, the district judge did not inform Mr. Merric at the sentencing hearing that his monthly installments would be determined by the probation officer during the period of supervised release. *Id.* at 409. This language first appeared in the sentencing judgment. *Id.* In Mr. Stile's case, the Court expressly informed Mr. Stile that any balance that was remaining upon his release from incarceration "shall be paid in monthly installments to be initially determined in amount by the supervising officer," but the "payments are . . . subject to review by the sentencing judge on request by either the defendant or the government." *Sentencing Tr.* 211:24-212:4.

Fourth, even though *Merric* held that the sentencing judge must retain "final authority over all payment matters," the First Circuit upheld the sentencing judge's decision "to make repayment a condition of supervised release," describing that decision as "no error at all." *Id.* at 410. The *Merric* Court's concern was that the district judge had delegated final authority over the repayment schedule to the supervising officer. *Id.* ("[W]e agree with Merric that the district judge could not empower the probation officer to make a final decision as to the installment schedule for payments"). Following *Merric*, the First Circuit continued to hew to the view that the sentencing court must make it clear that it retains the final authority over all payment matters. *United States v. Morán-Calderón*, 780 F.3d 50, 52 (1st Cir. 2015) ("[T]he district court should amend its judgment to make its 'reservation of authority

explicit'") (citation omitted). Here, the Court expressly made the schedule of payments set by the supervising officer "subject always to review by the sentencing judge on request, by either the defendant or the government." *J.* at 6. Thus, in accordance with *Merric*, this Court explicitly retained final authority over the installment schedule. The Court is not convinced that the order it issued in Mr. Stile's case violated *Merric*.

In a case following *Merric*, the First Circuit brushed aside a similar challenge by an inmate to the BOP's IFRP, observing that when a sentencing court makes the payment due immediately, it has exercised its authority to set the payment schedule. In *Bramson v. Winn*, 136 F. App'x 380 (1st Cir. 2005), the First Circuit noted that when a court orders that payment is due immediately, there is "no improper delegation by the courts of their exclusive authority to determine a payment schedule." *Id.* at 381. Here, the Court expressly ordered that Mr. Stile's restitution payment was "due immediately" consistent with *Bramson*. In *United States v. Reeves*, 2015 U.S. Dist. LEXIS 13657 (D. Me. Feb. 4, 2015), this Court quoted the district court of New Hampshire, stating that "[b]y imposing restitution and making it due immediately, the court, not the [BOP], set the amount due and the schedule to be met." *Id.* at *10 (quoting *United States v. Marston*, No. 09-cr-95-1-SM, 2012 U.S. Dist. LEXIS 122607, at *2 (D.N.H. Aug. 29, 2012)).

Mr. Stile's citations to the law of other circuits are unavailing. As the court in this District wrote, "unlike the Ninth and some other Circuits, the First Circuit has not ruled that a sentencing judge must include a specific schedule for restitution

payments during imprisonment." *United States v. Stewart*, No. 2:03-CR-102-DBH, 2015 U.S. Dist. LEXIS 19594, at *3 (D. Me. Feb. 18, 2015). It is to the First Circuit, not the other circuits, that this Court owes strict allegiance.

In short, there was no improper delegation in Mr. Stile's case.

### 3. Insurance Company Payment

In his motion, Mr. Stile raises the question as to whether "the fruits of the crime were insured." *Def.'s Mot.* at 7. He says that "[r]estitution is limited to the 'actual loss' suffered by identifiable victims." *Id.* He objects to the Court considering "third party payments." *Id.* In its opposition, the Government attaches a sworn declaration from Chet Hibbard, the owner and operator of E.W. Moore & Son Pharmacy, confirming that the pharmacy lost $13,306.93 from Mr. Stile's robbery. *Gov't's Opp'n* Attach. 2 (*Decl. of Chet Hibbard*). In the declaration, Mr. Hibbard confirms that E.W. Moore submitted a claim to Hanover Insurance Company for the loss that E.W. Moore sustained from Mr. Stile's robbery. *Id.* ¶ 3. On October 13, 2011, Hanover Insurance Company paid E.W. Moore $12,306.91. *Id.* ¶ 4. Mr. Hibbard also confirms that E.W. Moore sustained the loss of its deductible or $1000. *Id.* ¶ 5.

In his reply, Mr. Stile focuses on this revelation. Pointing to the language of 18 U.S.C. § 3663(a)(1)(A), he claims that restitution is limited to a "victim", which the statute defines as a "person", and that an insurance company, which is not a person, does not meet the definition of "victim." *Def.'s Reply* at 2. He maintains that he did not defraud or deceive Hanover Insurance Company. *Id.* at 5. He complains that the

21

Government knew about the insurance payment before his sentencing, but it failed to bring the insurance payment to the attention of the Court. *Id.* at 2-3. Mr. Stile acknowledges that he is indebted to Mr. Hibbard for $1000, but he insists that he is not obligated to reimburse Hanover Insurance. *Id.* at 7, 19-20.

Mr. Stile is wrong. Section 3663(j)(1) provides:

> If a victim has received compensation from insurance or other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by order be paid to the victims before any restitution is paid to such provider of compensation.

This provision is intended to include insurers that pay for losses to the victims sustained by the criminal actions of a defendant. In *United States v. Romine*, 37 F. App'x 583 (3rd Cir. 2002), the Third Circuit wrote that "[w]here a victim receives compensation from insurance or 'any other source' for the loss, restitution shall be paid to the person who compensated the victim." *Id.* at 584 (citing 18 U.S.C. § 3664(j)(1)). "In other words, a third party may receive compensation pursuant to § 3664; it is not necessary that the third party also be defined as a victim pursuant to § 3663A." *United States v. Mintz*, No. 5:09-CR-194-FL, 2010 U.S. Dist. LEXIS 79346, at *6-7 (E.D.N.C. Aug. 5, 2010). This provision avoids a windfall to the victim if the victim received both insurance and restitution payments for the same loss and a windfall to the perpetrator if he avoided payment of restitution because of the fortuity of insurance coverage for the loss caused by his criminal act. Mr. Stile's remaining objections do not merit discussion.

## IV. CONCLUSION

The Court DENIES James Stile's Motion for Sentencing Court to Set Restitution Payment Amount (ECF No. 651).

Based on the newly-submitted information from the Government concerning the insurance payment to the victim, the Court will order that the judgment be amended to require that James Stile pay the full restitution in the total amount of $13,306.93 with $1,000.02 payable to E.W. Moore & Son Pharmacy as a first priority and then $12,306.91 payable to Hanover Insurance Company as a second priority upon completion of the $1,000.02 payment, with a full credit for any restitution payments he has previously made. However, unlike the address of E.W. Moore & Son Pharmacy, which is set forth in the judgment, the Government has not supplied the address or identifying information for Mr. Stile's payments to Hanover Insurance Company. The Court ORDERS the United States to obtain that information and to provide it to the Court within two weeks of the date of this Order. Upon receipt of that information, the Court will order the issuance of an amended judgment as indicated.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2017