UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

**ORDER ON DEFENDANT'S PRO SE MOTION REQUESTING JUDICIAL RECOMMENDATION FOR 12 MONTHS RRC PLACEMENT PURSUANT TO 18 USC § 3621(b)(4)**

The Court grants an inmate's request for a judicial recommendation to the Bureau of Prisons that he be allowed to serve a portion of his prison term in a residential reentry center with several caveats (1) that in general, the Court is unaware of anything that would significantly militate against such a recommendation, (2) that the Court assumes the accuracy of the Defendant's stated accomplishments while in prison, (3) that the BOP itself has not been represented in this motion and the Court has no information as to its position, (4) that the BOP, not the Court, has the ultimate authority to designate an inmate, and (5) that beyond the individual circumstances presented here, this order reflects this Court's generally positive view of the efficacy of residential reentry centers in bridging the gap from a lengthy period of incarceration to the greater freedom of supervised release.

**I. BACKGROUND**

On May 29, 2015, the Court sentenced James Stile to 120 months of incarceration, no fine, five years of supervised release, $13,306.93 in restitution, and a $100 special assessment for his robbery of controlled substances from a Drug

Enforcement Agency registered pharmacy in violation of 18 U.S.C. § 2118(a). *J.* (ECF No. 579). On July 30, 2018, Mr. Stile moved this Court to recommend to the Bureau of Prisons that he be allowed to serve the last twelve months of his sentence in a residential reentry center (RRC). *Pro Se Mot. Requesting Judicial Recommendation for 12 Months RRC Placement Pursuant to 18 U.S.C. [§] 3621(b)(4)* (ECF No. 698) (*Def.'s Mot.*). The Government responded on August 20, 2018. *Gov't Resp. to Def.'s Mot. for Recommendation Regarding RRC Placement* (ECF No. 700) (*Gov't's Resp.*). Mr. Stile replied on August 27, 2018. *Reply to Gov't's Resp. to Def.'s Mot. for Recommendation Regarding RRC Placement* (ECF No. 701) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. James Stile's Motion

In his motion, Mr. Stile says that he has a projected release date of June 22, 2020. *Def.'s Mot.* at 1. He states that the "Unit Team at Allenwood is set to make their recommendation for halfway house 17-19 months prior to the release date of June 22, 2020." *Id.* at 5. He says that this means the Bureau of Prisons (BOP) "will submit their recommendation between November of 2018 and January of 2019." *Id.* Mr. Stile explains that he intends to return to the Albany, New York area where his only remaining family member Phoebe Smith lives, given that his mother passed away on June 13, 2018. *Id.* He would like to "resume his profession of training dogs that will be the mainstay of his ability to pay restitution and establish a[n] indepen[d]ent lifestyle in his integrating himself back into society." *Id.*

2

Mr. Stile represents that he has maintained good conduct while in BOP custody. *Id.* He lists the programs he has attended and the certificates he has received. *Id.* He notes that he is without any money and fears that if not assigned to a RRC, he will have to live at a Salvation Army Homeless Shelter. *Id.* at 6.

Mr. Stile notes that he has two civil cases pending in the United States District Court for the District of Maine and two civil cases in the state of New Hampshire, which he believes will come to trial in late 2019 and implies that being in a halfway house will allow him to adequately prepare for these trials. *Id.*

Mr. Stile extols the benefits of the halfway house program. *Id.* at 1-5. He points out that inmates "need the support network available to them and the supervision provided by halfway houses and home confinement." *Id.* at 3. He says that the maximum period for halfway house placement is twelve months and it is this amount of time he would like the Court to recommend to the BOP. *Id.* at 4. Mr. Stile argues that such a judicial recommendation would be consistent with the policies underlying the Second Chance Act. *Id.* at 4-5.

### B. The Government's Response

In its brief response, the Government confirms that according to the BOP website, Mr. Stile is due to be released on June 22, 2020. *Gov't's Resp.* at 1. Citing its response to a similar motion in *United States v. Sutherland*, 1:15-cr-00041-JAW, the Government concedes that the Court has the authority to make a non-binding recommendation to the BOP, but it also notes that reentry center placement decisions are entrusted to the BOP, not the courts. *Id.* The Government takes "no position" on

Mr. Stile's motion, but brings two things to the Court's attention. *Id.* at 2. First, the Government reminds the Court that it imposed a two-level enhancement for obstruction of justice at the time of Mr. Stile's sentencing hearing. *Id.* Next, the Government notes that Mr. Stile asserts his good conduct while in BOP custody and that he attached records supporting his statement. *Id.*

### C. James Stile's Reply

In his reply, Mr. Stile points out that the Government confirmed that the Court has the authority to make the requested recommendation. *Def.'s Reply* at 1. He also says that he appreciates the Government's taking no position regarding his release to a halfway house. *Id.*

