# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00185-JAW |
| | ) | |
| JAMES STILE | ) | |

## ORDER ON THE GOVERNMENT'S MOTION FOR IMMEDIATE PAYMENT OF RESTITUTION

After spending nearly a decade in federal prison for a pharmacy robbery, upon release, a defendant applied for and received a substantial back payment from the Social Security Administration. Once it became aware that the defendant had come into a sudden cash infusion, the Government moved for a court order, requiring immediate payment of the outstanding restitution amount. The Court grants the Government's motion and orders the defendant to immediately pay full restitution.

## I.   BACKGROUND

### A.   Crime and Punishment

Early in the evening of September 12, 2011, James Stile entered the E.W. Moore & Son Pharmacy in Bingham, Maine. *United States v. Stile*, 845 F.3d 425, 427 (1st Cir. 2017). He wore a baseball cap, sunglasses, a dust mask, and purple rubber gloves. *Id.* As he entered the store, he pulled a sawed-off shotgun from his pants. *Id.* He walked to the pharmacy counter at the back of the store and ordered three employees to lie on their stomachs. *Id.* When a customer walked in, Mr. Stile forced him behind the pharmacy counter with the employees. *Id.* Mr. Stile handed the owner of the pharmacy a black duffel bag and ordered him to fill it with drugs. *Id.*

Mr. Stile tied the hands and feet of the owner, the customer, and the employees with zip ties.  *Id*.  He then departed the store, taking $12,889.93 worth of drugs[1] and $417 in cash.  *Id*.

On October 20, 2011, a federal grand jury indicted Mr. Stile for committing this pharmacy robbery.  *Indictment* (ECF No. 8).  On October 30, 2014, Mr. Stile pleaded guilty to this charge.  *Min. Entry* (ECF No. 541).  The Court sentenced Mr. Stile on May 29, 2015.  *J*. (ECF No. 579).  The Court ordered Mr. Stile incarcerated for 120 months; it placed him on supervised release for five years following his prison sentence; and, critical to this motion, it found that Mr. Stile owed $13,306.93 to E.W. Moore & Son, the pharmacy, and it ordered Mr. Stile to pay restitution in full "due immediately . . .."  *Id*.  It also ordered him to pay a $100 special assessment.  *Id*.

## B.     The Restitution Order

During the sentencing hearing, the Court made guideline calculations and found that restitution was mandatory in the amount of $13,306.93.  *Sentencing Tr*. 185:24. Mr. Stile did not object to this finding.  *Id*. 186:5-7.  Indeed, during his allocution, Mr. Stile affirmatively stated that he wanted "to make amends to these people.  The financial amends, a thousand dollars.  I train a dog, that's a thousand dollars. I'd give it to [the victim]."  *Id*. 138:5-8.  In pronouncing the sentencing judgment, the Court stated:

> The Court imposes a criminal monetary penalty on Count 1 in the amount of $100.  The Court finds the defendant does not have the ability to pay a fine, and the court will waive the fine in this case.

---

[1]       *Compl*. at 12 (ECF No. 3); *Sentencing Proceedings*, *Tr. of Proceedings* 191:1-2 (*Sentencing Tr*.) (ECF No. 610).  The First Circuit appears to have rounded this figure up to the nearest dollar.  The Court specifies the precise amount.

> Restitution is mandatory in the amount of $13,306.93. The defendant shall make restitution to the E.W. Moore & Son Pharmacy at 337 Main Street, Bingham, Maine 04920, in the amount of $13,306.93. The Court finds the defendant does not have the ability to pay interest on the restitution, and it is ordered that the interest requirement is waived.
>
> Payment shall be applied in the following order: One, to the assessment; and two, to the restitution. Payment of the total fine and other criminal monetary penalties shall be due in full immediately. Any amount the defendant is unable to pay now is due and payable during the term of incarceration. Upon release from incarceration, any remaining balance shall be paid in monthly installments to be initially determined in amount by the supervising officer. Said payments are to be made during the period of supervised release, subject always to review by the sentencing judge on request by either the defendant or the government.

*Id.* 211:10-212:4. The restitution order is set forth in the judgment the Court issued following imposition of sentence. *J.* at 5-6. Although Mr. Stile appealed other aspects of his sentence, he did not challenge on direct appeal either the restitution order or the restitution amount. *Stile*, 845 F.3d at 427-34.