Mr. Stile grouses about the fact that at the sentencing hearing, he received a two-level enhancement for obstruction of justice, which resulted in a denial of acceptance of responsibility, and he continues to maintain that he "told the literal truth" about being through the town of Bingham en route to Little Dimick Pond to go fishing. *Id.* Nevertheless, Mr. Stile argues that the fact he received an obstruction of justice enhancement should have "no bearing on the motion at issue as punishment has been meted out and the Defendant has served his sentence." *Id.*

Mr. Stile also complains about the treatment he has received at BOP, which he attributes to "his civil litigation against FCI Fort Dix." *Id.* at 2. He says that he expects BOP to treat him "in a very retaliatory manner . . . due to the litigation as expressed in [the BOP lawsuit]" as well as other ongoing litigation. *Id.*

4

Mr. Stile ends by mentioning that he recently paid $696 to Chester Hibbard, the victim of his pharmacy robbery. *Id.* He goes on to say that he has had "plenty of time to reflect and plan how he wishes to live his life." *Id.* He states that it "is time to get back and give." *Id.* He ends by saying that "he wished to begin to repair the damages of the past but cannot do that in prison." *Id.*

## III. LEGAL STANDARDS

The United States Supreme Court has written that Congress has given the BOP "plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment.'" *Tapia v. United States*, 141 S. Ct. 2382, 2390 (2011) (quoting 18 U.S.C. § 3621(b)). Federal law permits a court to make a recommendation to the BOP, "[b]ut decisionmaking authority rests with the BOP." *Id.* at 2390-91. The applicable statutory provision is 18 U.S.C. § 3624(c)(1):

> [The BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Federal law also provides that a sentencing court may make a recommendation that a prisoner serve a term of imprisonment in a residential reentry center. *Id.* § 3621(b). But the recommendation has no binding effect. *Id.*

Some sentencing courts have issued orders recommending release into a residential reentry center. *United States v. Hoskins*, No. 3:01-cr-00266, 2018 U.S. Dist. LEXIS 56466 (M.D. Pa. Apr. 3, 2018); *United States v. Bhamani*, No. 2:10-cr-00327-TLN, 2017 WL 2992455, 2017 U.S. Dist. LEXIS 109902 (E.D. Cal. Jul. 13,

5

2017); *United States v. Qadri*, No. CR-06-00469-LEK, 2017 WL 1011663, 2017 U.S. Dist. LEXIS 38716 (D. Haw. Mar. 15, 2017); *United States v. Bartels*, No. 12-cr-20072, 2016 WL 6956796, 2016 U.S. Dist. LEXIS 164056 (E.D. Mich. Nov. 29, 2016); *United States v. Brattin*, No. 2:13-cr-0161-JAD-CWD-1, 2016 WL 4467897, 2016 U.S. Dist. LEXIS 112222, (D. Nev. Aug. 23, 2016); *United States v. Baker*, No. 3:01-cr-94-01-MHT, 2013 WL 355867, 2013 U.S. Dist. LEXIS 11418 (M.D. Ala. Jan. 29, 2013). These courts have typically emphasized the defendant's post-sentencing rehabilitation, the criminal record, and any recommendations from BOP personnel.

Other sentencing courts denied similar motions. *United States v. Perry*. No. 2:13-cr-0049-TLN, 2017 WL 1534275, 2017 U.S. Dist. LEXIS 65226 (E.D. Cal. Apr. 27, 2017); *United States v. Landers*, No. 6:09-cr-0893-JMC, 2013 WL 5530271, 2013 U.S. Dist. LEXIS 144450 (D.S.C. Oct. 7, 2013); *United States v. Anderson*, No. 10-20437-CR-JEM, 2012 WL 12893422, 2012 U.S. Dist. LEXIS 195841 (S.D. Fla. Aug. 1, 2012). Often the denials are based on the sentencing court's deference to the BOP's superior legal and factual position to make this decision, on a lack of corroborating information, and on the timing of the motion, such as too early in an inmate's sentence to predict his status at the end of incarceration. *See e.g.*, *United States v. Hoskins*, No. 3:01-cr-00266, 2018 U.S. Dist. LEXIS 14474 at *6 (M.D. Pa. Jan. 30, 2018). On November 18, 2011, Judge Hornby of this District denied a similar request, concluding that there was "no reason to distinguish [the defendant] from other inmates whom the [BOP] must assign in accordance with the criteria Congress has

6

given it." *United States v. Smith*, No. 2:10-cr-00154-JDL, 2011 WL 5842567, at *1 (D. Me. Nov. 18, 2011).