### C.     The Motions to Apply Proceeds

During its investigation of Mr. Stile's crime, the Government seized $696.00 from him and on July 16, 2015, Mr. Stile moved to have that amount applied to his restitution obligation. *Mot. to Apply Funds Seized from Def. to Administrative Offset Account* (ECF No. 603). However, as Mr. Stile's appeal was still pending and the cash was evidence, on July 21, 2015, the Court ruled that his request was premature. *Order on Mot. to Apply Funds Seized from Def. to Administrative Offset Account* (ECF No. 603). After the First Circuit rejected his appeal, on June 13, 2018, Mr. Stile again moved for the same relief. *Mot. to Apply Funds Seized from Def. to Administrative*

*Offset Account* (ECF No. 696).  On August 1, 2018, the Court granted Mr. Stile's motion and ordered the seized funds applied to Mr. Stile's restitution obligation. *Order on Mot. to Apply Funds Seized from Def. to Administrative Offset Account* (ECF No. 699).

### D.     The First Restitution Challenge: BOP Inmate Financial Plan

On July 28, 2017, Mr. Stile filed his first challenge to the restitution order. *Mot. for the Sentencing Court to Set Restitution Payment Amount* (ECF No. 651) (*First Mot.*).  He claimed that there were "numerous problems with this restitution order as ordered."  *Id.* at 1.  Mr. Stile objected to the Bureau of Prisons' (BOP) Inmate Financial Plan and the payment schedule for restitution, to the Court's alleged failure to investigate and take into account his financial circumstances when it ordered restitution, to the BOP's authority to administer restitution payments, to paying any amount to the victim for which the victim was insured, and to paying any restitution amount while he was incarcerated.  *Id.* at 1-7.  On November 20, 2017, the Court rejected Mr. Stile's multiple challenges to its restitution order and BOP authority. *Order on Mot. for Court to Set Restitution Payment* (ECF No. 676) (*First Order*). Based on the record, the Court found that the victim had been partially reimbursed for the loss caused by Mr. Stile's criminal act and it ordered the judgment amended to require payment first to the victim and then to the insurer pursuant to 18 U.S.C. § 3663(j)(1).  *Id.* at 22-23.

### E.     The Second Restitution Challenged: Motion for Victims' Affidavits

On October 29, 2018, Mr. Stile moved to obtain the victims' affidavits *Def.'s Mot. Pursuant to Fed. R. Crim. P. 32(c)(1)(B) for Gov't to Produce Victims['] Affs. Also in Accord with Title 18 USC §3664* at 1 (ECF No. 703) (*Second Mot.*).  In the motion, Mr. Stile stated:

> Defendant believes the victims received a windfall and as a result he is required to pay more than the law requires.  As such, he seeks copies of the victims['] affidavit that support both the loss and the restitution.

*Id.* at 3.  After the Government responded Mr. Stile filed a reply.  *Def.'s Reply to United States of Am.'s Resp. to Def.'s Mot. for Production of Victim Affs.* at 1 (ECF No. 705) (*Def.'s Victims' Reply*).  Among other things, Mr. Stile claimed in his motion and reply that the Probation Office (PO) violated 18 U.S.C. § 3664(d)(5) in arriving at the restitution figure in this case.  *Def.'s Victims' Mot.* at 3-4; *Def.'s Victims' Reply* at 2-3.  On December 6, 2018, the Court dismissed Mr. Stile's motion without prejudice. *Order on Def.'s Mot. for Production of Victim Affs.* (ECF No. 706) (*Second Order*).

### F.     The Third Restitution Challenge: Motion for Hanover Insurance Company Affidavit

On December 26, 2018, Mr. Stile filed a motion for an order directing the Government and the PO "to dispense with sworn affidavit of Hanover Insurance Company that was to be procured in accordance with Title 18 U.S.C. § 3554(d) from the timeframes set forth in the statute, '60 days prior to the date initially set for sentencing.'"  *Mot. for Court to Order Gov't/Probation Office to Dispense with Sworn Aff. Submitted by Hanover Ins. that was to be made in Accordance with Title 18 U.S.C.*

*§ 3664(d)* at 1 (ECF No. 709) (citing § 3664(d)(1)) (*Third Mot.*).  Hanover Insurance Company was E.W. Moore & Sons' insurer and had paid the insured portion of E.W. Moore's loss.  *Nov. 20, 2017 Order* at 21-23.  Mr. Stile also sought an order requiring,

> [The] Government/Probation Office to dispense with any communication with the Court and Hanover Insurance Company that will show compliance with § 3664(d)(5) where Government/Probation Office having failed to comply with § 3664(d)(5) provisions "if the victim's losses are not ascertainable by date that is 10 days prior to sentencing, the attorney for the Government [or] the probation officer shall so inform the Court, and the Court shall set a date for final determination of the victim's losses, not to exceed 90 days after sentencing."