IV. **OTHER DECISIONS**

The Court recently ruled on three motions like Mr. Stile's: *United States v. Sirois*, No. 1:11-cr-206-JAW, 2018 U.S. Dist. LEXIS 129785 (D. Me. Aug. 2, 2018); *United States v. Ford*, No. 1:12-cr-00163-JAW-4, 2018 U.S. Dist. LEXIS 107304 (D. Me. Jun. 25, 2018); *United States v. Sutherland*, No. 1:15-cv-00041-JAW, 2018 U.S. Dist. LEXIS 104596 (D. Me. Jun. 22, 2018). It granted one and dismissed two.

In Mr. Sirois' case, he filed a motion to amend the judgment, which the Court is constrained from doing. *Sirois*, 2018 U.S. Dist. LEXIS 129785, at *3. But the Court observed that even if it could grant Mr. Sirois' requested relief, based on a motion like Mr. Stile's, it would not do so, because he was requesting specific placement in the Bangor, Maine reentry and recovery center and the Court was aware that the Bangor center might close due to lack of funding. *Id.* at *3-4. The Court concluded that it was wiser to leave the decision about placement with the BOP and dismissed the petition. *Id.* at *4-5.

In Ms. Ford's case, she asserted in her motion that her record at BOP was clean, but unlike Mr. Stile, she provided no documentation. *Ford*, 2018 U.S. Dist. LEXIS 107304, at *6-7. Because she testified falsely at two jury trials and the Court imposed an obstruction of justice enhancement, the Court declined to accept Ms. Ford's word for what she had done in prison. *Id.* The Court dismissed her motion

7

and informed her it would reconsider if she provided corroboration for her representations to the Court. *Id.*

In Ms. Sutherland's case, the Court granted the motion and recommended to the BOP that she be placed in a residential reentry center for the nine to twelve months before her scheduled release from incarceration. *Sutherland*, 2018 U.S. Dist. LEXIS 104596, at *1. But it did so with several caveats:

> [T]hat the Court is unaware of anything in her dealings with the Court that would significantly militate against such a recommendation, (2) that the Court assumes the accuracy of the Defendant's stated accomplishments while in prison, (3) that the BOP itself has not been represented in this motion and the Court has no information as to its position, (4) that the BOP, not the Court, has the ultimate authority to designate an inmate, and (5) that beyond the individual circumstances presented here, this order reflects this Court's generally positive view of the efficacy of residential reentry centers in bridging the gap from a lengthy period of incarceration to the greater freedom of supervised release.

*Id.*

## V. DISCUSSION

The Court makes six observations.

### A. The Crime

First, Mr. Stile's pharmacy robbery of September 12, 2011, was a scary and violent crime caught on DVD by a store camera. The DVD shows Mr. Stile entering the pharmacy located in a rural town in Maine with a baseball cap, sunglasses and a dust mask wearing purple latex-type gloves and a dark blue jacket. *Prosecution Version* at 1 (ECF No. 539). Mr. Stile went to the rear of the store where the pharmacy counter was located, pulled out from his pants what looked like a sawed-off shotgun and pointed it at the three female employees behind the pharmacy

8

counter. *Id.* He ordered them to lie on their stomachs behind the counter. *Id.* A male customer entered the store and Mr. Stile ordered him to go behind the counter. *Id.* Mr. Stile tied up all four people by their feet and hands with zip ties. *Id.* He ordered the store owner to fill a black bag with narcotics, which the owner did. *Id.* Mr. Stile tied up the owner's hands and feet. *Id.* He fled the store. *Id.*

The Court mentions the facts in this crime not to deter the BOP from assigning Mr. Stile to a reentry and recovery center, but to inform the BOP, which is making the placement decision, that wherever it assigns Mr. Stile, he has been convicted of committing a serious, terrifying federal offense involving what appeared to be a firearm and his motivation appears to have been to obtain prescriptive drugs. Whatever reentry and recovery center receives Mr. Stile should be competent to handle someone with his history.

### B. The Punishment

Second, the Court imposed an obstruction of justice enhancement on Mr. Stile at his May 29, 2015 sentencing. There were two reasons for the Court's decision. First, the Court concluded that Mr. Stile committed perjury while testifying during a suppression hearing in his case and second, the Court concluded that Mr. Stile assaulted a fellow inmate in order to intimidate the inmate from testifying against him. *See United States v. Stile*, 845 F.3d 425, 428 (1st Cir. 2017). Mr. Stile appealed the obstruction of justice enhancement to the Court of Appeals for the First Circuit, and the First Circuit affirmed its imposition. *Id.* at 428-31.