*Id.* (quoting § 3664(d)(5)).

Focusing on § 3664(d)(5), Mr. Stile demanded that the Court order the Government and the PO to provide him "with copies of any documents of communication to the Court as concerns § 3664(d), copies of any loss statement, policy, subrogation action, policy of reinsurance, 'sworn affidavit' making claim that meets the requirements set forth in § 3664(d)."  *Id.* at 6.  Mr. Stile insisted that the Government and/or the PO were required to comply with § 3664(d)(5) and their failure to do so was somehow in violation of the statute.  *Id.* at 3 ("[T]here was never compliance with § 3664(d) as concerns affidavits").  At the same time, Mr. Stile clarified that he did not contest the portion of the order requiring him to pay E.W. Moore & Son Pharmacy its $1,000 deductible.  *Id.* at 5 ("[The pharmacist] will be paid as he was brought forth as a victim albeit not in proper procedure and form with proper compliance with § 3664(d), no different than Hanover Insurance Company pretty much was never brought forth until more than 6 years ex post facto").

6

On February 8, 2019, the Court denied Mr. Stile's motion for an affidavit from Hanover Insurance Company. *Order on Def.'s Mot. for Court to Order Gov't/Probation Office to Dispense with Sworn Aff. Submitted by Hanover Ins. that was to be made in Accordance with Title 18 U.S.C. § 3664(d)* (ECF No. 720) (*Third Order*). First, the Court was not convinced that such an affidavit existed. *Id.* at 1. Second, the Court concluded that 18 U.S.C. § 3664 does not require a probation officer to obtain an affidavit in order to investigate and present a claim for restitution, particularly where a defendant consented to the amount of the restitution at the sentencing hearing. *Id.* Finally, the Court rejected Mr. Stile's belated attempt to attack the amended judgment, which had ordered restitution to E.W. Moore & Sons and then to Hanover Insurance Company. *Id.*

### G. The Fourth Restitution Objection: The Motion for Writ of Audita Querela

On January 14, 2019, Mr. Stile filed his fourth objection to the restitution order. *Def.'s Mot. for a Writ of Audita Querela Pursuant to Title 28 U.S.C. § 1651 to Vacate and Correct Restitution Portion of this Ct.'s J.* (ECF No. 713) (*Fourth Mot.*). In his motion, Mr. Stile said that the "initial judgment allowed for the [pharmacist] to realize a 'windfall' which is not the legislative intent of § 3664 or § 3663 of the restitution statutes." *Id.* at 3. Mr. Stile acknowledged that the amended judgment dated November 28, 2017 "corrected the 'windfall' matter as concerns [the pharmacist], but brought forward the facts that the Defendant was denied due process creating an injustice to the Defendant." *Id.* Mr. Stile claimed there is a "very good possibility that there was a 'windfall' to Hanover Insurance Company by virtue

of the fact that insurance companies routinely purchase 're-insurance' policies and subrogate their losses, here, the district court entered the judgment without any proof of loss from Hanover Insurance Company." *Id.* Finally, Mr. Stile returned to his claim that Federal Rule 32 and 18 U.S.C. § 3663 were violated before and during his sentencing hearing. *Id.* at 4. He asked that the Court vacate the restitution order as it related to Hanover Insurance Company. *Id.*

On February 6, 2019, the Court denied Mr. Stile's audita querela motion, concluding that the writ of audita querela, if available, is not a substitute for direct appeal. *Order on Def.'s Mot. for a Writ of Audita Querela Pursuant to Title 28 U.S.C. § 1651 to Vacate and Correct Restitution Portion of this Ct.'s J.* (ECF No. 724) (*Fourth Order*). On April 19, 2019, Mr. Stile appealed this order to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 728). On February 27, 2020, the First Circuit denied Mr. Stile's appeal. *J. of Court of Appeals for the First Circuit* (ECF No. 740) (*First Circuit J.*).