The Court finds it disturbing that in Mr. Stile's reply, he is still rankling about the imposition of the obstruction of justice enhancement. *See Def.'s Reply* at 1. Mr. Stile's ongoing objection comes more than three years after his sentencing and after an unsuccessful appeal. *Id.* The Court will not relitigate its determination at the May 29, 2015 sentencing hearing that Mr. Stile committed perjury during his testimony at the December 13, 2012 suppression hearing. The Court carefully reviewed the transcript of the suppression hearing, listened to arguments of counsel, and concluded that Mr. Stile had in fact committed perjury when he testified at the suppression hearing of December 12, 2012. *Tr. of Proceedings, Sentencing Proceedings* 54:6-70:13 (ECF No. 610). Mr. Stile's perjury was sufficient alone to merit the obstruction of justice enhancement. U.S.S.G. § 3C1.1, App. Note 4(B) (Examples of obstructive conduct include "committing . . . perjury, . . if such perjury pertains to conduct that forms the basis of the offense of conviction.").

Although Mr. Stile mentions the perjury determination, he neglects to recall that he brutally assaulted a fellow inmate, striking him hard in the face with his elbow and wrestling him to the floor. *Def.'s Reply* at 1. This incident, like the robbery itself, was captured on DVD and the Court recalls it well. The Court rejected Mr. Stile's unsupported allegation that he assaulted this inmate because the inmate made sexual advances to him, and the Court found that the true reason he assaulted him was that he had learned the inmate was prepared to testify against him. The Court concluded that the obstruction of justice enhancement was fully warranted and the First Circuit agreed. *Stile*, 845 F.3d at 431-32; *see also* U.S.S.G. § 3C1.1, App. Note

10

4(A) (examples of obstructive conduct include "threatening, intimidating . . . a . . . witness"). The fact that Mr. Stile, with selective memory, is still contesting the Court's sentencing finding gives the Court considerable pause about the level of his remorse and about his determination to accept his own mistakes and correct them.

### C. The Imprisonment

Third, after an exceedingly rocky time in state custody awaiting trial and sentencing, Mr. Stile's period of federal incarceration appears to have been non-controversial. The Court reviewed Mr. Stile's exhibits A through J, which reflect that Mr. Stile has taken advantage of BOP programs and has received a number of certificates of achievement and appreciation. *Def.'s Mot.* Attachs. 2-10. In his motion, Mr. Stile mentions his "educational and vocational achievements in the BOP." *Id.* at 4. The Court credits Mr. Stile with his participation in BOP programs and agrees that this is a factor that bodes well for his placement in a RRC. With this said, as the Court elsewhere notes, the BOP has not participated in this motion and the Court is unaware of the BOP's perspective of Mr. Stile's time in federal prison.

### D. Congressional Policy

Fourth, consistent with congressional policy expressed in the Second Chance Act, the Court is of the view that inmates, particularly those like Mr. Stile who have served a significant term in federal custody, almost always benefit from placement in a residential reentry center in order to make a smooth transition from incarceration to supervised release. This seems particularly true in Mr. Stile's case, where after committing a terrible crime, he has resolved to repay his debt to society and live a

better, more restrained life. A period in a residential reentry center would in the Court's view enhance the likelihood that Mr. Stile will return to society a productive and non-violent person.

### E. The BOP's Superior Knowledge

Fifth, the Court sentenced Mr. Stile on May 29, 2015, and it has not received any further information from the BOP about how he has fared while in federal custody. The Court assumes the truth of what Mr. Stile has represented he has done while in prison and commends him, but the BOP has not explained what its position is regarding his release to a residential reentry center. It seems obvious that the BOP, which has maintained custody of Mr. Stile over the last three years, is in a much better position to evaluate his request than this Court, which last directly dealt with Mr. Stile over three years ago.

### F. Placement

Finally, the Court is unaware of whether a residential reentry center in the Albany, New York area has a place for Mr. Stile, whether the Court's recommendation would displace another equally or more deserving inmate waiting in line for placement, and the BOP's range of other considerations, which necessarily involve the allocation of limited resources. Thus, for reasons both statutory and practical, the Court expressly defers to the BOP in responding to the Court's recommendation.

## VI. CONCLUSION

The Court GRANTS James Stile's Pro Se Motion Requesting Judicial Recommendation for 12 Months RRC Placement Pursuant to 18 U.S.C. [§] 3621(b)(4) (ECF No. 698) and recommends to the BOP that, if possible, James Stile be allowed to serve nine to twelve months in a residential reentry center, with the express understanding that this order reflects the Court's positive view of the benefits of residential reentry centers in general, that there are no reasons in his dealings directly with the Court that he should not be released as early as possible to a residential reentry center, that the order is a recommendation to the BOP, which the BOP may consider along with other factors, and that the BOP, which has had custody of Mr. Stile since May 2015, is in a better position to make a final determination on the issue.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2018