## H.    The Fifth Restitution Objection:  Motion to Stay Restitution Order

On May 6, 2019, Mr. Stile filed another motion regarding his restitution order, a request that the Court stay his obligation to pay restitution to Hanover Insurance Company while he appealed to the First Circuit the Court's order denying his motion for writ of audita querela. *Mot. to Stay Restitution Payments to Hanover Ins. Co.* (ECF No. 733) (*Fifth Mot.*). In his motion, Mr. Stile argued that it "would be improper for this Court to enforce a judgment (restitution) that is under direct appeal to the Circuit Court without resolution first being had at the Circuit level." *Id.* at 1. Mr.

Stile reiterated that he agreed to pay the "remaining restitution to victim . . . that is outstanding on his loss of $1,000.00 and the $100 Court fee." *Id.*

On May 28, 2019, the Court denied Mr. Stile's motion for stay. *Order Denying Mot. to Stay Restitution Payments to Hanover Ins. Co.* (ECF No. 737) (*Fifth Order*). The Court wrote in part:

> Although Mr. Stile somehow thinks the amended judgment amounts to a windfall for Hanover Insurance Company, he is wrong. The windfall would go to Mr. Stile if he were not required to reimburse E.W. Moore & Son's insurer. He would have robbed E.W. Moore of $13,306.93, but he would be required to pay only $1,000.02 because E.W. Moore paid for insurance to cover a portion of the losses Mr. Stile caused by his criminal act.

*Id.* at 5-6.

## II.   THE PENDING MOTION

When James Stile was released from confinement following his conviction for robbing a pharmacy, he received more than $41,000.00 in delayed Social Security benefits. He says that he intends to use some of this money to start a dog breeding business in upstate New York, where he now lives. However, Mr. Stile still owes more than $8,000.00 in unpaid restitution to the victims of his robbery.

Relying on 18 U.S.C. § 3664(k), the Government moved to compel Mr. Stile to immediately pay his remaining restitution in full. *Gov't's Mot. for Immediate Payment in Full of Remaining Restitution Pursuant to 18 U.S.C. § 3664(K)* (ECF No. 744) (*Gov't's Mot.*). Mr. Stile instead proposes an installment plan. *Resp. to Mot. for Immediate Payment of Restitution* at 6 (ECF No. 745) (*Def.'s Opp'n*). Specifically, he proposes that he pay ten percent of his net monthly income until his restitution is

satisfied.  *Id.*  The Government objects to Mr. Stile's proposal.  *Gov't's Reply in Support of Motion for Immediate Payment in Full of Remaining Restitution Pursuant to 18 U.S.C. § 3664(K)* (*Gov't's Reply*).

Filings from Mr. Stile's counsel indicate that his incarceration ended on May 27, 2020 and he then began a five-year period of supervised release.  *Def.'s Resp.* at 1.  At the time of his release, Mr. Stile still owed $12,585.93 in restitution.  *Id.* While on supervised release Mr. Stile petitioned the Social Security Administration (SSA) for payment of a little more than $41,000.00 in benefits that accrued during his prison term.  *Id.* at 2.  Defense counsel noted that Mr. Stile has received disability payments from the SSA since 1988 and currently receives $1,512.00 per month.  *Id.* at 1.  Emails between Mr. Stile and his assigned probation officer in New York reveal that he was instructed to pay the remainder of his restitution immediately and in full because he received these benefits.  *Gov't's Mot.*, Attach. 2, at 1-3 (ECF No. 744).  Mr. Stile stated that he intended to make full restitution, but that he preferred to make it in installments.  *Id.* at 1.

At the request of Mr. Stile, the Court heard oral argument regarding this matter by videoconference on October 14, 2020.  Mr. Stile remotely attended the oral argument.  Just before the oral argument, Mr. Stile's counsel provided a garnishment order from the Department of the Treasury, confirming that it was going to withhold up to 15% of his monthly social security income to pay the outstanding restitution. Attorney Rodway explained and Mr. Stile confirmed that he is receiving roughly

$1500 in monthly social security disability payments and therefore a 15% reduction will be about a $234.00 reduction in Mr. Stile's monthly benefits going forward.

## III.   THE POSITIONS OF THE PARTIES

### A.   The Government's Motion

The Government claims that on June 11 and 12, 2020 it received notice from U.S. Probation and Pretrial Services in Maine and New York that Mr. Stile had received $41,307.00 in Social Security benefits but was refusing to make immediate payment of restitution in full, asserting his right to an installment plan. *Gov't's Mot.* at 4-5.   The Government argues that Mr. Stile's receipt of $41,307.00 in Social Security benefits is a "material change" in Mr. Stile's economic circumstances under 18 U.S.C. § 3664(k). *Id.* at 6.   The Government contends that when a material change occurs, "a court may 'require payment in full as the interests of justice require.'" *Id.* (citing 18 U.S.C. § 3664(k) and *United States v. Pelletier*, 06-cr-58, 2017 WL 5162800, at *9 (D. Me. Nov. 7, 2017)).   According to the Government, a court determines whether a material change has occurred "by objectively comparing a defendant's pre-sentencing financial situation to his financial circumstances post-sentencing. *Id.* at 6-7 (citing cases).

Here, the Government contends that a before-and-after review of Mr. Stile's economic situation evidences that a material change has occurred. *Id.* at 7.   The Government suggests that Mr. Stile was in "dire straits" before and during his incarceration, citing the Court's findings at Mr. Stile's sentencing that he lacked the ability to pay a fine or interest on his restitution, along with Mr. Stile's "challenges with chronic pain, addiction, and other physical and mental health impediments,"

and his "minimal—and at times non-existent—payment history" while incarcerated. *Id.* However, the Government now avers that Mr. Stile's "financial situation has undergone a sea change due to his recent receipt of over $41,000." *Id.* at 7-8. Specifically, the Government notes Mr. Stile's ability to pay is evidenced by the fact that since his release, he already paid one-third of the restitution due. *Id.* at 8. The remaining balance due is now $8,213.43. *Id.*

Turning to whether the interests of justice under 18 U.S.C. § 3664(k) require immediate repayment of Mr. Stile's restitution, the Government avers that the relevant standard is one of "equity and fairness." *Id.* (citing *United States v. Baird*, 03-cr-91, 2009 WL 5170198, at *3 (E.D. Tenn. Dec. 17, 2009)). For this reason, the Government argues that immediate lump sum restitution is proper. *Id.* at 8-9. Specifically, the Government states that Mr. Stile has made no showing that making an additional payment of $8,213.43 will prejudice him. *Id.* at 8. Further, the Government notes that this is the first time since the Court ordered this lump sum restitution that Mr. Stile has had the ability to pay it. *Id.* at 8-9. Accordingly, the Government concludes that the Court should order immediate lump sum payment of restitution. *Id.* at 9.

### B.    James Stile's Response

In his response to the Government's motion, Mr. Stile explains why he should be permitted to pay the remaining balance of his restitution in installments. *Def.'s Resp.* at 2-6. Mr. Stile does not address the Government's argument that receiving more than $41,000.00 was a material change to his economic circumstances. Mr. Stile describes how after he received this money, he reported it to his probation officer "and

*proposed* that he immediately make a restitution payment in the amount of $4,100.00, which represented 10% of his lump sum Social Security payment and constituted a one-third reduction in the amount owed for restitution." *Id.* at 2. (emphasis in original). Mr. Stile indicates that his probation officer instructed him to "pay the full outstanding balance of restitution immediately." *Id.* Instead, Mr. Stile proposed to the officer that he pay ten percent of the lump sum, so that he can "have a stake with which to begin to rebuild his life." *Id.*

Specifically, Mr. Stile aims to start a dog training and breeding enterprise in upstate New York. *Id.* Mr. Stile reminds the Court that he is "an award-winning trainer of German [Shepherd] dogs." *Id.* at 2, n.3. He believes that "to do so requires some start-up funds" because of the expenses associated with building a website, acquiring a vehicle, and getting an address for his business. *Id.* at 2. Noting that he has already created a website and registered ACA K9 Enterprises LLC with the Secretary of State in New York, Mr. Stile states that "[i]f he is required to pay the full outstanding balance of restitution immediately, he will run short of funds to start his business in an effective manner." *Id.* at 3. However, Mr. Stile contends that if the Court permits him to pay his restitution in installments "[h]e anticipates the remaining balance of restitution being paid within (12) twelve months at most and possibly by year end if he can proceed at the pace he anticipates, without limitation of his finances." *Id.* Mr. Stile does not explain how he has reached such a conclusion. *Id.*

13

Having advanced his own plan for paying the restitution in installments, Mr. Stile's Response next discusses the relevant law. *Id* at 3-4. He flags for the Court that the terms of the Judgment in his criminal case permit his restitution to be paid in monthly installments after his release from incarceration. *Id.* at 3-4. He also cites 18 U.S.C. §§ 3572(d)(1)-(2) for the proposition that the Court has statutorily vested discretion to permit him to pay his restitution in installments. *Id.* at 4. Additionally, he references 18 U.S.C. § 3664(k), which provides that when a criminal defendant's economic circumstances materially change and the defendant owes outstanding restitution, "the court may . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id.*

Mr. Stile argues that justice requires he be allowed to pay his restitution in installments for two reasons. *Id.* at 5. First, he avers that while in prison he was able to pay $721.00 towards his restitution balance even though "he earned almost no money while he was in prison . . .." *Id.* He points out that after his release just a short time ago, he paid off a third of his remaining restitution balance, including the entirety of the amount he owed to a real person, Mr. Hibbert. *Id.* The remaining amount, he continues, is owed to an insurance company. *Id.*

Mr. Stile's second argument that justice requires he be allowed to pay his restitution in installments is that he has "paid his debt to society." *Id.* He states that his term of incarceration has ended and requests that "in exchange for his good faith and candor on this restitution issue, and in recognition of his life plan going forward, to be shown some consideration." *Id.*

14

C.     **The Government's Reply**

The Government's reply challenges Mr. Stile's position that the interests of justice require that he be afforded an installment plan. *Gov't Reply* at 2. First, the Government argues that Mr. Stile's claims that he needs the full amount of his Social Security benefits to start his business are "too cursory and conjectural." *Id.* For instance, the Government writes, that "there is no discussion or description of how [Mr. Stile] estimated his 'Financial Expenditures.'" *Id.* Of special import to the Government is that Mr. Stile's proposed budget $20,000.00 for the purchase of a vehicle without considering other options such as "simply making an initial down payment or entering into a lease arrangement." *Id.* Moreover, the Government states Mr. Stile "fails to explain whether he has explored available financing options, as opposed to utilizing the entirety of his personal assets to fund an LLC." *Id.* On these facts, the Government reasons that "[Mr. Stile] has therefore fallen short of meeting his burden of demonstrating that his financial resources are insufficient." *Id.*

The Government claims the interests of justice do not support granting Mr. Stile an installment schedule for restitution. *Id.* Specifically, the Government informs the Court that Mr. Stile has stalwartly opposed paying restitution by doing the following: (1) seeking to suspend his obligation to pay restitution while incarcerated, (2) pursuing a writ of audita querela to vacate his restitution order, (3) moving to stay restitution, and (4) unsuccessfully appealing his restitution order to the First Circuit. *Id.* at 2-3. Moreover, the Government notes that the restitution Mr. Stile paid while in prison "was made from funds that had already been seized

from him." *Id.* at 3.  It further notes that Mr. Stile did not pay restitution in 2019 or in 2020 until after he was released from prison.  *Id.*

The Government concludes by arguing that contrary to Mr. Stile's assertions, he has not "paid his debt to society." *Id.*  Rather, while the Government concedes that Mr. Stile has "served out his custodial sentence . . . restitution is also a component of [Mr. Stile's] sentence, and it remains." *Id.* (citing *United States v. Caramadre*, 807 F.3d 359, 378-79 (1st Cir. 2015)).  Thus, the Government argues that the Court should order Mr. Stile to immediately pay his $8,213.43 balance of restitution or alternatively pay it in installments over the next twelve months.  *Id.*

### D.     Oral Argument

As noted earlier, the Court held oral argument by videoconference on October 14, 2020 with James Stile in attendance by videoconference.  The Court heard argument from Assistant United States Attorney (AUSA) Lizotte and from Attorney Peter Rodway.  A couple of factual points bear mentioning.

First, at oral argument, Attorney Rodway finetuned Mr. Stile's list of anticipated start-up expenses for his business.  He noted that Mr. Stile has bought a car for $500 and is now able to get around; therefore, he will not immediately face the $20,000 cost of a new vehicle.  Attorney Rodway also said that Mr. Stile will not be subject to the $4,000 cost of procuring dogs for breeding stock, because in the dog breeding world, people routinely lend their dogs for breeding so long as they receive pups in compensation.  Mr. Stile has been able to purchase some clothes.  But he faces veterinarian bills and rental expenses.

Next, AUSA Lizotte pointed out that when a person is ordered to pay restitution to a victim in a criminal case, the Government has an automatic lien on the defendant and the lien may pose a problem when the defendant seeks to obtain credit or engages in financial transactions. AUSA Lizotte stated that once the total amount of the restitution is paid in full, the Government will file a Satisfaction of Judgment on the court docket and this will have the effect of dissolving the lien, freeing Mr. Stile to start his business without the constraint imposed by an outstanding government lien.

## IV.   DISCUSSION

Persons convicted of certain offenses in violation of federal criminal law may be sentenced to pay restitution to their victims. 18 U.S.C. § 3663 (2012). For some offenses, however, restitution is mandatory. *Id.* § 3663A. Because he committed a crime of violence, Mr. Stile was subject at his sentencing to the mandatory restitution provision of § 3663A(c)(1)(A), which provides that a court "shall order" restitution in cases of crimes of violence. The Court therefore takes notice of the congressional directive that victims of violent crimes should receive payment of their statutorily-authorized losses by the perpetrators of the crimes.

The federal statutes also address the timing of the restitution payments. Under 18 U.S.C. § 3572(d)(1), Congress provides that a defendant "shall make such payment immediately, unless in the interest of justice the court provides for payment . . . by installments." At the same time, Congress has given sentencing judges the authority to fashion an appropriate restitution payment and depending on the

circumstances, a sentencing court may order the defendant to make a single lump-sum payment, partial payments in installments, in-kind payments, or a combination of installments and in-kind payments. *Id.* § 3664(f)(3)(A). The Court takes notice of the congressional directive that favors immediate, not scheduled restitution payments. This directive is reinforced by § 3572(d)(2), which provides that if the restitution order permits other than immediate payment, the length of time over which the scheduled payments will be made "shall be the shortest time in which payment can reasonably be made." This provision reinforces Congress' determination that victims of violent crime should be paid restitution as quickly as possible.

Consistent with these statutory directives, as quoted above, the Court ordered Mr. Stile to pay restitution to E.W. Moore & Son Pharmacy "immediately." *J.* at 6. It allowed Mr. Stile to make payment over time, but only to the extent "the defendant is unable to pay now." *Id.* Thus, the Court's judgment against Mr. Stile confirmed the requirement that he pay the victim immediately and, if not, as soon as possible.

Although an order of restitution is a final judgment, Congress has allowed the payment schedule to be adjusted under 18 U.S.C. § 3664(k). 18 U.S.C. § 3664(o). Relevant to this case, § 3664(k) describes the procedure for adjusting a restitution order:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the

notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3664(k).

The judgment against Mr. Stile ordered that he pay immediate, lump sum restitution to the victims of his crimes. *Am. J.* at 7. During his period of incarceration, the BOP controlled Mr. Stile's repayment schedule. *See First Order.* However, the Judgment also specified that if he continued to owe restitution upon his release from incarceration, he would pay his restitution in monthly installments "to be initially determined in amount by his supervising officer" but "subject always to review by the sentencing judge on request, by either the defendant or the government." *Am. J.* at 7. It is undisputed that Mr. Stile still owes $8,213.43 in restitution. It is also undisputed that his supervising officer instructed Mr. Stile to immediately pay this amount in full.

Under § 3664(k), a court may compel immediate payment of restitution or adjust a defendant's payment schedule when (1) the defendant's economic circumstances materially change in such a manner that might affect the defendant's ability to pay restitution and (2) the interests of justice require the modification. *Id.* Here, both factors weigh heavily in favor of ordering Mr. Stile to pay the balance of his restitution immediately and in full.

### A.   Material Changes to James Stile's Economic Circumstances

At oral argument, Mr. Stile conceded that his economic circumstances have materially changed in a manner that affects his ability to pay. The Court agrees. Mr. Stile now has more than adequate cash in his Key Bank account to pay the full

amount of the restitution, leaving him with roughly $33,000 to spare. As he acknowledges, this is a material change for the better in his economic circumstances and the first statutory criterion under § 3664(k) for an amended restitution order has been met.

### B.     The Interests of Justice

The second statutory factor under § 3664(k) is whether the "interests of justice" require a modification of the payment schedule. Here, the Court readily concludes that the interests of justice weigh strongly in favor of granting the Government's motion for immediate payment of restitution and denying Mr. Stile's request that he make monthly payments of restitution equaling ten percent of his income. In making this determination, the Court accorded substantial weight to the following eight factors: first, the seriousness of Mr. Stile's offense and pursuant to 18 U.S.C. § 3663A(c)(1)(A), the mandatory nature of the restitution given his commission of a crime of violence; second, the language of 18 U.S.C. § 3572(d), which specifies how a court should approach restitution and the directive that the payment be made in the "shortest time in which payment can reasonably be made;" third, the language of the Court's judgment, which requires immediate payment; fourth, the long delay of over nine years from the robbery in completing the restitution obligation; fifth, the fact that the Court did not order Mr. Stile to pay interest on the restitution principal, which means that the principal amount has lessened in value due to inflation and the victim has been deprived of the use of the money during the period of nonpayment; sixth, Mr. Stile's unheralded and relentless litigation in which he has continually and unsuccessfully challenged his restitution obligation; seventh, Mr. Stile's failure to

20

show that compelling immediate lump sum restitution will unduly prejudice him; and eighth, the manifest need for Mr. Stile and the Government to place this restitution issue behind them so that his remaining term of supervised release can focus on his rehabilitative success.

Most of these points are self-evident from the Court's discussion. The Court will expand on only two. First, Mr. Stile's relentless restitution litigation. From July 28, 2017 through February 27, 2020, Mr. Stile filed five motions seeking to avoid or minimize payment of his restitution obligation. *Mot. for Sentencing Ct. to Set Restitution Amount* (ECF No. 651); *Mot. Pursuant to Fed. R. Crim. P. 32(c)(1)(B) for Gov't to Produce Victims['] Affs. also in Accord with Title 18 USC § 3664* (ECF No. 703); *Mot. for Ct. to Order Gov't/Probation Office to Dispense with Sworn Aff. Submitted by Hanover Ins. that Was to be Made in Accordance with Title 18 USC § 3664(d)* (ECF No. 709); *Def.'s Mot. for a Writ of Audita Querela Pursuant to Title 28 USC § 1651 to Vacate and Correct Restitution Portion of this Ct.'s J.* (ECF No. 713); *Mot. to Stay Restitution Payments to Hanover Ins. Co.* (ECF No. 733).

The Court denied each motion. *First Order* at 1-23; *Second Order* at 1-13; *Third Order* at 1-13; *Fourth Order* at 1-6 (ECF No. 724); *Fifth Order* at 1-6 (ECF No. 737). As noted earlier, Mr. Stile appealed the order on the audita querela motion to the Court of Appeals for the First Circuit, which affirmed this Court's order on February 27, 2020, thereby ending years of restitution litigation by Mr. Stile. *First Circuit J.* at 1. The reason this history is relevant is it belies Mr. Stile's assertion that he has "in no way shirked his obligation to pay restitution," *Def.'s Opp'n* at 5.

Instead, the Court views Mr. Stile's proposal to delay payment in full as part of his reluctance to pay the victim or more precisely the victim's insurer for the losses sustained from his criminal act.

Second, as the Court suggested at oral argument, the Court views the restitution issue as one that Mr. Stile would be better off fully and finally resolving immediately. In any case, Mr. Stile will continue under federal supervised release for about another four and one-half years. First, the obligation to monitor Mr. Stile's periodic payments places an unnecessary burden on the PO, a duty that would be eliminated if Mr. Stile eliminated the remaining amount of restitution. Second, the PO's obligation, as delineated in the conditions of supervised release, is to investigate Mr. Stile's financial health, to keep track of periodic payments, and to credit amounts paid against the outstanding principal. The Court finds that the PO's supervision of Mr. Stile should be directed to more constructive ends. Second, it imposes a corresponding burden on Mr. Stile to respond to the PO's inquiries about his finances. Mr. Stile has already had a somewhat testy exchange about the restitution issue with his PO's supervisor, accusing the supervisor of threatening him.

As the Court observed, payment in full will remove a source of friction from Mr. Stile's relationship with his Probation Officer and will allow them to focus on issues such as Mr. Stile's mental health, his drug abuse treatment, his return to work, and other positive matters to assure that Mr. Stile remains crime-free and reintegrates into society as a productive and constructive citizen.

## V.     CONCLUSION

The Court GRANTS the Government's Motion for Payment of Immediate Restitution (ECF No. 744) in the amount of $8,213.43 with a full credit for any payments James Stile has made since the filing of the motion.  The Court ORDERS that James Stile make payment in full of any outstanding restitution obligation immediately.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of October, 2020